**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 225-4684
Email: lrosen@rosenlegal.com

*Co-Lead Counsel for Plaintiffs*

*[Additional Counsel on Signature Page]*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| RON BERGMAN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CARIBOU BIOSCIENCES, INC., RACHEL E. HAURWITZ, JASON V. O'BYRNE, RYAN FISCHESSER, SCOTT BRAUNSTEIN, ANDREW GUGGENHIME, JEFFREY LONG-MCGIE, NATALIE R. SACKS, BOFA SECURITIES INC., CITIGROUP GLOBAL MARKETS, INC., and SVB SECURITIES LLC, <br><br> Defendants. | Case No.:  3:23-cv-01742-RFL <br><br> CLASS ACTION <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO UNDERWRITER DEFENDANTS' MOTION TO DISMISS** <br><br> JUDGE:   Rita F. Lin <br> DATE:   April 23, 2024 <br> TIME:   10:00 a.m. <br> CTRM:   15, 18th Floor |

**TABLE OF CONTENTS**

INTRODUCTION.................................................................................................................1

ADDITIONAL FACTS RELEVANT TO UNDERWRITER DEFENDANTS.......................1

ARGUMENT .....................................................................................................................2

   A.   Plaintiffs' § 11 Claim Against Underwriter Defendants is Timely...............................2

     1.   When Plaintiffs "Discovered" All the Facts Underlying their § 11 Claim is a Question of Fact Inappropriate at the Pleading Stage ................................................2

     2.   Underwriter Defendants Have Not Met Their Heavy Burden of Establishing that Plaintiffs "Discovered" the Facts Underlying Their § 11 Claim Before July 23, 2023 ...............................................................................................................4

   B.   The Complaint Adequately Alleges the Offering Documents Contained Actionable Material Misstatements and Omissions.......................................................7

CONCLUSION...................................................................................................................7

**TABLE OF AUTHORITES**

**Page(s)**

**Cases**

*Barnes v. Edison Int'l*,
No. CV 18-09690 CBM, 2021 WL 2325060 (C.D. Cal. Apr. 27, 2021).........................................5

*Booth v. Strategic Realty Tr., Inc.*,
2014 WL 3749759 (N.D. Cal. July 29, 2014)...............................................................................3, 5

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003)............................................................................................................7

*Gray v. First Winthrop Corp.*,
82 F.3d 877 (9th Cir. 1996)................................................................................................................3

*Harris v. Amgen, Inc.*,
573 F.3d 728 (9th Cir. 2009)..............................................................................................................7

*In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*,
741 F. Supp. 2d 511 (S.D.N.Y. 2010)..............................................................................................7

*In re Bare Escentuals, Inc. Sec. Litig.*,
745 F. Supp. 2d 1052 (N.D. Cal. 2010) .........................................................................................5

*In re Dropbox Securities Litig.*,
2020 WL 6161502 (N.D. Cal. Oct. 21, 2020)................................................................................6

*In re YogaWorks, Inc. Sec. Litig.*,
2020 WL 2549290 (C.D. Cal. Apr. 23, 2020) ...............................................................................6

*Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*,
416 F.3d 940 (9th Cir. 2005)............................................................................................................3

*Merck & Co. v. Reynolds*,
559 U.S. 633 (2010) ...........................................................................................................................2

*Rafton v. Rydex Series Funds*,
2011 WL 31114 (N.D. Cal. Jan. 5, 2011) .......................................................................................3

*Rieckborn v. Jefferies* LLC,
81 F. Supp. 3d 902 (N.D. Cal. 2015) ..............................................................................................3

*Swartz v. Deutsche Bank*,
2008 WL 1968948 (W.D. Wash. May 2, 2008)..............................................................................3

*U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*,
  720 F.3d 1174 (9th Cir. 2013)...................................................................................................4

*Welgus v. TriNet Group, Inc.*,
  2017 WL 167708 (N.D. Cal. Jan 17, 2017) ...............................................................................6

**<u>Statutes</u>**

15 U.S.C. § 77m.........................................................................................................................2

**INTRODUCTION**

Defendants Bank of America Securities, Inc. ("BofA"), Citigroup Global Markets, Inc. ("Citigroup"), and SVB Leerink LLC's ("SVB", together with BofA and Citigroup, "Underwriter Defendants") motion to dismiss the Complaint[1] ("UW MTD") (Dkt. No. 53) largely joins and incorporates the arguments set forth in the Memorandum of Points and Authorities in Support of the Motion to Dismiss filed by the Caribou Defendants ("Caribou Defendants' MTD") (Dkt. No. 50). Lead Plaintiff Ron Bergman and named Plaintiff Carl Cooper ("Plaintiffs") hereby incorporate by reference the arguments and statement of facts set forth in their Memorandum of Law in Opposition to the Caribou Defendants' Motion to Dismiss ("Opposition to Caribou Defendants' Motion"), filed contemporaneously herewith. While Underwriter Defendants also argue that the statute of limitations has run on Plaintiffs' § 11 claim against them, that claim is timely.[2] Accordingly, Underwriter Defendants' Motion should be denied.

**ADDITIONAL FACTS RELEVANT TO UNDERWRITER DEFENDANTS**

Defendants BofA, Citigroup, and SVB each served as an underwriter for Caribou's July 23, 2021 Initial Public Offering ("IPO"), each helping to draft and disseminate the negligently prepared Registration Statement and prospectus containing material misstatements and omissions. ¶¶175-79. Underwriter Defendants are investment banking houses that specialize in underwriting public offerings of securities. ¶225(a). Underwriter Defendants solicited investors to purchase Caribou common stock pursuant to the Registration Statement, and ultimately sold investors a total of 19 million shares of Caribou common stock at an offering price of $16.00/share, for proceeds of $282.72 million. ¶183. BofA sold 6,935,000 shares of Caribou common stock to investors in the IPO,

---

[1] "Complaint" refers to Plaintiffs' Amended Class Action Complaint for Violations of the Federal Securities Laws, filed on September 18, 2023 (Dkt. No. 35). References to "¶" are to the Complaint.

[2] In addition, Underwriter Defendants assert that named plaintiff Carl Cooper's § 11 claim should be dismissed because he did not purchase shares traceable to the registration statement. Plaintiffs withdraw Mr. Cooper's § 11 claim.

Citigroup sold 6,365,000 shares, and SVB sold 5,700,000 shares. Underwriter Defendants received a total of over $24.2 million in fees for serving as underwriters in Caribou's IPO. ¶180. Underwriter Defendants also obtained an agreement from Caribou to indemnify them from any liability under the federal securities laws. ¶225(b).

Underwriter Defendants purportedly conducted an adequate and reasonable investigation, also known as "due diligence" investigation, into Caribou's research, clinical trial, and business prospects. ¶225(c). During that investigation, Underwriter Defendants had continual access to internal, confidential, and current information concerning the research, clinical trial and business prospects of CB-010. *Id*. In addition to virtually unlimited access to Caribou's internal documents, Underwriter Defendants met with the Company's agents – including management, top executives and attorneys – and reached an understanding on the best strategy for the IPO including where and how to solicit investors, the terms of the IPO including the price and number of shares, the language and disclosures in the Registration Statement, and what responses to give to the SEC in connection with its review of the Registration Statement. ¶225(d). Underwriter Defendants ultimately caused the Registration Statement to be filed with the SEC and declared effective in connection with the offers and sales of securities registered thereby, including those to Plaintiff and putative Class members. ¶226.

## ARGUMENT

### A.    Plaintiffs' § 11 Claim Against Underwriter Defendants is Timely

#### 1.    When Plaintiffs "Discovered" All the Facts Underlying their § 11 Claim is a Question of Fact Inappropriate at the Pleading Stage

The statute of limitations for § 11 of the Securities Act of 1933 ("Securities Act") begins to run "one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence." 15 U.S.C. § 77m. But that "period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation.'" *Merck & Co. v. Reynolds*, 559 U.S. 633, 653

(2010). "The statute does not begin to run when the plaintiff merely **should** have begun investigating." *Rieckborn v. Jefferies* LLC, 81 F. Supp. 3d 902, 914 (N.D. Cal. 2015). "A fact is considered 'discovered' when a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint . . . **with sufficient detail and particularity to survive a 12(b)(6) motion to dismiss**." *Id*. at 915. "[I]t is Defendants' burden to establish that Plaintiffs did discover or could have discovered the allegedly untrue statement or omission." *Rafton v. Rydex Series Funds*, 2011 WL 31114, at *9 (N.D. Cal. Jan. 5, 2011).

Applying the *Merck* discovery standard for Securities Act claims to determine the timeliness of Plaintiffs' claim is premature at the pleading stage where questions of law are decided. *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 951 (9th Cir. 2005) ("'the question of what a reasonably prudent investor should have known is particularly suited to a jury determination'") (internal citation omitted); *see also Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 916 (N.D. Cal. 2015) ("A defendant seeking to establish, on a motion to dismiss, that a plaintiffs Section 11 claim is time-barred faces an 'especially high hurdle.'"). This is because "the determination of 'discovery' for the purpose of Section 11's limitations period 'is fact intensive and is usually not appropriate at the pleading stage.'" *Id.* (citing *Booth v. Strategic Realty Tr., Inc.*, 2014 WL 3749759, at *5 (N.D. Cal. July 29, 2014). Generally, "the Ninth Circuit strongly favors any legitimate factual disputes over the timeliness of a securities claim being determined by the fact-finder." *Booth*, 2014 WL 3749759, at *5; *see also Swartz v. Deutsche Bank*, 2008 WL 1968948, at *7 (W.D. Wash. May 2, 2008) ("The Ninth Circuit has held that the issue of whether a plaintiff knew or should have known of a cause of action in the federal securities context presents a question for the trier of fact"). As such, dismissing a securities fraud action as untimely is appropriate only when "uncontroverted evidence irrefutably demonstrates plaintiff discovered or should have discovered the fraudulent conduct." *Gray v. First Winthrop Corp.*, 82 F.3d 877, 881 (9th Cir. 1996). In other words, a claim may only be dismissed as

untimely under Rule 12(b)(6) when on the face of the complaint, the statute of limitations had already begun running. *See U.S. ex rel. Air Control Techs., Inc. v. Pre Con Indus., Inc.*, 720 F.3d 1174, 1178 (9th Cir. 2013).

**2.    Underwriter Defendants Have Not Met Their Heavy Burden of Establishing that Plaintiffs "Discovered" the Facts Underlying Their § 11 Claim Before July 23, 2023**

Underwriter Defendants assert that the § 11 claim against them is time-barred because the statute of limitations began to run on June 10, 2022, when Caribou released 6-month data from the ANTLER Trial. This assertion does not meet the high bar Underwriter Defendants face in providing irrefutable, uncontroverted evidence that a Securities Act claim is untimely as a matter of law.

The Complaint alleges that the true value of Caribou's common stock was revealed as information incorrectly stated in, and omitted from, the Registration Statement gradually emerged. *See* Complaint, §X.C.4. This occurred following two separate corrective disclosures that took place over one year apart from one another. The first corrective disclosure took place on June 10, 2022 when Caribou released 6-month data demonstrating that CB-010, administered at the lowest dose, did not show durability. ¶¶201-05. But this was only part of the story. In the Offering Documents, Defendants had also represented that "CB-10-cells demonstrate ***dose-dependent*** and robust cytotoxic activity…" ¶¶59, 190. Based upon this representation, investors understood that CB-010's treatment effect would be more durable as doses increased in the second portion of the ANTLER Trial. *Id.*

Further, following Caribou's June 10, 2022 release of 6-month data, Caribou and the Exchange Act Defendants continued to mislead investors into believing that increasing the dosage of CB-010 would yield durable responses. ¶¶117-18, 121-22, 127-28. Indeed, they characterized the six-month results as "a big motivator for moving to [a double dose of CB-010] for the second cohort," while failing to disclose that it was unlikely that higher dosing would yield durable responses given that the Gracell Trial called into question CB-010's PD-1 knockout at a basis for durability. ¶117. As a result, the market remained optimistic that despite the 6-month data, higher dosing would show that

CB-010 led to durable outcomes. Accordingly, the statements in the Offering Documents characterizing CB-010 as showing *dose-dependent* cancer fighting activity, and Defendants' reassurances that the dose escalation portion of the ANTLER Trial would demonstrate durability, caused Caribou's common stock to continue trading at artificially inflated prices after June 10, 2022.

Not until Caribou disclosed longer term data from the ANTLER Trial on July 23, 2023 did the concealed risks fully materialize, causing Caribou's stock price to decline by another 22.6%. ¶¶205-07. Accordingly, investors did not "discover" the falsity of *each* alleged misrepresentation – including those related to durability and dose dependency – until July 23, 2023. Thus, the statute of limitations for filing a claim under the Securities Act did not begin until July 23, 2024.

When weighing the timeliness of a Securities Act claim, Plaintiffs are "entitled to the reasonable inference that it is the course of ***all disclosures collectively*** that ultimately placed plaintiffs on notice of the need to investigate for fraud—i.e., that it was no single disclosure that was dispositive, but rather all the disclosures collectively." *In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1081 (N.D. Cal. 2010) (emphasis added). For example, In *Booth*, the Court found that even though defendants had revealed that one of their "entities' financial health was failing" and that they "had recently identified certain deficiencies in their internal controls ... in one specific area ..., it is not necessarily the case that all investors should have known enough to bring a claim that the initial representations about Defendants' internal controls were actionably false or misleading. Just how much additional time was needed to properly trigger 'discovery' under the one-year statute of limitations is a question that is best addressed after the development of a sufficient factual record." 2014 WL 3749759, at *6.

All of Underwriter Defendants' cases are inapposite. First, in *Barnes v. Edison Int'l*, No. CV 18-09690 CBM, 2021 WL 2325060, at *7 (C.D. Cal. Apr. 27, 2021), *aff'd,* No. 21-55589, 2022 WL 822191 (9th Cir. Mar. 18, 2022) (UW MTD at 6-7), plaintiffs alleged that the offering documents

concealed the risk that the company could recklessly cause a wildfire and that that risk became known when it was revealed that the company had caused the fire. The Court there held that plaintiffs should have discovered the facts constituting that risk when markets discovered the company had caused the fire. *Id.* Here, the Complaint alleges that Defendants concealed the risk that higher dosing would not show durability. That risk did not materialize – and Plaintiffs did not discover it – until July 23, 2023, when Caribou revealed longer term data demonstrating that CB-010 was not dose dependent and that higher dosing did not show durability.

Second, in *In re YogaWorks, Inc. Sec. Litig.*, 2020 WL 2549290, at *3-4 (C.D. Cal. Apr. 23, 2020) (UW MTD at 6), the Court found that the statute of limitations had run because "the material misstatements, misleading statements, and omitted facts described in the [amended complaint] are unchanged from the [initial complaint]." Here, by contrast, the Complaint alleges numerous additional misstatements and omissions, including about dose-dependency and the Gracell Trial, that were not alleged in the Initial Complaint. *See* Complaint, Exh. A (redline comparison of initial complaint and Complaint).

Third, in *In re Dropbox Securities Litig.*, 2020 WL 6161502 (N.D. Cal. Oct. 21, 2020) (UW MTD at 6) the Court rejected plaintiffs' assertion that disclosure of a financial report "crystallized" the negative trend in revenue the company had disclosed months earlier, because the report actually announced the *reversal* of a downward trend. *Id.* at *11. Further, finding that the financial metrics in the case were completely straightforward, the Court refused to credit the report as "finally providing Plaintiffs the sufficient insight they needed" to be on notice of a claim. *Id.* The opposite is true here. The facts at issue concerning dose-escalation and durability are complex, and Caribou continued to mislead investors concerning CB-010 after the June 10, 2022 disclosure. Lastly, *Welgus v. TriNet Group, Inc.*, 2017 WL 167708, at *21-22 (N.D. Cal. Jan 17, 2017) (UW MTD at 6) involved subsequent disclosures about the *magnitude* of the deficiencies in the company's accrued receivables,

which, unlike here, did not reveal any facts plaintiffs had not already discovered.

Given the plausibility of the Complaint's notice allegations, Underwriter Defendants fail to meet their burden to demonstrate that Plaintiffs were on notice of all the facts underlying their §11 claim any earlier than July 23, 2023.

**B.**   **The Complaint Adequately Alleges the Offering Documents Contained Actionable Material Misstatements and Omissions**

Underwriter Defendants are liable for their violations of § 11. As set forth in Plaintiffs' Opposition to Caribou Defendants' Motion, the Complaint adequately alleges that the Registration Statement contained materially misleading statements and omissions in violation of § 11. Like the Caribou Defendants, Underwriter Defendants face strict liability for such material misstatements and omissions in the Registration Statement. *See, e.g., In re Am. Int'l Grp., Inc. 2008 Sec. Litig.*, 741 F. Supp. 2d 511, 536 (S.D.N.Y. 2010) ("With respect to any sale of a security pursuant to a misleading registration statement, Section 11 extends potential liability to . . . underwriters . . . who provide their consent to be named as having prepared or certified any part of the registration statement or any report used in connection with the registration statement.").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Underwriter Defendants' Motion. Alternatively, if the Court grants any part of the Motion, Plaintiffs respectfully request leave to amend. *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009); *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003).

Dated:   January 22, 2024

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 225-4684
Email: lrosen@rosenlegal.com

Sara Fuks (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Email: sfuks@rosenlegal.com

By:     */s/ Sara Fuks*
        Sara Fuks

**THE SCHALL LAW FIRM**
Brian Schall (290685)
Ivy T. Ngo (249860)
Rina Restaino (285415)
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
brian@schallfirm.com
ivy@schallfirm.com
rina@schallfirm.com

*Co-Lead Counsel for Lead Plaintiff and for the
Class*

**CERTIFICATE OF SERVICE**

I hereby certify that I caused to be electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on January 22, 2024. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*/s/Sara Fuks*
SARA FUKS