**Bergman v. Caribou Biosciences, Inc. et al 3:23-cv-01742-RFL**
**Chart of Allegations**

| Date Medium and Speaker | False or Misleading Statement | Reason Why Statements Was False and Misleading When Made | Facts Giving Rise to a Strong Inference of Scienter |
|---|---|---|---|
| • July 1, 2021<br>• Registration Statement<br>• Defendant Caribou | "**We also knock out the gene encoding the PD-1 protein in these cells to boost the persistence of CAR-T cell antitumor activity.**<br><br>**We believe that the PD-1 knockout has the potential to reduce the likelihood of rapid tumor recurrence and potentially confer a better therapeutic index compared to other allogeneic CAR-T cells.**<br><br>**To our knowledge, CB-010 is the first allogeneic CAR-T cell therapy with a PD-1 knockout in clinical studies.**" ¶85. | Defendants failed to disclose: (i) the existence of the Gracell Trial, which meant that Caribou was not the first to use the PD-1 knockout in an allogeneic CAR-T cell treatment; and (ii) that the Gracell Trial had already demonstrated that knocking out the PD-1 protein was not linked to enhanced durability or clinical performance, calling into question the purportedly unique advantage of CB-010 as a treatment. ¶86. | Since CB-010 was Caribou's single most important treatment, Defendants were, or should have been, aware of what data Caribou had beyond 5.3 months. ¶¶8, 46. And as experts in their industry who publicly tracked competitors' products and data – particularly Haurwitz who is a pioneer in CRISPR genome editing – Defendants knew or should have known of the industry's 6-month durability threshold, and of the competitor Gracell trial based on the similarity in treatments, when touting CB-010 as the "first" therapy of its kind. ¶¶4, 16, 41, 68-72. |
| • July 1, 2021<br>• Registration Statement<br>• Defendant Caribou | "**We have demonstrated in preclinical models that the PD-1 knockout improves the persistence of antitumor activity by disrupting a pathway that leads to rapid T cell exhaustion**." ¶87. | Caribou then lacked the clinical data to show that the PD-1 knockout would improve the persistence of anti-tumor activity given that the pre-clinical data in the Registration Statement did not go past 5.3 months, but 6 months is the minimum threshold for durability. ¶¶4, 88. | As experts in their industry who publicly tracked competitors' products and data – particularly Haurwitz who is a pioneer in CRISPR genome editing – Defendants knew or should have known of the industry's 6-month durability threshold. ¶¶4, 41. CB-010 was also Caribou's single most important treatment so Defendants had to have |

**Bergman v. Caribou Biosciences, Inc. et al 3:23-cv-01742-RFL**
**Chart of Allegations**

|  |  |  | known there was no mice data past 5.3 months or that it did not support durability while touting the data. ¶¶4, 46, 68. |
|---|---|---|---|
| • July 1, 2021<br>• Registration Statement<br>• Defendant Caribou | **"The genome-editing technologies currently used in the allogeneic cell therapy field generally have limited efficiency, specificity, and versatility for performing the multiple, precise genomic edits necessary to address insufficient persistence. Our chRDNA technology is designed to address these genome-editing limitations and improve cell therapy activity."** ¶89. | Defendants failed to disclose that Caribou's competitors in the allogeneic gene-editing space, including Allogene and CRISPR, had already published data that showed comparable or better durability data than approved autologous therapies, and Caribou lacked data to show that its technology was superior. ¶90.<br><br>Defendants admitted, at the end of the Class Period, that "the results of these other clinical trials may not be comparable to clinical results for CB-010" because Caribou had "only reviewed publicly available reports of those trials." ¶¶20, 139. | Since Defendants were experts in their field – particularly Haurwitz who is a pioneer in CRISPR genome editing - and publicly tracked competitors' products and data, they were aware, or should have been aware, of competitors' results, including Allogene and CRISPR. ¶¶4, 16, 41, 57, 63-64. Further, while providing investors incomplete information, Defendants directed investors to ignore materials outside of the Registration Statement ¶¶65-66. |

**Bergman v. Caribou Biosciences, Inc. et al 3:23-cv-01742-RFL**
**Chart of Allegations**

| | | | |
|---|---|---|---|
| • July 1, 2021<br>• Registration Statement<br>• Defendant Caribou | **"Overall, our data demonstrate that the removal of the PD-1 checkpoint from the CB-010 CAR-T cells provided a statistically significant survival advantage in mice bearing robust and metastatic B cell tumors. Our data suggest that the PD-1 knockout may have led to a more robust debulking of the tumor by CB-010 during the early part of the study compared to the conventional allogeneic CD19 CAR-T cells, leading to a reduction in the recurrence of the tumor cells. Based on these data, we believe CB-010 has the potential for a better therapeutic index compared to other allogeneic CAR-T cells." ¶91.** | Defendants failed to disclose: (i) the existence of the Gracell Trial and the uncertainty about the clinical benefits of removing PD-1 checkpoints, as the Gracell Trial already demonstrated; and (ii) given that 6 months is the minimum threshold for durability, relying on 5.3 months of mice data would not be an indication of CB-010's durability in the ANTLER trial. ¶92. | Since CB-010 was Caribou's single most important treatment, Defendants were, or should have been, aware of what data Caribou had beyond 5.3 months. ¶¶8, 46. And as experts in their industry who publicly tracked competitors' products and data – particularly Haurwitz who is a pioneer in CRISPR genome editing – Defendants knew or should have known of the industry's 6-month durability threshold as well as of the competitor Gracell trial based on the similarity in treatments when touting what Caribou's data had demonstrated. ¶¶4, 16, 41, 68-72. |

3

**Bergman v. Caribou Biosciences, Inc. et al 3:23-cv-01742-RFL**
**Chart of Allegations**

| | | | |
|---|---|---|---|
| • July 1, 2021<br>• Registration Statement<br>• Defendant Caribou | "[O]ur preclinical in vivo data from experiments conducted in mouse xenograft models submitted as part of our CB-010 IND [Investigational New Drug Application] demonstrate that knocking out PD-1 leads to a significant increase in the durability of antitumor activity and therefore overall mouse survival." ¶94. | Caribou then lacked the clinical data to show that the PD-1 knockout would improve allogeneic durability given that the pre-clinical data in the Registration Statement did not go past 5.3 months, but 6 months is the minimum threshold for durability. ¶¶88, 108. | Since CB-010 was Caribou's single most important treatment, Defendants were, or should have been, aware of what data Caribou had beyond 5.3 months. ¶¶8, 46. And as experts in their industry who publicly tracked competitors' products and data – particularly Haurwitz who is a pioneer in CRISPR genome editing – Defendants knew or should have known of the industry's 6-month durability threshold when touting what Caribou's data had demonstrated. ¶¶4, 16, 41, 68. |
| • September 2, 2021<br>• Form 10-Q<br>• Defendants Caribou, Haurwitz, and O'Byrne | "Our lead product candidate, CB-010, is, to our knowledge, the first clinical-stage allogeneic anti-CD19 CAR-T cell therapy with programmed cell death protein 1 ("PD-1") removed from the CAR-T cell surface by a genome-edited knockout of the PDCD1 gene. We have demonstrated in preclinical models that the PD-1 knockout improves the persistence of antitumor activity." ¶101. | (i) Caribou was not the first to use the PD-1 knockout in an allogeneic CAR-T cell treatment; (ii) the Gracell Trial had already demonstrated that knocking out the PD-1 protein was not linked to enhanced durability or performance; and (iii) Caribou then lacked sufficient preclinical data to conclude that the PD-1 knockout improved the persistence of anti-tumor activity because its pre-clinical data did not go beyond 5.3 months, below the minimum threshold for durability. ¶102. | Since CB-010 was Caribou's single most important treatment, the Exchange Act Defendants were, or should have been, aware of what data Caribou had beyond 5.3 months. ¶¶8, 46. And as experts in their industry who publicly tracked competitors' products and data – particularly Haurwitz who is a pioneer in CRISPR genome editing – the Exchange Act Defendants knew or should have known of the industry's 6-month durability threshold, and of the competitor Gracell trial |

**Bergman v. Caribou Biosciences, Inc. et al 3:23-cv-01742-RFL**
**Chart of Allegations**

| | | | based on the similarity in treatments, when touting CB-010 as the first therapy of its kind. ¶¶4, 16, 41, 68-72. |
|---|---|---|---|
| • November 9, 2021<br>• Form 10-Q<br>• Defendants Caribou, Haurwitz, and O'Byrne | CB-010 is the "**first** clinical-stage allogeneic anti-CD19 CAR-T cell therapy" with PD-1 knocked out and Caribou "**demonstrat[ed] in preclinical models**" of CB-010's resulting ability to "**improve[] the persistence of antitumor activity.**" ¶103. | (i) Caribou was not the first to use the PD-1 knockout in an allogeneic CAR-T cell treatment; (ii) the Gracell Trial had already demonstrated that knocking out the PD-1 protein was not linked to enhanced durability or performance; and (iii) Caribou then lacked sufficient preclinical data to conclude that the PD-1 knockout improved the persistence of anti-tumor activity because its pre-clinical data did not go beyond 5.3 months, below the minimum threshold for durability. ¶104 | Since CB-010 was Caribou's single most important treatment, the Exchange Act Defendants were, or should have been, aware of what data Caribou had beyond 5.3 months. ¶¶8, 46. And as experts in their industry who publicly tracked competitors' products and data – particularly Haurwitz who is a pioneer in CRISPR genome editing – the Exchange Act Defendants knew or should have known of the industry's 6-month durability threshold, and of the competitor Gracell trial based on the similarity in treatments, when touting CB-010 as the first therapy of its kind. ¶¶4, 16, 41, 68-72. |

**Bergman v. Caribou Biosciences, Inc. et al 3:23-cv-01742-RFL**
**Chart of Allegations**

| | | | |
|---|---|---|---|
| • March 21, 2022<br>• Form 10-K<br>• Defendants Caribou, Haurwitz, and O'Byrne | CB-010 is the "***first*** clinical-stage allogeneic anti-CD19 CAR-T cell therapy" with PD-1 knocked out and Caribou "**demonstrat[ed] in preclinical models**" CB-010's resulting ability to "**improve[] the persistence of antitumor activity.**" ¶105. | (i) Caribou was not the first to use the PD-1 knockout in an allogeneic CAR-T cell treatment; (ii) the Gracell Trial had already demonstrated that knocking out the PD-1 protein was not linked to enhanced durability or performance; and (iii) Caribou then lacked sufficient preclinical data to conclude that the PD-1 knockout improved the persistence of anti-tumor activity because its pre-clinical data did not go beyond 5.3 months, below the minimum threshold for durability. ¶102. | Since CB-010 was Caribou's single most important treatment, the Exchange Act Defendants were, or should have been, aware of what data Caribou had beyond 5.3 months. ¶¶8, 46. And as experts in their industry who publicly tracked competitors' products and data – particularly Haurwitz who is a pioneer in CRISPR genome editing – the Exchange Act Defendants knew or should have known of the industry's 6-month durability threshold, and of the competitor Gracell trial based on the similarity in treatments, when touting CB-010 as the first therapy of its kind. ¶¶4, 16, 41, 68-72. |
| • March 21, 2022<br>• Form 10-K<br>• Defendants Caribou, Haurwitz, and O'Byrne | "our preclinical *in vivo* data from experiments conducted in mouse xenograft models submitted as part of our CB-010 IND application **demonstrate that knocking out PD-1 leads to a significant increase in the durability of antitumor activity**." ¶106. | Caribou lacked sufficient preclinical data to conclude that the PD-1 knockout improved the persistence of anti-tumor activity because its pre-clinical data did not go beyond 5.3 months, below the minimum threshold for durability. ¶108. | Since CB-010 was Caribou's single most important treatment, the Exchange Act Defendants were, or should have been, aware of what data Caribou had beyond 5.3 months. ¶¶8, 46. And as experts in their industry who publicly tracked competitors' products and data – particularly Haurwitz who is a pioneer in CRISPR genome editing – the Exchange Act Defendants knew or should |

**Bergman v. Caribou Biosciences, Inc. et al 3:23-cv-01742-RFL**
**Chart of Allegations**

| | | | |
|---|---|---|---|
| | | | have known of the industry's 6-month durability threshold when touting what Caribou's data had demonstrated. ¶¶4, 16, 41, 68. |
| • March 21, 2022<br>• Form 10-K<br>• Defendants Caribou, Haurwitz, and O'Byrne | "CB-010 cells demonstrate **dose-dependent** and robust cytotoxic activity at a range of effector-to-target ratios compared to negative control cells." ¶107. | CB-010's entire mechanism of action was questionable; indeed, as investors would later learn, patients did not exhibit durable responses to CB-010 despite being given triple the initial dose. ¶¶88, 108. | As experts in their industry who publicly tracked competitors' products and data – particularly Haurwitz who is a pioneer in CRISPR genome editing – the Exchange Act Defendants knew or should have known of the results of the competitor Gracell trial based on the similarity in treatments, which found that "CAR-T cell-instrinsic modification **alone**, for example, knocking out PD-1 in CAR-T cells, may not be enough to induce promising outcomes in the treatment of patients." ¶¶68-72. |
| • May 9, 2022<br>• Form 10-Q<br>• Defendants Caribou, Haurwitz, and O'Byrne | CB-010 is the "**first** clinical-stage allogeneic anti-CD19 CAR-T cell therapy" with PD-1 knocked out and Caribou "**demonstrat[ed] in preclinical models**" CB-010's resulting ability **to "improve[] the persistence of antitumor activity**." ¶109. | (i) Caribou was not the first to use the PD-1 knockout in an allogeneic CAR-T cell treatment; (ii) the Gracell Trial had already demonstrated that knocking out the PD-1 protein was not linked to enhanced durability or performance; and (iii) Caribou then lacked sufficient preclinical data to conclude that the PD-1 knockout improved the | Since CB-010 was Caribou's single most important treatment, the Exchange Act Defendants were, or should have been, aware of what data Caribou had beyond 5.3 months. ¶¶8, 46. And as experts in their industry who publicly tracked competitors' products and data – particularly Haurwitz who is a pioneer in CRISPR |

**Bergman v. Caribou Biosciences, Inc. et al 3:23-cv-01742-RFL**
**Chart of Allegations**

| | | persistence of anti-tumor activity because its pre-clinical data did not go beyond 5.3 months, below the minimum threshold for durability. ¶102. | genome editing – the Exchange Act Defendants knew or should have known of the industry's 6-month durability threshold, and of the results of the competitor Gracell trial based on the similarity in treatments, when touting CB-010 as the first therapy of its kind. ¶¶4, 16, 41, 68-72. |
|---|---|---|---|
| • May 12, 2022<br>• Press Release<br>• Defendants Caribou and Haurwitz | "-- **100% ORR (5 of 5 patients) and 80% CR (4 of 5 patients) achieved following 1 dose** at the initial dose level in patients with aggressive r/r B-NHL<br><br>  -- **CB-010 is the 1st allogeneic CAR-T cell therapy to achieve 100% ORR** (5 of 5 patients)" ¶110. | The Exchange Act Defendants failed to disclose the six-month data which was far less impressive and revealed that three of six patients in the ANTLER Trial had relapsed with progressive disease and only two out of five patients were still responding to treatment at six months. ¶114. | The Exchange Act Defendants had Caribou's actual six-month data in hand when they disclosed the misleadingly positive 3-month data because the cutoff date for the ANTLER six-month data was May 13, 2022, just one day after they issued the May 2022 Press Release. ¶114.<br><br>And because the Exchange Act Defendants were experts in their industry who publicly tracked competitors' products and data – particularly Haurwitz who is a pioneer in CRISPR genome editing – investors relied upon Haurwitz's statements putting Caribou's glowing results in context: "The approved CAR-Ts that focus on CD19-positive disease have achieved overall response rates |

**Bergman v. Caribou Biosciences, Inc. et al 3:23-cv-01742-RFL**
**Chart of Allegations**

| | | | |
|---|---|---|---|
| | | | of about 50% to 70% and overall response rates of 30% to 50%. These include Gilead's Yescarta, Bristol Myers Squibb's Breyanzi and Novartis' Kymriah." ¶¶16, 41, 113. |
| • May 12, 2022 <br> • Press Release <br> • Defendants Caribou and Haurwitz | The Company's "**initial results demonstrate[ed] a 100% overall response rate (ORR) and 80% complete response rate (CR) in cohort** 1 (n=5 evaluable) from its ANTLER Phase 1 trial for CB-010 in patients with relapsed or refractory B cell non-Hodgkin lymphoma (r/r B-NHL)." ¶111. | The Exchange Act Defendants failed to disclose the six-month data of which was far less impressive and revealed that three of six patients in the ANTLER Trial had relapsed with progressive disease and only two out of five patients were still responding to treatment at six months. ¶114. | The Exchange Act Defendants had Caribou's actual six-month data in hand when they disclosed the misleadingly positive 3-month data because the cutoff date for the ANTLER six-month data was May 13, 2022, just one day after they issued the May 2022 Press Release. ¶114. |
| • May 12, 2022 <br> • Press Release <br> • Defendants Caribou and Haurwitz | "These excellent initial outcomes represent important steps toward **validating our chRDNA genome-editing platform as well as our plans for future development of** CB-010 and our broader pipeline" and CB-010 as "the **first** allogeneic anti-CD19 CAR-T cell therapy in the clinic with a PD-1 knock-out, a genome-editing strategy designed to limit premature CAR-T cell exhaustion…" ¶112. | The Exchange Act Defendants failed to disclose the six-month data of which was far less impressive and revealed that three of six patients in the ANTLER Trial had relapsed with progressive disease and only two out of five patients were still responding to treatment at six months. ¶114. | The Exchange Act Defendants had Caribou's actual six-month data in hand when they disclosed the misleadingly positive 3-month data because the cutoff date for the ANTLER six-month data was May 13, 2022, just one day after they issued the May 2022 Press Release. ¶114. <br><br> And because the Exchange Act Defendants were experts in their industry who publicly |

**Bergman v. Caribou Biosciences, Inc. et al 3:23-cv-01742-RFL**
**Chart of Allegations**

| | | | |
|---|---|---|---|
| | | | tracked competitors' products and data – particularly Haurwitz who is a pioneer in CRISPR genome editing – investors relied upon Haurwitz's statements putting Caribou's glowing results in context: "The approved CAR-Ts that focus on CD19-positive disease have achieved overall response rates of about 50% to 70% and overall response rates of 30% to 50%. These include Gilead's Yescarta, Bristol Myers Squibb's Breyanzi and Novartis' Kymriah." ¶¶16, 41, 113. |
| • June 10, 2022<br>• Conference Call<br>• Defendants Caribou and Haurwitz | **"on the poster in a preclinical model where we allowed the mice to become heavily burdened by tumor growth for quite some time and then we did the treatments and what you see is that CB-010 leads to longer durability…"** ¶116. | The Exchange Act Defendants failed to disclose the Gracell Trial which called into question the PD-1 knockout mechanism as a basis for longer durability and thus whether increased dosing would lead to better durability. ¶118. | As the results of the Gracell Trial had already been published, the Exchange Act Defendants were either aware of the Gracell Trial or recklessly failed to learn of it, given the similarity between the two treatments, their expertise in the industry – particularly Haurwitz who is a pioneer in CRISPR genome editing, and Caribou's public tracking of its competitors and their data. ¶¶16, 41, 68-72. |

**Bergman v. Caribou Biosciences, Inc. et al 3:23-cv-01742-RFL**
**Chart of Allegations**

| | | | |
|---|---|---|---|
| • June 10, 2022<br>• Conference Call<br>• Defendants Caribou and Haurwitz | "To **the snapshot of data that we have today is 40% of patients remaining in CR six months out, which we think is very promising initial data** and obviously something we'll continue to track for patients at this dose level as well as in dose level two. **That's really a big motivator for moving to 80 million cells for the second cohort**." ¶117. | The Exchange Act Defendants failed to disclose the Gracell Trial which called into question the PD-1 knockout mechanism as a basis for longer durability and thus whether increased dosing would lead to better durability. ¶118. | As the results of the Gracell Trial had already been published, the Exchange Act Defendants were either aware of the Gracell Trial or recklessly failed to learn of it, given the similarity between the two treatments, their expertise in the industry – particularly Haurwitz who is a pioneer in CRISPER genome editing, and Caribou's public tracking of its competitors and their data. ¶¶16, 41, 68-72. |
| • August 9, 2022<br>• Form 10-Q<br>• Defendants Caribou, Haurwitz, and O'Byrne | Caribou "**demonstrat[ed] in preclinical models**" CB-010's purported ability to "**improve[] the persistence of antitumor activity.**" ¶119. | Caribou lacked sufficient preclinical data to conclude that the PD-1 knockout improved the persistence of anti-tumor activity. Specifically, the pre-clinical data did not go beyond 5.3 months, below the minimum threshold for durability. ¶120. | Since CB-010 was Caribou's single most important treatment, the Exchange Act Defendants were, or should have been, aware of what data Caribou had beyond 5.3 months. ¶¶8, 46. And as experts in their industry who publicly tracked competitors' products and data – particularly Haurwitz who is a pioneer in CRISPR genome editing – the Exchange Act Defendants knew or should have known of the industry's 6-month durability threshold, and of the results of the competitor Gracell trial based on the similarity in treatments, when touting what Caribou's data |

**Bergman v. Caribou Biosciences, Inc. et al 3:23-cv-01742-RFL**
**Chart of Allegations**

| | | | demonstrated. ¶¶4, 16, 41, 68-72. |
|---|---|---|---|
| • November 8, 2022<br>• Press Release<br>• Defendants Caribou and Haurwitz | **"We have seen highly promising results from our lead allogeneic cell therapy, CB-010, at the lowest starting dose** in the ANTLER clinical trial in patients with [r/r -NHL] . . . . **The . . . antitumor activity for CB-010 at dose level 1 are encouraging**..." ¶121. | The Exchange Act Defendants failed to disclose the Gracell Trial, which called into question the viability of CB-010's purportedly unique mechanism of action in knocking out PD-1, meaning that no matter how high the dose, CB-010 would not demonstrate efficacy and durability. ¶122. | As experts in their industry who publicly tracked competitors' products and data – particularly Haurwitz who is a pioneer in CRISPR genome editing – the Exchange Act Defendants knew or should have known of the results of the competitor Gracell trial based on the similarity in treatments, which found that "CAR-T cell-instrinsic modification **alone**, for example, knocking out PD-1 in CAR-T cells, may not be enough to induce promising outcomes in the treatment of patients." ¶¶68-72. |
| • November 8, 2022<br>• Form 10-Q<br>• Defendants Caribou, Haurwitz, and O'Byrne | Caribou "**demonstrat[ed] in preclinical models**" CB-010's purported ability to "**improve[] the persistence of antitumor activity**." ¶123 | (i) Caribou was not the first to use the PD-1 knockout in an allogeneic CAR-T cell treatment; (ii) the Gracell Trial had already demonstrated that knocking out the PD-1 protein was not linked to enhanced durability or performance; and (iii) Caribou then lacked sufficient preclinical data to conclude that the PD-1 knockout improved the persistence of anti-tumor activity because its pre-clinical data did not go beyond 5.3 months, | Since CB-010 was Caribou's single most important treatment, the Exchange Act Defendants were, or should have been, aware of what data Caribou had beyond 5.3 months. ¶¶8, 46. And as experts in their industry who publicly tracked competitors' products and data – particularly Haurwitz who is a pioneer in CRISPER genome editing – the Exchange Act Defendants knew or should have known of the industry's 6- |

**Bergman v. Caribou Biosciences, Inc. et al 3:23-cv-01742-RFL**
**Chart of Allegations**

| | | below the minimum threshold for durability. ¶102. | month durability threshold, and of the results of the competitor Gracell trial based on the similarity in treatments, when touting what Caribou's data demonstrated. ¶¶4, 16, 41, 68-72. |
|---|---|---|---|
| • November 17, 2022<br>• Jeffries LLC London Healthcare Conference<br>• Defendant Haurwitz | **"To put this in context, what we often hear from KOLs in this space, is that there are real world experience with their patients in the clinic today, is about a 33% six months CR rate with autologous CAR-Ts."** ¶124 | The Exchange Act Defendants failed to disclose that unlike its autologous counterparts, CB-010 would not demonstrate increased durability when administered at a higher dose because the Gracell Trial called into question CB-010's PD-1 knockout as a basis for increased durability. At the very least, the Exchange Act Defendants were required to disclose the Gracell Trial and its implications. ¶¶118, 128. | As experts in their industry who publicly tracked competitors' products and data – particularly Haurwitz who is a pioneer in CRISPR genome editing – the Exchange Act Defendants knew or should have known of the results of the competitor Gracell trial based on the similarity in treatments, when touting what Caribou's data demonstrated. ¶¶4, 16, 41, 68-72 |
| • December 12, 2022<br>• Press Release<br>• Defendants Caribou and Haurwitz | **"The long-term durability at dose level 1 is comparable to autologous cell therapies"** ¶126. | The Exchange Act Defendants failed to disclose that unlike its autologous counterparts, CB-010 would not demonstrate increased durability when administered at a higher dose because the Gracell Trial called into question CB-010's PD-1 knockout as a basis for increased durability. At the very least, the Exchange Act Defendants were required to | As experts in their industry who publicly tracked competitors' products and data – particularly Haurwitz who is a pioneer in CRISPR genome editing – the Exchange Act Defendants knew or should have known of the results of the competitor Gracell trial based on the similarity in treatments, when touting what Caribou's data demonstrated. ¶¶4, 16, 41, 68-72. |

**Bergman v. Caribou Biosciences, Inc. et al 3:23-cv-01742-RFL**
**Chart of Allegations**

| | | | |
|---|---|---|---|
| | | disclose the Gracell Trial and its implications. ¶¶128, 118. | |
| • March 9, 2023<br>• Press Release<br>• Defendants Caribou and Haurwitz | "**The initial dose level of CB-010 demonstrated 6-month complete response rates that have the potential to rival the responses seen with approved autologous CAR-T cell therapies**." ¶127. | Defendants failed to disclose that unlike its autologous counterparts, CB-010 would not demonstrate increased durability when administered at a higher dose because the Gracell Trial called into question CB-010's PD-1 knockout as a basis for increased durability. At the very least, the Exchange Act Defendants were required to disclose the Gracell Trial and its implications. ¶¶128, 118. | As experts in their industry who publicly tracked competitors' products and data – particularly Haurwitz who is a pioneer in CRISPR genome editing – the Exchange Act Defendants knew or should have known of the results of the competitor Gracell trial based on the similarity in treatments, when touting what Caribou's data demonstrated. ¶¶4, 16, 41, 68-72. |
| • March 9, 2023<br>• Form 10-K<br>• Defendants Caribou, Haurwitz, and O'Byrne | Caribou "**demonstrat[ed in preclinical models**" CB-010's purported ability to "**improve[] the persistence of antitumor activity**" ¶129. | (i) Caribou was not the first to use the PD-1 knockout in an allogeneic CAR-T cell treatment; (ii) the Gracell Trial had already demonstrated that knocking out the PD-1 protein was not linked to enhanced durability or performance; and (iii) Caribou then lacked sufficient preclinical data to conclude that the PD-1 knockout improved the persistence of anti-tumor activity because its pre-clinical data did not go beyond 5.3 months, below the minimum threshold for durability. ¶102. | Since CB-010 was Caribou's single most important treatment, the Exchange Act Defendants were, or should have been, aware of what data Caribou had beyond 5.3 months. ¶¶8, 46. And as experts in their industry who publicly tracked competitors' products and data – particularly Haurwitz who is a pioneer in CRISPR genome editing – the Exchange Act Defendants knew or should have known of the industry's 6-month durability threshold, and of the results of the competitor Gracell trial based on the |

**Bergman v. Caribou Biosciences, Inc. et al 3:23-cv-01742-RFL**
**Chart of Allegations**

| | | | |
|---|---|---|---|
| | | | similarity in treatments, when touting what Caribou's data demonstrated. ¶¶4, 16, 41, 68-72. |
| • May 9, 2023<br>• Form 10-Q<br>• Defendants Caribou, Haurwitz, and O'Byrne | **"We have demonstrated in preclinical models that the PD-1 knockout improves the durability of antitumor activity."** ¶130. | (i) Caribou then lacked the pre-clinical data to show that PD-1 knockout would improve allogeneic durability given that the pre-clinical data in the Registration Statement did not go past 5.3 months and given that 6 months is the minimum threshold for durability and (ii) the Exchange Act Defendants failed to disclose that the Gracell Trial called into question the notion that the PD-1 knockout improves durability. | Since CB-010 was Caribou's single most important treatment, the Exchange Act Defendants were, or should have been, aware of what data Caribou had beyond 5.3 months. ¶¶8, 46. And as experts in their industry who publicly tracked competitors' products and data – particularly Haurwitz who is a pioneer in CRISPR genome editing – the Exchange Act Defendants knew or should have known of the industry's 6-month durability threshold, and of the results of the competitor Gracell trial based on the similarity in treatments, when touting what Caribou's data demonstrated. ¶¶4, 16, 41, 68-72. |