**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

*[Additional Counsel on Signature Page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| RON BERGMAN, Individually and on Behalf of All Others Similarly Situated, | Case No.:  3:23-cv-01742-RFL |
| Plaintiff, | CLASS ACTION |
| v. | **JOINT DECLARATION OF SARA FUKS AND BRIAN SCHALL** |
| CARIBOU BIOSCIENCES, INC., RACHEL E. HAURWITZ, JASON V. O'BYRNE, RYAN FISCHESSER, SCOTT BRAUNSTEIN, ANDREW GUGGENHIME, JEFFREY LONG-MCGIE, NATALIE R. SACKS, BOFA SECURITIES INC., CITIGROUP GLOBAL MARKETS, INC., and SVB SECURITIES LLC, | Hearing Date: August 27, 2024 Time: 10:00 am Location:  Courtroom 15, 18th Floor Judge: Rita F. Lin |
| Defendants. | |

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

JOINT DECLARATION OF SARA FUKS AND BRIAN SCHALL; Case No. 3:23-cv-01742-RFL

I, Sara Fuks and Brian Schall, hereby declare and state as follows:

1.    I, Sara Fuks, am an attorney duly licensed to practice in the State of New York and admitted *pro hac vice* in the above-captioned action. I am a partner at The Rosen Law Firm, P.A. ("Rosen Law"), Court-appointed Co-Lead Counsel for Lead Plaintiff Ron Bergman and counsel for named Plaintiff Carl Cooper (collectively, "Plaintiffs") and the proposed Settlement Class in the above-captioned action. I have personal knowledge of the facts set forth herein and if called upon to testify, I could and would do so truthfully and accurately. I submit this declaration, together with the attached exhibits, in support of Plaintiffs' Unopposed Motion for Preliminarily Approval of Settlement.

2.    I, Brian Schall, am an attorney duly licensed to practice in the State of California and admitted in the above-captioned action. I am the founding partner of The Schall Law Firm ("Schall Law"), Court-appointed Co-Lead Counsel for Lead Plaintiff Ron Bergman and counsel for named Plaintiff Carl Cooper and the proposed Settlement Class in the above-captioned action. I have personal knowledge of the facts set forth herein and if called upon to testify, I could and would do so truthfully and accurately. I submit this declaration, together with the attached exhibits, in support of Plaintiffs' Unopposed Motion for Preliminarily Approval of Settlement.

I.    **HISTORY AND BACKGROUND OF THE LITIGATION**

3.    Ron Bergman filed the initial complaint in this Action on April 11, 2023, alleging violations of §§ 11 and 15 of the Securities Act of 1933 ("Securities Act") against Defendant Caribou Biosciences, Inc., ("Caribou" or the "Company"), and Defendants Rachel Haurwitz, Jason O'Byrne, Ryan Fischesser, Scott Braunstein, Andrew Guggenhime, Jeffrey Long-McGie, and Natalie Sacks ("Individual Defendants" and together with Caribou, "Caribou Defendants"); and alleging violations of §10(b) of the Securities Exchange Act of 1934 ("Exchange Act") against Defendant Caribou and Defendants Rachel Haurwitz and Jason O'Byrne and §20(a) of the Exchange Act against Rachel Haurwitz and Jason O'Byrne. Dkt. No. 1.

4.    Mr. Bergman moved for appointment as lead plaintiff and approval of lead counsel on June 1, 2023. Dkt. No. 18. On July 6, 2023, the Court entered an Order appointing Mr. Bergman as Lead Plaintiff and Rosen Law and Schall Law as co-Lead Counsel. Dkt. No. 26.

5. On September 18, 2023, Mr. Bergman, together with named Plaintiff Carl Cooper, filed the Amended Class Action Complaint for Violations of the Federal Securities Laws ("Complaint" or "AC"). Dkt. No. 35. In addition to alleging Securities Act and Exchange Act violations against the Caribou Defendants, the AC alleged violations of the Securities Act against Defendants BofA Securities, Inc., Citigroup Global Markets Inc., and Leerink Partners LLC f/k/a SVB Securities LLC ("Underwriter Defendants," and together with Caribou Defendants, "Defendants"). Among other things, the AC alleged that the Caribou Defendants made false and misleading statements in the offering documents issued in connection with Caribou's July 23, 2021 initial public offering ("IPO"), and in additional public statements made after the IPO, alleging violations of §§ 11 and 15 of the Securities Act and §§ 10(b) and 20(a) of the Exchange Act.

6. On November 14, 2023, the Caribou Defendants filed a Notice of Motion and Motion to Dismiss the Amended Complaint and Request for Judicial Notice. Dkt. Nos. 50-52. On November 21, 2023 the Underwriter Defendants filed a Notice of Motion and Motion to Dismiss the Amended Complaint. Dkt. No. 53. Plaintiffs filed their oppositions to Defendants' Motions to Dismiss on January 22, 2024. Dkt. Nos. 62-63. Defendants filed their replies on February 21, 2024. Dkt. Nos. 64-65.

7. On April 16, 2024 Plaintiffs and the Caribou Defendants participated in an all-day private mediation with the Honorable S. James Otero (Ret.). In connection with the mediation, Plaintiffs and the Caribou Defendants exchanged detailed mediation statements.

8. Although the Parties were unable to resolve the matter at the mediation, following the mediation Judge Otero proposed, and Plaintiffs and the Caribou Defendants accepted, a mediator's proposal to resolve the Action as to all Defendants. The mediator's proposal provided that the Parties would settle and release all claims asserted against Defendants in the Action in return for a cash payment of $3,900,000 for the benefit of the Settlement Class, subject to certain terms and conditions and the execution of a customary formal stipulation and agreement of settlement and related papers.

9.      On May 8, 2024, the Parties filed a stipulation and proposed order, which the Court entered, notifying the Court of the settlement in principle and staying the hearing on Defendants' motions to dismiss while the Parties worked to formalize the Settlement. Dkt. Nos. 73 and 74.

10.     On June 28, 2024, the Parties executed the Stipulation of Settlement ("Stipulation"), a true and correct copy of which is attached hereto as Exhibit 1.[1] Annexed as exhibits to the Stipulation are the following documents:

| Exhibit | Description |
|---------|-------------|
| A | [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order") |
| A-1 | Notice of Pendency and Proposed Settlement of Class Action ("Long Notice") |
| A-2 | Proof of Claim and Release Form ("Claim Form") |
| A-3 | Summary Notice of Pendency and Proposed Settlement of Class Action ("Summary Notice") |
| A-4 | Postcard Notice |
| B | [Proposed] Order and Final Judgment |

11.     On March 23, 2023, a parallel putative class action alleging claims under the Securities Act against the Caribou Defendants was filed in the Superior Court of the State of California, Alameda County. *Lowry v. Caribou Biosciences, Inc., et al.*, Case No. 23CV029855 ("*Lowry*"). On April 15, 2024, the court issued an order dismissing the *Lowry* action on the ground that Caribou's certificate of incorporation contained a forum selection clause providing that the federal district courts of the United States shall be the exclusive forum for the resolution of any complaint asserting a cause of action arising under the Securities Act. The instant settlement, if approved, releases the claims in the State Court Action. The class definition in the State Court Action is "all persons and entities other than Defendants that purchased or otherwise acquired Caribou common stock in the IPO or purchased Caribou common stock thereafter in the stock market pursuant and/or traceable to the Company's Registration Statement issued in connection

_____

[1] All capitalized terms not otherwise defined herein have the same meanings as set forth in the Stipulation.

with the IPO and were damaged thereby." (Amended Complaint for Violations of the Securities Act of 1933 in *Lowry*, filed Sept. 18, 2023, ¶101). Prior to the mediation, Lead Counsel informed plaintiffs' counsel in the State Court Action, the law firm of Pomerantz LLP ("State Court Plaintiffs' Counsel"), that a mediation had been scheduled, and obtained State Court Plaintiffs' Counsel's consent to settle the Action, after State Court Plaintiffs' Counsel received settlement authority from State Court Plaintiff. State Court Plaintiffs' Counsel did not participate in the mediation or the settlement negotiations. Given the overlap between the instant Action and the State Court Action, and the fact that a proposed settlement and release of the claims in the Action would also release the claims in the State Court Action, Lead Counsel coordinated with State Court Plaintiffs' Counsel throughout the pendency of the Action to ensure that neither would release the Securities Act claims without the others' knowledge and consent. This level of coordination between Lead Counsel and State Court Plaintiffs' Counsel provides assurance that the claims in the Action may be fully and finally released.

## II.    INFORMATION ABOUT THE SETTLEMENT

### A.    Settlement Class Definition

12.    Under the terms of the Settlement, the Parties agreed, subject to Court approval, to certification of a Settlement Class defined as: all persons and entities who purchased Caribou common stock between July 23, 2021 and July 13, 2023, both dates inclusive and were damaged thereby. Included in the Settlement Class are all persons who purchased Caribou common stock pursuant to and/or traceable to Caribou's Registration Statement and prospectus issued in connection with Caribou's July 23, 2021 IPO and all persons and entities who purchased Caribou common stock during the Settlement Class Period at artificially inflated prices and were damaged thereby. Excluded from the Settlement Class are: (a) persons who suffered no compensable losses; and (b) Defendants; the Company's present and former officers and directors during the Settlement Class Period; members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any Defendant, or any person excluded under this subsection (b), has or had a majority ownership interest during the Settlement Class Period. Stipulation ¶1.34.

13.    There are no substantive differences between the class definition proposed in the AC (Dkt. No. 35 ¶241) and the Settlement Class definition.

**B.    The Releases**

14.     In the proposed Settlement, the Parties agreed that Plaintiffs and each of the other Settlement Class Members shall waive and release the Released Claims Against Defendants and the other Released Parties in exchange for a payment by or on behalf of Defendants of $3,900,000 in cash.

15.    "Released Claims" is defined in the Stipulation (¶1.29) as "any and all Claims and Unknown Claims (as defined in ¶1.40) whether arising under federal, state, common, or foreign law: (i) that were asserted in any complaint filed in the Action or in *Lowry*, or could have been asserted or could in the future be asserted in any court or forum, that arise out of, are based upon, or relate in any way to any of the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth or referred to in any complaint filed in the Action or in *Lowry*, or which could have been filed in the Action or in *Lowry*, or (ii) that concern in any way, directly or indirectly, the purchase, acquisition, solicitation, holding, sale or disposition of Caribou common stock during the Settlement Class Period."  Notwithstanding the foregoing, "Released Claims" does not include claims to enforce the terms of this Stipulation or orders or judgments issued by the Court in connection with this Settlement.

16.    Released Parties are defined in the Stipulation (¶1.30) as "Defendants and each and all of their respective immediate family members, parent entities, associates, affiliates or subsidiaries, and each and all of their respective past, present or future officers, directors, controlling shareholders, agents, representatives, employees, attorneys, financial or investment advisors, advisors, consultants, partners, accountants, investment bankers, commercial bankers, trustees, engineers, agents, insurers, co-insurers and reinsurers, heirs, executors, general or limited partners or partnerships, personal or legal representatives, estates, administrators, predecessors, successors and assigns, and any person or entity which is or was related to or affiliated with any Released Party or in which any Released Party has a controlling interest, and their present and former parents, subsidiaries, variable interest entities, divisions, affiliates, employees, officers, directors, principals,

controlling shareholders, underwriters, attorneys, legal representatives, insurers, reinsurers, and agents, and the predecessors, heirs, administrators, successors and assigns of the foregoing."

17.    The scope of this release is reasonable as it is limited to claims that were or could have been asserted in the Action or in *Lowry* or that are related to "the purchase, acquisition, solicitation, holding, sale or disposition of Caribou common stock during the Settlement Class Period."  Stipulation ¶1.29.

### C.    The Anticipated Recovery Under the Settlement

18.    The $3,900,000 cash Settlement Amount amounts to an estimated average recovery of approximately $0.08 per allegedly damaged share (based on the approximately 50.6 million allegedly damaged shares traded during the Settlement Class Period as estimated by Plaintiffs' damages expert) before the deduction of Court-approved fees and expenses and costs of notice and claims administration, pursuant to the proposed Plan of Allocation.

19.    Based on the proposed Claims Administrator's experience, Lead Counsel estimates the total costs of the notice and claims administration process are estimated to range between $154,000 and $232,000.[2] Lead Counsel intends to request attorneys' fees of up to 28% of the Settlement Fund, reimbursement of up to $60,000 in litigation expenses, and a Compensatory Award to Plaintiffs of $7,500 total.

20.    After deduction of the requested attorneys' fees, reimbursement of litigation expenses, Compensatory Award to Plaintiffs, and total notice and claims administration costs, the total estimated Net Settlement Fund distributed to Authorized Claimants will be approximately $2,558,000, or an average recovery per allegedly damaged share of approximately $0.06 per allegedly damaged share. Thus, approximately 66% of the Settlement Amount will be distributed to Settlement Class Members.

21.    If Plaintiffs had successfully defeated all Defendants' pending motions to dismiss as to both their Securities Act claims and Exchange Act claims, obtained certification of a class co-

[2] *See* Declaration of Paul Mulholland Regarding Procedures for Securely Handling Class Member Data; Comparative Settlements; and Administrative Services and Costs  ("Mulholland Declaration" or "Mulholland Decl."), attached hereto as Exhibit 2, at ¶17.

extensive with the Settlement Class, fully prevailed in each of their claims at summary judgment and after a jury trial, if the Court and jury awarded Plaintiffs' damages—*i.e.*, Plaintiffs' best-case scenario—estimated total maximum damages would have been approximately $256,500,000. Thus, the $3,900,000 Settlement Amount represents approximately 1.52% of the maximum recoverable damages potentially available in this Action. If Plaintiffs prevailed only on their Securities Act claims, estimated total maximum damages would have been approximately $191,200,000, with the $3,900,000 Settlement Amount therefore representing approximately 2% of maximum damages. And, if Plaintiffs prevailed on their Exchange Act claims only, maximum damages would have been approximately $65,400,000, with the $3,900,000 Settlement Amount therefore representing approximately 6% of maximum damages. These percentages are in line with other securities class action settlements. According to NERA Economic Consulting, in 2023 the median ratio of settlements to investor losses was 1.8%. Edward Flores and Svetlana Staryk, *Recent Trends in Securities Class Action Litigation: 2023 Full Year in Review,* at 26 (Fig. 22)., available at: www.nera.com/content/dam/nera/publications/2024/PUB_2023_Full-Year_Sec_Trends_0123.pdf

22.    Prior to agreeing to the Settlement, Lead Counsel considered several factors, supporting Lead Counsel's belief that the percentage of recovery is reasonable, including:

a.    Lead Counsel's extensive investigation, and legal research of the claims asserted in this Action, which helped to evaluate and understand the strengths and weaknesses of these claims, including: (i) reviewing Caribou's SEC filings, press releases, conference calls, news reports, and other public statements made by Defendants prior to, during, and after the Settlement Class Period; (ii) reviewing public documents, reports, announcements, and news articles concerning Caribou, including medical and scientific literature concerning Caribou and its competitors; (iii) reviewing research reports by securities analysts; (iv) retaining a private investigator to conduct interviews with former Caribou employees; (v) consulting an expert in the field of Oncology and Immunology; and (vi) retaining an economic expert to conduct a damages analysis.

b.    The arguments set forth in Defendants' motions to dismiss the AC, which presented significant risks to both the Securities Act and Exchange Act claims, including the attendant risk that the Court would dismiss the AC in its entirety, leaving Plaintiffs and the putative class with no recovery at all.

c.    The difficulty, potential for success, and time and expense required to defeat motions for summary judgment, obtain class certification, conduct discovery, hire experts, and prevail at trial, *if*, the Court sustained the Complaint at the pleadings stage.

**D.    The Proposed Plan of Allocation of the Settlement Fund**

23.    The Plan of Allocation is detailed in the Long Notice at pp. 7-10. The Long Notice will be posted online at a Settlement-dedicated website maintained by the Claims Administrator, is downloadable, and will be emailed (via a link to the Settlement-dedicated website), or if no email address can be obtained, a postcard notice will be physically mailed or otherwise electronically circulated to Settlement Class Members who can be identified with reasonable effort.

24.    Under the proposed Plan of Allocation, each Authorized Claimant will receive their *pro rata* share of the Net Settlement Fund, which is the Settlement Fund (*i.e.,* the $3,900,000 Settlement Amount plus any and all interest earned thereon) less any: (i) Taxes; (ii) Notice and Administration Costs; (iii) attorneys' fees awarded by the Court; (iv) litigation expenses awarded by the Court; and (v) Compensatory Award to Plaintiffs awarded by the Court. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Loss divided by the total of Recognized Losses of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

25.    The Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on a "Recognized Loss" formula that is based on the timing of the purchases and sales of Caribou common stock and the declines that occurred in the price of the stock, as alleged in the AC.

26.    An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including the number of valid claims filed by other Claimants and how many

shares of Caribou common stock the Claimant purchased, acquired, or sold during the Settlement Class Period. If a Claimant purchased and sold shares prior to an alleged corrective disclosure, the Claimant's recovery under the Plan of Allocation will be zero. This is a widely accepted approach to the fair distribution of settlement funds in securities class action settlements. Lead Counsel believes that the Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Settlement Class Members who submit valid claims.

**E.      Estimate of Claims Rate**

27.      As explained more fully in the attached Mulholland Declaration, Exhibit 2, Strategic Claims Services ("SCS" or the "Claims Administrator") estimates that, based on Caribou's trading history during the Settlement Class Period, there are likely between 50,000 and 80,000 Settlement Class Members. Mulholland Decl. ¶14. Based on SCS's significant experience in notification and claims administration in private securities litigation matters, SCS estimates a claims rate of 30%. *Id*. ¶14. Thus, SCS expects to receive and process between 15,000 to 24,000 claims from Settlement Class Members. *Id*.

**F.      There Are No Reversions to the Defendants**

28.      Pursuant to the Stipulation, this is not a claims-made Settlement. Once the Settlement is final and the time for any appeal has expired, or the Settlement has been affirmed on appeal, no portion of the Settlement Amount will revert to any defendant. Stipulation ¶9.4.

**III.    CLAIMS ADMINISTRATOR SELECTION PROCESS**

29.      Lead Counsel retained SCS to: (i) provide notice of the proposed Settlement to investors who make up the Settlement Class and (ii) administer the claims process.

30.      Lead Counsel engaged SCS after soliciting bids and proposals from seven reputable claims administrators with experience administrating securities class action settlements, and receiving proposals from SCS and one other firm.

31.      Lead Counsel based its decision on multiple factors. First, SCS's proposal was the least expensive on an apples-to-apples comparison. Second, Lead Counsel has had consistent positive experiences with SCS serving as claims administrator in settlements both large and small. In selecting SCS, Lead Counsel carefully considered SCS's estimated cost to administer the entire

Settlement, the cost of the notice program and the cost of each processed Claim, as well as certain fixed costs associated with the administration of the Settlement.

32. In the past two years, SCS administered, or is currently administrating, the following settlements in which the Rosen Law Firm[3] served as Lead Counsel or Co-Lead Counsel: *Electric Last Mile, Inc. Securities Litigation*, 2:22-cv-00545-MEF-LDW (D.N.J.); *Killyoung Oh v. Hanmi Financial Corp. et al.*, No 2:20-cv-02844-FLA-JC (C.D. Cal); *Plagans v. Deckard,* 1:20-cv-2744 (N.D. Ohio); *Miller v. Sonus Networks, Inc et al.*, 1:18-cv-12344-GAO (D. Mass.); *Qiu v. Tarena International, Inc. et al*, 1:21-cv-03502-PKC-RML (E.D.N.Y.); *In re 3D Systems Securities Litigation*, 1:21-cv-01920-TAM (E.D.N.Y.); *Barney v. Nova Lifestyle, Inc. et al*, 2:18-cv-10725-TJH (C.D. Cal.); *In re Shattuck Labs, Inc. Securities Litigation*, 1:22-cv-00560-CBA-RML (E.D.N.Y.); *Horowitz v. Sunlands Technology Group et al*, 1:19-cv-03744-LDH-RML (E.D.N.Y.); *Malespin v. Longeveron Inc., et al.*, 1:21-cv-23303-MGC (S.D. Fla.); *In re Zillow Group, Inc. Securities Litigation*, 2:17-cv-01387-JCC (W.D. Wash.); *Castillo IV v. 6D Global Technologies, Inc., et al.*, 15-cv-8061-DLC (S.D.N.Y.)*; In re Global Brokerage, Inc. f/k/a FXCM, Inc. Securities Litigation*, 1:17-cv-916 (S.D.N.Y.); *Trampe v. CD Projekt S.A., et al.*, 20-cv-11627 FMO (RAOx) (C.D. Cal.); *In re Omega Healthcare Investors, Inc. Securities Litigation*, 1:17-cv08983-NRB (S.D.N.Y.); *Bell v. Kanzhun Limited, et al.*, 2:21-cv-13543-KM-MAH (D.N.J.); *In re Fat Brands Inc. Securities Litigation*, 2:22-cv-01820-MCS-RAO (C.D. Cal.); *In re Akazoo S.A. Securities Litigation*, 1:20-CV-01900-BMC (E.D.N.Y.); *In re Sundial Growers, Inc. Securities Litig.*, 1:!9-cv-08913-ALC (S.D.N.Y.); *Duane & Virginia Lanier Trust v. SandRidge Mississippian Trust I, et al.*, 15-cv-00634-G (W.D. Okla.).

33. SCS's fees for administration of the Settlement will be charged on a per-claim basis and expenses will be billed separately (such as expenses for printing and mailing the Postcard Notices, and upon request, the Claim Form, publishing the Summary Notice, establishing and

---

[3] While the Schall Law Firm is currently co-lead counsel in several securities class actions and has served as additional counsel in numerous securities class actions which have resulted in settlement, the instant Action is the first action pending settlement where the Schall Law Firm is serving as co-lead counsel.

maintaining the website dedicated to the Settlement, and establishing and operating the toll-free telephone helpline).

34.    At this time, SCS estimates that the Notice and Administration Costs, *i.e.*, the anticipated costs to administer the notice program, process Claims, and distribute the Net Settlement Fund, among other tasks, will generate professional service fees and expenses of approximately between $154,000 and $232,000.[4] Mulholland Decl. ¶16.

35.    These costs are necessary in order to provide notice of the Settlement in the manner generally accepted and to properly administer the claims received in response. At approximately 3.9% to 5.9% of the total Settlement Amount, or about $0.003 to $0.005 per allegedly damaged share, these costs are reasonable as they are a function of the significant number of shares traded during the eligibility period under the Plan of Allocation. If the Settlement is approved, the Notice and Administration Costs will be paid from the Settlement Fund. Stipulation ¶3.4.

## IV.    THE NOTICE PROGRAM

### A.    The Notice Distribution Plan

36.    In accordance with the proposed Preliminary Approval Order, attached as Exhibit A to the Stipulation filed herewith, Lead Counsel will cause the Claims Administrator to: (1) email links to the location of the Long Notice and Claim Form to Settlement Class Members for whom the Claims Administrator is able to obtain email addresses, substantially in the form annexed to the Stipulation as Exhibit A-1 and Exhibit A-2; and (2) mail the Postcard Notice, substantially in the form annexed to the Stipulation as Exhibit A-4, if no email address can be obtained, by first class mail, postage prepaid, or by other electronic means to Settlement Class Members who can be identified with reasonable effort by Class Counsel, through the Claims Administrator. As explained above, in consultation with the Class Administrator, Lead Counsel estimates that there are between 50,000 and 80,000 potential Settlement Class Members. *See* Mulholland Decl. ¶14.

37.    Prior to the mailing of the Postcard Notice and emailing links to the location of the Long Notice and Claim Form, Lead Counsel will cause the Claims Administrator to post

---

[4] Based on the estimate of between 50,000 to 80,000 potential Settlement Class Members and approximately 15,000 to 24,000 Claims processed. *See* Mulholland Decl. ¶¶14-15.

downloadable copies of the Long Notice and Claim Form on a website dedicated to the Settlement, maintained by the Claims Administrator. The Claims Administrator will also mail copies of the Long Notice and/or Claim Form to Settlement Class Members upon request.

38. Additionally, the Claims Administrator will publish the Summary Notice over the *GlobeNewswire* and in *Investor's Business Daily*.

39. Lead Counsel believes that this method of notice provides Settlement Class Members with a full and fair opportunity to consider the proposed Settlement and represents the best notice practicable under the circumstances.

40. Courts routinely find that these methods of notice are sufficient to satisfy due process and Rule 23. *Barani v. Wells Fargo Bank, N.A.*, No.12CV2999-GPC (KSC), 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving combination of mailing and online notice in consumer class action); *In re Mut. Funds Inv. Litig.*, No. 04-md-15861-CCB, 2010 WL 2342413, at *6-*7 (D. Md. May 19, 2010) (combination of mailing, posting summary notice, and online hosting "is the best notice practical under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlements").

**B. The Notice Contents Are Adequate**

41. As more fully explained in the accompanying Memorandum of Points and Authorities in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, filed concurrently herewith, the notice program satisfies the requirements of due process, Federal Rule of Civil Procedure 23(c)(2), and the PSLRA (15 U.S.C. § 78u-4(a)(7)), and does so in easily understandable language.

42. The notice program also includes the following information required by the Northern District of California's Procedural Guidance for Class Action Settlements ("Class Settlement Guidance"): (i) the contact information for Lead Counsel to answer questions (*see* Long Notice, p. 3; Summary Notice, p. 3); (ii) the settlement website address (*see* Long Notice, pp. 3, 6-7, 11, 14-15; Summary Notice, p. 2), which will be maintained by SCS and which will contain links to the Notice, the motions for preliminary approval and final approval of settlement; and (iii) instructions

on how to access the case docket via PACER or in person using the language suggested in item 3 of the preliminary approval Class Settlement Guidance (*see* Long Notice, p. 14).

43. Once the Court sets the date for the Final Approval Hearing, Lead Counsel will fill in the blank placeholders found in the Long Notice, Claim Form, Summary Notice, and Postcard Notice so the documents are finalized prior to mailing and publication.

## V. EXCLUSION REQUESTS

44. The notice program instructs potential Settlement Class Members who wish to opt out from the Settlement Class to send such a request to the Claims Administrator so that it is received by the required deadline. The notice program also clearly advises potential Settlement Class Members of the deadline to opt out, the method to opt out, and the consequences of opting out and also includes an opt out form which may be used. *See* Long Notice, p. 14, 17-18; Summary Notice, pp. 2-3.

45. These instructions set forth the information needed to be properly identified and to opt out of the Settlement. *Id*. The identification of Caribou common shares that each potential Settlement Class Member requesting exclusion purchased or acquired during the Settlement Class Period is required, to identify if such person or entity would otherwise be a Settlement Class Member.

## VI. OBJECTIONS

46. The notice program instructs potential Settlement Class Members how to, if they wish, object to the Settlement, the proposed Plan of Allocation, Lead Counsel's motion for an award of attorneys' fees and reimbursement of litigation expenses, and/or the Compensatory Award. *See* Long Notice, pp. 13-14, Summary Notice, p. 3. The Long Notice instructs any potential objector to send their written objection to the Court, and clearly states that the Court can only approve or deny the Settlement. Long Notice, pp. 13-14. The instructions in the Long Notice substantively follow the suggested language in the Class Settlement Guidance.

## VII. ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION EXPENSES, AND COMPENSATORY AWARD

47.     For their efforts on behalf of the Settlement Class, Lead Counsel will apply for a percentage of the common fund fee award as compensation for the services rendered on the Settlement Class's behalf. Lead Counsel anticipates applying to the Court for an award of attorneys' fees in an amount not to exceed 28% of the $3,900,000 Settlement Fund (or up to $1,092,000 plus interest earned at the same rate as the Settlement Fund).

48.     Lead Counsel's total current lodestar is approximately $832,703.25, based on 985.54 hours billed. Based on this lodestar to date, a fee award of 28% would result in a multiplier of 1.3. The lodestar will increase and the multiplier will decrease between now and the time of Lead Counsel's actual fee application, as Lead Counsel's current total lodestar does not include, among other things, time that will be spent in connection with supervising execution of the Notice Plan and the claims administration process, seeking final approval of the Settlement, and moving for and overseeing the distribution of the Net Settlement Fund.

49.     Lead Counsel will also apply for reimbursement of litigation expenses from the Settlement Fund in an amount not to exceed $60,000. These litigation expenses are paid or incurred in connection with the institution, prosecution, and resolution of the claims against Defendants, and they include the substantial costs of retaining experts, mediator fees, and investigator fees.

50.     Lead Counsel will also apply for a Compensatory Award in an amount up to $7,500 total (up to $5,000 for Lead Plaintiff and up to $2,500 the named Plaintiff) as reimbursement for Plaintiffs' time and expenses in representing the Settlement Class.

## VIII.   *CY PRES* AWARD

51.     The Net Settlement Fund will be distributed to Authorized Claimants, and if any funds remain after the initial distribution (for example, due to uncashed or returned checks), a second distribution to Authorized Claimants who would receive at least $10.00 from such a re-distribution will be conducted as long as it is cost effective.

52.     Lead Counsel proposes the Bay Area Financial Education Foundation (http://bafef.org) as the *cy pres* recipient of any residual funds that may remain after one or more distributions of the Net Settlement Fund to Authorized Claimants.

53. The Bay Area Financial Education Foundation is a nonprofit, nonsecterian organization devoted to empowering Bay Area youth through financial education.

54. Given the Bay Area Financial Education Foundation's dedication to financial education, it is an appropriate *cy pres* recipient. In addition, the Parties and their counsel do not have any relationship with the Bay Area Financial Education Foundation other than designating it as a *cy pres* recipient in past settlements.

55. Due to the potential multiple rounds of distributions, it is likely that only a small amount of funds, if any, from the Net Settlement Fund will be directed to the Bay Area Financial Education Foundation.

## IX. PROPOSED SCHEDULE OF EVENTS

56. In connection with preliminary approval of the Settlement, Plaintiffs are requesting that the Court establish: (i) dates by which notice of the Settlement will be distributed to Settlement Class Members; (ii) a date by which Settlement Class Members may exclude themselves from the Settlement; (iii) a date by which Settlement Class Members who wish to object to any aspect of Settlement, Plan of Allocation and/or request for attorneys' fees and reimbursement of litigation expenses, and Compensatory Award to Plaintiffs must submit that objection; and (iv) a date on which the Court will hold the Final Approval Hearing.

57. The following is a proposed schedule which is reflected in the dates contained in the proposed Preliminary Approval Order. The schedule is similar to those used in similar class action settlements and provides due process for potential Settlement Class Members with respect to their rights concerning the Settlement. If this schedule is not convenient for the Court, Plaintiffs requests the Court use at least the same or greater intervals between each event listed in the schedule to allow sufficient time to comply with the Preliminary Approval Order.

| Event | Deadline for Compliance |
| --- | --- |
| Deadline for mailing the Postcard Notice and/or emailing links to location of Long Notice and Claim Form to Settlement Class Members | Within 30 days after entry of Preliminary Approval Order (Preliminary Approval Order ¶14) |

| Posting the Stipulation, Long Notice, and Claim Form and Preliminary Approval Order on Claims Administrator's website | Within 16 days after entry of the Preliminary Approval Order (Preliminary Approval Order ¶17) |
|---|---|
| Publication of Summary Notice | Within 10 days after mailing of Long Notice or emailing links of the Long Notice and Claim Form (Preliminary Approval Order ¶18) |
| Deadline for Lead Plaintiff to file papers in support of final approval and application for fees and expenses | 35 days prior to the Settlement Hearing (Preliminary Approval Order ¶30) |
| Deadline for submitting objections and for requesting exclusion | 21 days prior to the Settlement Hearing (Preliminary Approval Order ¶¶ 22, 26) |
| Deadline for submitting Claim Forms | 30 days prior to the Settlement Hearing (Preliminary Approval Order ¶20(a)) |
| Deadline to file reply papers in support of the Settlement, the Plan, and for application of attorneys' fees and expenses | 14 days prior to the Settlement Hearing (Preliminary Approval Order ¶31) |
| Settlement Hearing | 100-110 days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter |

58. Plaintiffs request that the Settlement Hearing be scheduled for at least 100-110 days after entry of the Preliminary Approval Order to allow sufficient time for notice to federal and state authorities pursuant to the Class Action Fairness Act, notice to Settlement Class Members to file claims, request exclusion from or submit objections to the Settlement, and for Plaintiffs to file their motion papers in support of final approval of the Settlement and the Fee and Expense application.

59. Under this proposed schedule, potential Settlement Class Members would have well over 35 days to opt out or object to the Settlement and/or motion for attorneys' fees and reimbursement of litigation expenses and Compensatory Award.

X.    **CLASS ACTION FAIRNESS ACT ("CAFA") NOTICE**

60. Caribou will provide notice pursuant to CAFA (28 U.S.C. § 1715 *et seq.*) and will file with the Court at least seven days before the Settlement Hearing an affidavit or declaration regarding compliance with the CAFA notice requirements. Stipulation ¶7.6.

XI.    **PAST DISTRIBUTIONS**

61. The Class Settlement Guidance requests information regarding a previous distribution for at least one of Lead Counsel's past comparable class action settlements. The

following chart represents the requested information for another class action settlement for violations of the federal securities laws in which Rosen Law served as Lead Counsel:

| Matter | *In re Silver Wheaton Corp. Sec. Litig.*, No. 2:15-cv-05146-CASPJWx (C.D. Cal.) |
|---|---|
| **Total Settlement Fund** | $41,500,000.00 |
| **Method of Notice** | Mailed Postcard Notice and Summary Notice published in *Investor's Business Daily* and disseminated on a newswire over the internet |
| **Total Number of Notices Sent[5]** | At least 482,778 |
| **Number of Claim Forms Submitted** | 100,480 |
| **Claims Forms Submitted as Percentage of Notices Sent** | 20.81% |
| **Number of Acceptable (In Whole or In Part) Claim Forms Submitted** | 10,559 |
| **Average Recovery per Claimant (based on number of Acceptable Claims)** | $3,930.29 |
| ***Cy Pres* Recipient** | No *cy pres* distribution made |
| **Amount Distributed to *Cy Pres* Recipient** | |
| **Administration Costs** | $1,269,231.32 |
| **Attorneys' Fees** | $12,450,000.00 |
| **Litigation Expenses** | $1,090,186.76 |

## XII.    LIST OF EXHIBITS

62.    Attached as Exhibit 1 is a true and correct copy of the Stipulation of Settlement, executed on June 28, 2024, with its attached exhibits.

63.    Attached as Exhibit 2 is a true and correct copy of the Declaration of Paul Mulholland Regarding Notice Plan, executed on June 27, 2024.

---

[5] Lead Counsel is unable to provide the total number of class members, because, as explained further in the Mulholland Declaration (¶6), most securities are held under a "street name" system in which the vast majority of investors hold their securities through a brokerage firm, institution, or other third-party nominee and do not actually purchase and hold securities under their own names.

64.     Attached as Exhibit 3 is a true and correct copy of the Order entered on April 15, 2024 in the action *Lowry v. Caribou Biosciences, Inc., et al.*, Case No. 23-CV-029855 (Alameda County Superior Court).

We declare under the penalty of perjury under the laws of the United State of America that the foregoing is true and correct. Executed on June 28, 2024.

*/s/ Sara Fuks*

*/s/ Brian Schall*

## CERTIFICATE OF SERVICE

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of The Rosen Law Firm, P.A., with offices at 355 S. Grand Avenue, Suite 2450 Los Angeles, CA 90071. I am over the age of eighteen.

On June 28, 2024, I electronically filed the foregoing JOINT DECLARATION OF SARA FUKS AND BRIAN SCHALL with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on June 28, 2024.

/s/ Laurence M. Rosen