# EXHIBIT 2

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| RON BERGMAN, Individually and on Behalf of All Others Similarly Situated, | |
| Plaintiff, | Case No.:  3:23-cv-01742-RFL |
| v. | Hon. Rita F. Lin |
| CARIBOU BIOSCIENCES, INC., RACHEL E. HAURWITZ, JASON V. O'BYRNE, RYAN FISCHESSER, SCOTT BRAUNSTEIN, ANDREW GUGGENHIME, JEFFREY LONG-MCGIE, NATALIE R. SACKS, BOFA SECURITIES INC., CITIGROUP GLOBAL MARKETS, INC., and SVB SECURITIES LLC, | EXHIBIT II |
| Defendants. | |

**<u>DECLARATION OF PAUL MULHOLLAND REGARDING PROCEDURES FOR SECURELY HANDLING CLASS MEMBERS DATA; COMPARATIVE SETTLEMENTS; AND ADMINISTRATIVE SERVICES AND COSTS</u>**

I, Paul Mulholland, declare:

1.    I submit this declaration to provide the Court with information regarding procedures for securely handling class members data; comparative settlements; and administrative services and costs in this matter. I am over 21 years of age and am not a party to this action.

2.    I am a Certified Public Accountant (inactive) and president of Strategic Claims Services ("SCS"). I have over thirty years of experience specializing in litigation support services, principally in the area of administration of securities class action settlements. I have administered over six hundred class action settlements. I have also testified as an expert witness in securities and other class action matters.[1] SCS was retained by Lead Counsel, subject to Court approval, to provide notice and claims administration services in the above-captioned action.[2] The proposed Settlement Class means all persons and entities who purchased Caribou common stock between July 23, 2021 and July 13, 2023, both dates inclusive and were damaged thereby. Included in the Settlement Class are all persons who purchased Caribou common stock pursuant to and/or traceable to Caribou's Registration Statement and prospectus issued in connection with Caribou's July 23, 2021 IPO and all persons and entities who purchased Caribou common stock during the Settlement Class Period at artificially inflated prices and were damaged thereby.  Excluded from the Settlement Class are: (a) persons and entities that suffered no compensable losses; (b) persons who validly exclude themselves from the Settlement Class, as described below; (c) Defendants; the present and former officers and directors of the Company at all relevant times; members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any of the Defendants, or any person excluded under this subsection (d), has or had a majority ownership interest at any time.

---

[1] Attached hereto as **Exhibit A** are SCS Brochure, Summary and my curriculum vitae.

[2] All capitalized terms not otherwise defined in this declaration shall have the meaning provided in the Stipulation and Agreement of Settlement, dated June 28, 2024 (the "Stipulation").

DECLARATION OF PAUL MULHOLLAND REGARDING NOTICE PLAN
   Case No.:  3:23-cv-01742-RFL

1

3.    SCS maintains a strict adherence to cyber security practices and technical controls. All class members data is held in safekeeping and will only be used for settlement implementation purposes and for no other purpose. Attached hereto as **Exhibit B** is a summary of SCS Data Protection Procedures. SCS maintains a $10 million insurance policy for cyber security.

4.    SCS maintains errors and omissions, crime and professional liability insurance policies totaling $20 million.

5.    The proposed notice plan in this matter uses procedures that have been designed to provide direct mail notification and/or electronic mail notification to every investor who is a member of the Settlement Class and who can be identified with reasonable effort. In addition, direct mail notification will be provided to thousands of financial institutions, whether brokerage firms, banks, and other third-party nominees, that regularly monitor proposed securities class action settlements. All persons and entities identified as potential Settlement Class Members will be mailed a Postcard Notice to obtain copies Notice of Pendency and Proposed Settlement of Class Action ("Notice") and Proof of Claim and Release Form ("Proof of Claim") or emailed links to the Notice and Proof of Claim. The Postcard Notice and Notice will direct the recipient to the settlement website to file a Claim Form. The Settlement website will include instructions for claim submission. The proposed notice plan also calls for publication of the Summary Notice of Proposed Class Action Settlement ("Summary Notice") to be transmitted once over the *Globe Newswire* and published once in the *Investor's Business Daily*. In addition, SCS will send the Depositor Trust Company ("DTC") the Summary Notice for the DTC to publish on its Legal Notice System ("LENS"). LENS provides DTC participants the ability to search and download legal notices as well as receive e-mail alerts based on particular notices or particular CUSIPs once a legal notice is posted.

6.    Details of the complete proposed notice plan are outlined below.

7.    If SCS is appointed by the Court as Settlement Administrator, and subject to the Court's approval of the notice plan set forth in the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), SCS will, after cleanup and

deduplication, initially send a Postcard Notice to all persons and entities identified as potential Settlement Class Members by the Caribou stock transfer agent. The stock transfer agent will only have the contact information for the small number of investors that hold their securities in their own names. These investors typically make up a very small percentage of a class, as the vast majority of investors hold their securities through a brokerage firm, bank, institution, or other third-party nominee ("Nominees") as these potential Settlement Class Members are beneficial investors whose securities are held in "street name"; *i.e.*, the securities are purchased and held by one of the Nominees on behalf of the beneficial purchaser or holder. In SCS's experience, the class members who hold their securities in their own name, and are therefore known to the stock transfer agent, make up less than 2% of a class in a typical securities settlement.

8.    In order to obtain the contact information for investors at the beneficial owner level, SCS uses a procedure designed to get the contact information from the Nominees that actually hold the securities for the beneficial holders of the securities. In the twenty-five years that SCS has been notifying potential class members of actions involving publicly traded securities, SCS has found the majority of potential class members as the beneficial owner are reached through the Nominees.

9.    For this matter, SCS will send mailings and an appropriate cover letter to each entity included on a proprietary list of approximately 2,300 Nominees. This list includes the largest and most common brokerage firms, banks, and other institutions involving publicly traded securities and is contained in a database SCS created and maintains. In SCS's experience, the institutions included in this database represent a significant majority of the beneficial holders of the securities in most settlements involving publicly traded companies. The cover letter accompanying the mailing would notify the Nominees of the proposed Settlement and inform them of their obligation to either provide the names and addresses of their clients who may be Settlement Class Members or request copies of Postcard Notices or an email link to provide directly to their customers and clients. As noted above, Nominees will also be notified through LENS.

10. SCS will promptly either: (a) email links to the location of the Notice and Proof of Claim to Settlement Class Members for whom it is able to obtain email addresses; or (b) mail the Postcard Notice directly to all potential Settlement Class Members identified by Nominees if no email address can be obtained. SCS will also send copies of the Postcard Notice or email link directly to Nominees who indicate they will directly forward them to their customers and clients who may be Settlement Class Members. Each of these requests will be completed in a timely manner pursuant to the Preliminary Approval Order.

11. All name and address data obtained by SCS will be reviewed to identify and eliminate exact name and address duplicates and incomplete data prior to mailing or emailing. Any Postcard Notice returned as undeliverable mail will be reviewed to determine if an alternative or updated address is available from the Postal Service and skip-tracing. SCS will re-mail to the updated or alternative address.

12. SCS will supplement the direct mailing and emailing program described above by publishing the Summary Notice over the *Globe Newswire*, a national online newswire. News outlets often use posted notices as the basis for their own stories about litigation settlements involving publicly traded companies, thereby creating added awareness of the proposed Settlement among investors. In addition, SCS will publish the Summary Notice in print in the *Investors Business Daily*.

13. Throughout the notification and claims processing period, SCS will maintain a toll-free number to field potential Settlement Class Members' inquiries. SCS will also maintain a settlement website, www.strategicclaims.net/Caribou/, where key documents will be posted including the Stipulation, the Summary Notice, Notice, Proof of Claim, Postcard Notice, and the executed Preliminarily Approval Order. The website will also provide an overview of the case and proposed Settlement and highlight important dates, including the date of the final approval hearing. If there are any modifications to the time and/or date of the final approval hearing, SCS will update the website accordingly. All posted documents will be available for download from the website.

14.    I estimate the number of Settlement Class Members in this matter who purchased Caribou common stock during the Settlement Class Period will range from approximately 50,000 to 80,000. Each of these Settlement Class Members will be mailed a Postcard Notice or sent via email a link to the Notice and Proof of Claim. The Settlement Class Members will be directed to the settlement website, www.strategicclaims.net/Caribou/, to access settlement documents and have an opportunity to file a claim in this matter, either online or by mailing a completed Proof of Claim to SCS.

15.    In SCS's experience, not all class members submit claims, and some of the claims submitted are not valid or eligible to receive a distribution under the Plan of Allocation. Accordingly, SCS estimates that 30% or 15,000 to 24,000 of the Settlement Class Members will file claims. This estimate is based on my experience in administering hundreds of securities class action settlements; the 451 million shares of Caribou common stock that traded during the Settlement Class Period; as well as other factors.  Attached hereto as **Exhibit C** is a list of comparative settlements.

16.    In addition to the proposed notice plan, SCS will, at a minimum, provide the following additional administrative services: (1) assist in preparing the Plan of Allocation; (2) set-up a Class database, phone system, and frequently asked questions protocol; (3) review and process all opt-out requests; (4) process claims including handling cures and rejections; (5) update the Settlement Class database to include updated addresses and other updated information regarding Settlement Class Members; (6) handle and respond to all phone call questions regarding claims processing from Settlement Class Members; (7) respond to all other questions via emails, letters and other correspondence from Settlement Class Members; (8) set up escrow accounts and handle all banking matters related to the administration process; (9) process and pay broker charges; (10) cut, mail and process distribution checks; (11) process all undeliverable check mailings and re-mail checks if forwarding addresses are provided; (12) skip trace all other undeliverable check mailings and re-mail if updated addresses are provided; (13) re-issue checks for lost checks, changes in name, or other valid changes requiring a new check subject to verification by SCS; (14)

perform monthly bank reconciliations; (15) provide accounting and periodic status reports; (16) prepare declarations as required by the Court throughout the administrative process; (17) obtain an employer identification number and prepare and file federal and state income tax returns; and (18) provide status reports to counsel.

17.    Based on the above assumptions, SCS estimates the total administration costs in this matter will range from $154,000 to $232,000 or approximately 3.9% to 5.9% of the Settlement Amount.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 27th day of June 2024, in Media, Pennsylvania.

_____
Paul Mulholland

DECLARATION OF PAUL MULHOLLAND REGARDING NOTICE PLAN
  Case No.:  3:23-cv-01742-RFL

6

# EXHIBIT A

Case 3:23-cv-01742-RFL Document 77-2 Filed 06/28/24 Page 10 of 19

# CLAIMANT COMMUNICATION

*Phone Calls*

We tailor our Call Center to the needs of each settlement, we can provide an automated approach using the latest IVR technology or, if counsel perfers, we offer a more personal approach and have one of our highly trained staff answer the phone and help the Class member with any issue they may have. We also offer call tracking for each case, detailing the claimants question, and reporting on the total number of calls received.

*Email*

If a client requests it, we can provide a dedicated email address for each settlement where Class members can correspond and recieve prompt answers from one of our highly trained staff.

*Website*

On request, we can provide a dedicated website for a settlement where all pertinent data and forms can be easily accessed by class members. Using these websites Class Counsel can quickly and easily communicate to the class with ongoing updates and status changes in the Settlement.

# DISTRIBUTION

*Checks*

We have handled distributions of all sizes and values, ranging from a few hundred checks, to hundreds of thousands of checks worth millions of dollars. We monitor all our bank accounts on a daily basis using a Postive Pay system to ensure our clients that only checks we issued will be cashed

*Taxation*

SCS can handle all taxation needs for a settlement. From calculating and paying taxes on the interest earned in the Settlement Fund, to withholding Federal and State taxes on wage cases, our staff of Certified Public Accounts ensure that all filing requirements are met.

# KEY INDIVIDUALS

## Paul Mulholland, CPA, CVA
## President

*As the founder, Mr. Mulholland is the key liaison with counsel on all administrative cases. He holds a BS degree in Accounting from Wheeling Jesuit University and is a Certified Public Accountant and a Certified Valuation Analyst. He is a member of the AICPA and NACVA.*

## Matthew Shillady
## Operations Manager

*Mr. Shillady overlooks all areas of operations and systems management. Matthew is an expert in database management and computer systems. Matthew Shillady is a graduate of Penn State University. He holds a BS degree in Information Sciences and Technology Integration with substantial experience in data integration and database systems. Mr. Shillady has been with Strategic Claims since June of 2003.*

## Josephine Bravata
## Quality Assurance Manager

*Ms. Bravata is involved with all areas of claims administration. She supervises the claims processing, database management, notification, bank reconciliations, check distributions and preparation of reports. Ms. Bravata joined the Company in 2001 after graduating from Neumann University. She has a BS degree in Accounting and a Minor in Computer and Information Management.*

"I want to express my appreciation for the excellent work that Strategic Claims Services has provided to-date in administering the Blue Cross settlement. You and your staff have been timely, responsive and have made the claims administration process efficient and effective. Thank you for all your hard work." .

Mike Karnuth, Esq.
Krislov & Associates, Ltd.

# STRATEGIC CLAIMS SERVICES

Strategic Claims Services
600 North Jackson Street
Suite 3
Media, PA 19063

PHONE
866.274.4004
610.891.9852

FAX
610.565.7985

EMAIL
pmulholland@strategicclaims.net

"Your able and conscientious handling of this matter is much appreciated."

Honorable William C. Connor
United States District Judge
Southern District of New York
Administration of the Texaco ERISA
Litigation Settlement

Copyright © 2009 Strategic Claims Services

## OUR MISSION

*Strategic Claims Services strives to offer high quality claims administration and unmatched solutions to its clients while maintaining exceptional client relationships.*

*» We supply customized reports and detailed reviews of the Administration process so clients can stay well informed and up-to-date on any aspect of the administration process.*

*» We provide unsurpassed customer relations through our fully trained claims administrators who answer each call personally and assist our clients with their knowledge and expertise.*

*» We tailor a solution to each class action to ensure compliance with all the court and settlement documents.*

## OUR HISTORY

Strategic Claims Services (SCS) was established in 1999 to provide support in managing, planning, implementing and administering class action litigations. The highly skilled staff consists of Certified Public Accountants, Information Technology professionals, experienced managers, bookkeepers and support staff.

With over a decade of experience in hundreds of cases involving notification, claims processing and distribution. SCS develops a custom solution for each and every client to ensure the highest quality service at a competitive price. SCS is devoted to offering paramount quality control throughout all dimensions of the claims administration process.

As an innovator in claims administration services, SCS is a technology driven organization with a proven track record to handle cases of all sizes in a cost-effective and efficient manner. The firm also provides tailored proposals, data management, and consultation.

## CLASS NOTIFICATION

Strategic Claims Services offers many different options for both notices and claim forms. Based on the Client's requirements, SCS can compare the notice documents to ensure compliance with the settlement documents and the Court's requirements. SCS can also design Claim Forms to ensure Class Members fully understand and comply with the requirements of each settlement.

We can also provide assistance with publishing Legal Notice through newspapers, press releases, and websites. Using our contacts in the publishing industry we can negotiate favorable rates in most major newspapers, allowing the class to benefit from reduced publication costs.

*Our Services Include:*
*» Direct Mailed Notice*

*» Email Campaigns*

*» Notice Design and Proofing*

*» Claim Form Design*

*» Custom Websites for each settlement*

*» Customize Class Data*

*» Updating Out-of-Date Class Data (National Change of Address, Skip-tracing methods)*

*» Providing compliance affadavits/declarations for publications and direct mailing*

"Strategic Claims Services (SCS) provides excellent customer service, and the best price in the business. SCS's attention to detail, high quality work, quick and accurate turn around are the hallmarks of its true professionalism. Ready access to SCS's president, Paul Mulholland, and his personal involvement assures me everything is done right. You can't beat SCS – they're simply the best in the industry."
John F. Innelli
Innelli & Robertson

## DATA MANAGEMENT

One of the most important steps in class action administration is creating and maintaining accurate class lists. Based on the client's needs, we develop a custom database to hold all the class member's pertinent data.

Our Information Technology Specialists can:
*» Convert most data formats for use in the class database*

*» Database Management and Design*

*» Website Design and Updates*

*» Design custom reports for clients based on class data*

*» Removal of duplicate records*

*» Class-wide loss calculations*

## CLAIMS PROCESSING

Our staff is well trained in all aspects of claims processing, with a focus on quality control and customer service. Each claim is reviewed in detail to ensure compliance with all settlement requirements. Using our custom built software, we ensure each claim is calculated accurately and quickly. The scope of our work includes, but is not limited to the following:

» Determining the validity of each claim filed

» Calculation of losses for each claim

» Communication with claimants to cure invalid claims

» Quality assurance for all high value claims

» Final reporting to Counsel and the Court

» Electronic Claim Processing

During the administration process we are in constant communication with counsel concerning all matters. We provide regular status reports from the initial mailing through the final disposition of funds.

# SUMMARY

### SCS Experience and Qualifications

SCS has been in business since 1999. SCS has administered over 600 class action cases over the last 20 years including over 400 security cases including several settlements with the SEC. SCS has handled over $3 billion in settlement funds. SCS is considered one of the leading notice and claims administrator in the United States and has never had a claim filed against us in any manner. Please visit our website at www.strategicclaims.net.

### Quality Assurance

SCS has never had a claim filed against it. This is the result of our strong quality control procedures. For example, our database will insert the high and low trading prices and reported trading volume (adjusted for market maker trading or specialist trading) for each day in the class period and verify the information in the claims are within these parameters. Additional quality assurance steps include but are not limited to review of any unusual trading on claims; large claims using a P.O. Box as an address; large transactions by non-institutions claimants; review of suspicious documentation by claimants; follow-up phone calls to brokers to authenticate non-institutional purchasers; as well as various random sampling of claims for additional quality assurance review. SCS operates similar to large public accounting firm where a staff member, supervisor, manager and an executive all are involved in reviewing claims. Our quality control department will then perform statistical sampling and other procedures in reviewing claims before signing off. Besides setting up the database to detect inconsistencies, our fraud prevention procedures consists of several steps including a sampling of claims to verify the supporting documentation is authentic (i.e. contact brokers); performing a sampling of skip tracing to make sure that social security numbers and names are a proper match as well as other procedures. In addition to our list of fraudulent claimants from other cases, we communicate with the FBI for any updated list of fraudulent claimants from previous cases.

SCS has a variety of security measures in place to ensure all personal information is kept safe and secure. These measures include, but are not limited to, SSL encryption of all data submitted through our website; internal monitoring of all computer usage by employees; live antivirus scanning of all files received/sent along with weekly updates and scanning of all servers and computers on our network; password protected and restricted access for employees working with personal data; use of a monitored and secure VPN for remote access; daily, weekly and monthly backups to secure offsite storage; and 24/7 notifications to immediately address any irregularities.

## PAUL MULHOLLAND, CPA
### (CURRICULUM VITAE)

Mr. Mulholland is the President and founder of Strategic Claims Services (SCS) in April of 1999. SCS is a litigation support firm specializing in the administration of class action cases and in providing damages analyses in class action matters. SCS has administered over 500 class action settlements and calculated over 150 damage analyses since its inception. The Company also specializes in the preparation and compliance of federal and state income taxes for Qualified Settlement Funds. For more information on SCS visit its website at www.strategicclaims.net.

From 1992 to 1999, Mr. Mulholland was Senior Vice President of Valley Forge Administrative Services, Inc. Mr. Mulholland was responsible for overseeing all aspects preparation of damage/expert reports in class action matters and for claims processing and administration of class action settlements. He also was responsible for areas of federal and state income taxes for settlement funds and for compliance with all treasury regulations.

From 1986 to 1992, Mr. Mulholland was Chief Financial Officer of Terramics Property Company, a Philadelphia-based regional commercial real estate company with a $150 million real estate portfolio. He was responsible for asset management, financial reporting, budgets, bank and investor liaison, debt restructurings, refinancings, contract negotiations, tax matters, treasury functions and cash management.

From 1984 to 1986, Mr. Mulholland was Chief Financial Officer of American Health Systems, Inc., a $40 million (revenue) nursing home management company, and was responsible for financial reporting, taxation, budgeting, cash management, cost containment, risk management and regulatory reporting.

From 1980 to 1984, Mr. Mulholland was employed at Coopers & Lybrand. He planned and directed audit engagements in a variety of industries, including preparation of financial statements, SEC reporting, and evaluation of internal accounting systems and supervision of staff accountants.

Mr. Mulholland holds a BS in Accounting from Wheeling Jesuit University and is a Certified Public Accountant and a member of the AICPA. He serves on several advisory boards and board of directors for several companies in the Philadelphia area. Mr. Mulholland was an adjunct professor of accounting and finance at Neumann University located in Aston, PA.

PAUL MULHOLLAND, CPA
EXPERT TESTIMONY AND DEPOSITIONS

**Expert Testimony:**

Celia L. Hale., et al., v. Wal-Mart Stores, Inc
Jackson County, Missouri
Case No. 01-CV-218710 (Division 1)                                    June 2008

Jitendra V. Singh v. vCustomer Corporation, et al.
Eastern District of Pennsylvania
Civil Action No. 03-4439                                              June 2004

Barter v. Southmoore Golf Associates                March 21, 2000 and
(Common Pleas of Northhampton County (No. 199-C-1815)  March 22, 2000

Pearl and Hoffman v. Geriatric & Medical Center, Inc (Eastern
District of Pennsylvania (No.92-CV-5113 and No.93-CV-2129)    March 1995

**Depositions:**

Fosamax Products
Liability Litigation No. 1:06-MD-1789 (JFK)
(MDL No. 1789)
USDC for the Southern District of New York              June 14, 2007

Aredia and Zometa Products
Liability Litigation No. 3:06-MD-1760
(MDL No. 1760)
USDC for the Middle District of Tennessee
at Nashville                                            May 31, 2007

Jitendra V. Singh v. vCustomer Corporation, et al.
Eastern District of Pennsylvania
Civil Action No. 03-4439                                June 2004

In Re: Curative Health Services, Inc. Securities Litigation
(Master File No. CV99-2074) United States District Court
Eastern District of New York                            February 2002

Pearl and Hoffman v. Geriatric & Medical Center, Inc (Eastern
District of Pennsylvania (No.92-CV-5113 and No.93-CV-2129)   January 1995

**Mediation Presentation:**

Alibaba Group Holding Limited Securities Litigation
Civil Action 1:15-md-02361 (CN)
USDC Southern District of New York
Mediation Presentation to Honorable Layne R Phillips      March 2019

## Provide a list of Class Action cases handled over the few years (Last Three Years)

| Case Named | Number of Claims | Number of Notices | Settlement Value |
|---|---|---|---|
| Christine Asia Co. Ltd. et al. v. Jack Yun Ma et al. | 166,891 | 1,086,191 | $250,000,000.00 |
| In re Silver Wheaton Corp. Securities Litigation | 100,245 | 484,155 | $41,500,000.00 |
| Menaldi v. Och-Ziff Capital Management Group LLC, et al. | 30,567 | 68,723 | $28,750,000.00 |
| Richard Thorpe and Darrel Weisheit v. Walter Investment Management Corp., et al.Corp., et al | 54,712 | 39,777 | $24,000,000.00 |
| Thomas, et al. v. MagnaChip Semiconductor Corp., et al. | 14,419 | 40,078 | $23,500,000.00 |
| In re Prothena Corporation plc Sec. Litig. | 5,989 | 28,970 | $15,750,000.00 |
| In re USA Technologies, Inc. Securities Litigation | 6,089 | 32,766 | $15,300,000.00 |
| In re United Development Funding IV Securities Litigation / Hay v. United Development Funding IV, et al | 11,717 | 49,535 | $10,435,725.00 |
| Lee v. Pincus | 1,745 | 1,865 | $10,000,000.00 |
| Meyer v. Concordia International Corp. | 3,071 | 11,159 | $9,250,000.00 |
| Orthofix Fair Fund | 8,362 | 19,208 | $8,250,000.00 |
| Mauss v. NuVasive, Inc | 44,628 | 90,632 | $7,900,000.00 |
| In re Montage Technology Group Limited Securities Litigation | 15,950 | 12,141 | $7,250,000.00 |
| In re Montage Technology Group Limited Securities Litigation | 15,950 | 12,141 | $7,250,000.00 |
| In re Patriot National, Inc. Securities Litigation | 2,589 | 13,530 | $6,500,000.00 |
| Thomas, et al. v. MagnaChip Semiconductor Corp., et al. | 21,468 | 45,537 | $6,200,000.00 |
| Bristol County Ret. Sys. v. Qurate Retail, Inc. | 20,932 | 89,676 | $5,750,000.00 |
| Delarosa v. State Street Corporation, et al. | 245,112 | 469,215 | $4,900,000.00 |
| Carlton, et al., v. Cannon, et al. | 7,118 | 22,786 | $4,500,000.00 |
| In re Lipocine Inc. Securities Litigation | 2,967 | 10,376 | $4,250,000.00 |
| In re: iDreamSky Technology Limited Securities Litigation | 15,778 | 12,822 | $4,150,000.00 |
| Snellink v. Universal Travel Group, Inc. | 3,416 | 32,351 | $4,075,000.00 |
| De Vito v. Liquid Holdings Group, Inc., et al | 4,953 | 15,004 | $4,062,500.00 |
| Brendon v. Allegiant Travel Company, et al. | 16,813 | 49,085 | $4,000,000.00 |
| United Food and Commercial Workers Pension Fund v. Advanced Emissions Solutions, Inc., et al., | 22,716 | 10,367 | $3,950,000.00 |
| Costas v. Ormat Technologies, Inc. | 5,665 | 32,542 | $3,750,000.00 |
| Too v. Rockwell Medical Inc., et al. | 1,188 | 10,143 | $3,700,000.00 |
| In re IsoRay, Inc. Securities Litigation | 796 | 12,286 | $3,537,500.00 |
| Harr v. Ampio Pharmaceuticals, Inc., et al. | 9,938 | 13,400 | $3,400,000.00 |
| Fred Kelsey v. Patrick J. Allin, et al. | 11,800 | 16,376 | $3,300,000.00 |
| Yedlowski v. Roka Bioscience, Inc. | 3,537 | 2,631 | $3,275,000.00 |
| Nickolas Van Wingerden v. Cadiz Inc., et al | 5,970 | 4,886 | $3,000,000.00 |
| Pritchard v. Apyx Medical Corporation, et al. | 459 | 4,983 | $3,000,000.00 |
| In re Retrophin, Inc. Securities Litigation | 6,122 | 8,807 | $3,000,000.00 |
| Wang v. China Finance Online Co. Limited | 20,645 | 31,744 | $3,000,000.00 |
| In re Spectrum Pharmaceuticals, Inc. Securities Litigation | 15,845 | 56,912 | $2,995,000.00 |
| Gauquie v. Albany Molecular Research, Inc. et al. | 7,551 | 4,141 | $2,868,000.00 |
| In re Lihua International, Inc. Securities Litigation | 1,688 | 6,785 | $2,865,000.00 |
| Vaccaro, et al. v. New Source Energy Partners L.P., et al. | 719 | 2,283 | $2,850,000.00 |
| In re Namaste Technologies Inc. Securities Litigation | 2,965 | 64,992 | $2,750,000.00 |
| In re Akari Therapeutics, plc Securities Litigation | 284 | 3,460 | $2,700,000.00 |
| Moleski v. Tangoe, Inc., et al. | 16,580 | 26,366 | $2,550,000.00 |
| In re Sunrun Inc. Securities Litigation | 5,200 | 35,908 | $2,500,000.00 |

| Case Name | | | |
|---|---|---|---|
| Hosey v. Costolo | 183,031 | 463,059 | $2,500,000.00 |
| Donald Chu v. BioAmber Inc., et al. | 2,612 | 13,545 | $2,250,000.00 |
| In re Akers Biosciences, Inc. Securities Litigation | 2,041 | 115,995 | $2,250,000.00 |
| Tapia-Matos v. Caesarstone, Ltd. et al. | 53,284 | 35,126 | $2,200,000.00 |
| Rand-Heart of New York, Inc., et al v. James P. Dolan | 609 | 3,447 | $2,100,000.00 |
| In re DS Healthcare Group, Inc. Securities Litigation | 587 | 8,628 | $2,100,000.00 |
| Church v. Chatila, et al. | 2,136 | 14,880 | $2,100,000.00 |
| Matthew Crandall v. PTC Inc., et al | 40,181 | 69,978 | $2,100,000.00 |
| Dartell, v. Tibet Pharmaceuticals, Inc. | 1,456 | 4,941 | $2,075,000.00 |
| Cohen v. Kitov Pharmaceuticals Holdings, Ltd., et al. | 885 | 11,666 | $2,000,000.00 |
| Crystal v. Medbox, Inc., et al. | 2,865 | 40,390 | $1,850,000.00 |
| Petrie v. Electronic Game Card, Inc., et al. / Pace v. Quintanilla, et al | 763 | 14,233 | $1,755,000.00 |
| Ford v. Natural Health Trends Corp. et al. | 2,507 | 23,267 | $1,750,000.00 |
| Calfo, et al., v. Messina, Sr., et al. | 2,617 | 10,201 | $1,650,000.00 |
| Shapiro v. Alliance MMA, Inc., et al. | 274 | 1,953 | $1,550,000.00 |
| In re CBD Energy Limited Securities Litigation | 4,182 | 5,183 | $1,500,000.00 |
| In re Altair Nanotechnologies Securities Litigation | 963 | 7,003 | $1,500,000.00 |
| Hrasok v. Kraton Corp., et al | 3,269 | 7,313 | $1,500,000.00 |
| Weinstein v. RMG Networks Holding Corp., et. al. | 358 | 11,219 | $1,500,000.00 |
| In re China Mobile Games & Entertainment Group, Ltd Securities Litigation | 15,933 | 14,592 | $1,500,000.00 |
| In re KaloBios Pharmaceuticals, Inc. Securities Litigation | 659 | 18,507 | $1,500,000.00 |
| In re KaloBios Pharmaceuticals, Inc. Securities Litigation | 898 | 21,491 | $1,500,000.00 |
| Nisselson v. Ji / Skeway, et al. v. China Natural Gas, Inc | 2,406 | 25,417 | $1,400,000.00 |
| Balon v. Agria Corporation, et al. | 125 | 730 | $1,300,000.00 |
| Springer, v. Code Rebel Corporation, et al. | 548 | 5,207 | $1,300,000.00 |
| Pepe v. Cocrystal Pharma, Inc. | 573 | 20,340 | $1,265,000.00 |
| Tran v. ERBA Diagnostics, Inc., et al. | 353 | 5,709 | $1,215,000.00 |
| Rex & Roberta Ling Living Trust v. B Communications Ltd., | 319 | 1,620 | $1,200,000.00 |
| Bai v. TCP International Holdings, Ltd., et al. | 433 | 1,661 | $1,100,000.00 |
| M & M Hart Living Trust et al. v. Global Eagle Entertainment et al. | 1,711 | 7,703 | $1,100,000.00 |
| Monachelli v. Hortonworks, Inc. | 1,765 | 8,285 | $1,100,000.00 |
| Garcia v. Hetong Guo, et al. | 298 | 2,982 | $1,000,000.00 |
| Guangyi Xu v. ChinaCache International Holdings Ltd., Song Wang, Jing An, and Ken Vincent Qingshi Zhang | 1,633 | 2,857 | $990,000.00 |
| Kachun Wong v. Baker Tilly Hong Kong, Ltd | 2,665 | 19,833 | $925,000.00 |
| In re NetSol Securities Litigation | 419 | 1,868 | $850,000.00 |
| Allen v. PixarBio Corporation, et al. | 92 | 428 | $750,000.00 |
| In re Velti plc Securities Litigation | 12,614 | 58,622 | $750,000.00 |
| Guyer v. MGT Capital Investments, Inc., et al. | 2,357 | 116,445 | $750,000.00 |
| In re Stemline Therapeutics, Inc. Securities Litigation | 555 | 2,180 | $680,000.00 |
| Castillo Iv v. 6D Global Technologies, Inc., et al. | 416 | 3,170 | $640,000.00 |
| Hull v. Global Digital Solutions, Inc. | 162 | 6,555 | $595,000.00 |
| Scaifani v. Misonix, Inc., et al. | 272 | 825 | $500,000.00 |
| Healy v. Arben Kryeziu a/k/a Arben Kane, et al. / Torres v. Arben Kryeziu a/k/a Arben Kane | 684 | 6,062 | $445,000.00 |
| In re ForceField Energy Inc. Securities Litigation | 1,254 | 4,028 | $414,500.00 |
| Longwei Petroleum Investment Holding Ltd. Dissolution Distribution | 786 | 3,843 | $100,000.00 |

Exhibit B

## SUMMARY OF DATA PROTECTION PROCEDURES FOR STRATEGIC CLAIMS SERVICES ("SCS")

### Technical Controls

All class members data is fully encrypted and all computers require a login to access. Class members data is restricted to only employees with access permission. Only authenticated clients can access the file shares (i.e. only trusted devices can access the network). SCS uses anti-virus, malware protection and other methods to protect data. SCS also uses firewalls and intrusion detection and response systems; complex passwords; multi-factor authentication to access data; data encryption; "key management" access to encrypted databases; and access only provided on need-to-know basis.

### Administrative Policies

SCS has a firewall security system that monitors and controls network traffic and is used as a barrier against untrusted networks. There are access controls to systems and data. All employees are briefed on privacy matters and data security. All terminated/departed employees are immediately cut off from access. SCS is currently implementing additional pre-hire background checks and non-disclosure and confidentiality agreements. Any terminated or departed employees are immediately cut off from access.

### Crisis and Risk Management

Upon a data breach SCS will immediately contact cyber-insurance company, attorneys, claimants and other stakeholders as well as the proper authorities. Nearly all notice and claims administration work is performed "in-house" with very little outsourcing to vendors, especially as it relates to private information such as tax identification numbers. SCS maintains a $10 million cyber insurance policy.

### Physical Access Controls Access

SCS servers are secured in a locked room within the office plus there are two other locked doors requiring a key fob to gain entrance into the office. SCS also has a security camera at its office entrance inside the building.

### Data Collection and Retention

SCS minimizes collection of personal information and obtains personal data collection only if necessary to complete its administration work. Any transfer of personal data is done securely with password protection. SCS complies with all applicable laws and regulations related to data collection and storge.

2/2

Exhibit B

Data Destruction

Physical copies are destroyed by shredding with a certification document from a reputable shredding firm. Electronic files are securely deleted. Any physical electronic hardware is written over prior to physical drive destruction. Manager performs periodic checks throughout the year to comply with any court orders regarding destruction of hard copies and electronic files.

Applicable Laws, Standards and Other Regulations

SCS information technology department follows industry standards and complies with privacy regulations and laws.

Ethical Rules

The SCS staff is made aware of ethical rules and standards of ethical and legal behavior. Violation of ethical rules may lead to termination of employment.

Customer Services Measures

SCS policy does not allow for confidential information to be sent via email. SCS utilizes email verification software to verify and authenticate email addresses when appropriate. SCS periodically updates its website to include its relevant privacy policies. SCS staff utilizes multi-factor authentication for staff to access emails.

EXHIBIT C

SETTLEMENT COMPARISONS

| Case | ALLEGIANT No. 2:18-cv-01758 U.S.D.C. Dist. of Nevada | WESTPAC NO.3-20-CV-0017 U.S.D.C. Dist. of Oregon | RCI Holdings No.:4:19-cv-01841-AHB U.S.D.C., S.D. of Texas | Funko, Inc. 2:20-cv-02319-VAP-(MAAx) U.S.D.C. – Central Dist of CA | AVERAGE |
|---|---|---|---|---|---|
| Total Settlement Fund | $4,000,000 | $3,100,000 | $2,200,000 | $7,000,000 | $3,260,000 |
| Class Period (C.P.) | 6/8/15 to 5/9/18 | 11/11/15 TO 11/19/19 | 2/13/16-7/18/19 | 8/8/19 to 5/5/20 | N/A |
| Final Approval Date | 5/14/2020 | 4/20/2021 | 8/12/2022 | 10/17/2022 | N/A |
| Class Size - # of Notices Sent | 49,007 | 118,279 | 14,400 | 32,000 | 42,737 |
| Avg. # of Shrs. Purchased per Class Member | 1,806 | 1,522 | 2,083 | 4,875 | 2,057 |
| Claims Filed | 16,813 | 32,406 | 3,515 | 6,180 | 11,783 |
| Claims Filing Ratio % | 34.31% | 27.40% | 24.41% | 19.31% | 21.09% |
| Method of Notice | Postcard notice, email and publication | Postcard notice, email and publication | Postcard notice, email and publication | Postcard notice, email and publication | N/A |
| Average Recovery per Claimant | $2,208.69 | $214.16 | $1,873.84 | $1,606.47 | $1,180.63 |
| Administration Costs | $199,945.93 | $300,847.00 | $95,216.86 | $109,757.77 | $141,153.51 |
| Cy Pres Amount, if any | $184.91 | $2,850.85 | To be determined | To be determined | N/A |
| Attorneys' Fees and Expenses | $1,028,078.85 | $1,058,109.74 | $826,901.67 | $1,941,242.47 | $970,866.55 |
| Injunctive and Non-Monetary, If any | N/A | N/A | N/A | N/A | N/A |
| Estimaed Aggregate Damages if Plaintiffs had Prevailed in Every Claim | $44.19 million | $15 to $21.6 million | $15.6 million | $21.1 million | N/A |
| The Claims Being Released in Each Settlement | Violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder | Violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder | Violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder | Violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder | N/A |