**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

*[Additional Counsel on Signature Page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| RON BERGMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CARIBOU BIOSCIENCES, INC., RACHEL E. HAURWITZ, JASON V. O'BYRNE, RYAN FISCHESSER, SCOTT BRAUNSTEIN, ANDREW GUGGENHIME, JEFFREY LONG-MCGIE, NATALIE R. SACKS, BOFA SECURITIES INC., CITIGROUP GLOBAL MARKETS, INC., and SVB SECURITIES LLC,<br><br>Defendants. | Case No.:  3:23-cv-01742-RFL<br><br>CLASS ACTION<br><br>**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Hearing Date: October 15, 2024<br>Time: 1:30 p.m.<br>Location:  Courtroom 15, 18th Floor or via Zoom<br>Judge: Rita F. Lin |

Lead Plaintiff Ron Bergman and named plaintiff Carl Cooper (collectively, "Plaintiffs") respectfully submit this Supplemental Memorandum In Support Of Unopposed Motion For Preliminary Approval Of Settlement ("Supplemental Memorandum") pursuant to the Court's Order for Supplemental Filings for Motion for Preliminary Approval of Class Action Settlement ("Order") dated September 6, 2024 (Dkt. No. 84).

Plaintiffs respectfully submit the responses set forth below to the Items set forth in the Court's Order. In connection with this Supplemental Memorandum, Plaintiffs also submit an Amended Stipulation of Settlement and exhibits thereto, in both clean and redline, reflecting the changes and additions required by the Court's Order and an Amended Fuks/Schall Declaration and exhibits thereto.[1]

**1. What is the basis for the estimates of the total maximum damages if Plaintiffs prevailed on their claims? (See Joint Decl. of Sara Fuks and Brian Schall ¶21)**

The estimates of total maximum damages if Plaintiffs prevailed on their claims were calculated with the assistance of an expert damages consultant using the accepted measures of damages in securities class actions for claims brought under Section 10(b) of the Exchange Act of 1934 (the "Exchange Act") and Section 11 of the Securities Act of 1933 (the "Securities Act").

Both the Securities Act and Exchange Act damages estimates were based on a two-trader proportional trading model ("two-trader model") that estimates how many shares of Caribou Biosciences, Inc. ("Caribou") common stock were bought and sold on each day during the relevant periods for each respective claim.[2] The two-trader model is the most commonly used (and accepted)

---

[1] All capitalized terms, unless otherwise defined herein, have the same meanings as set forth in the Amended Stipulation, which is attached, together with its exhibits, as Exhibit 1 to the Supplemental Joint Declaration of Sara Fuks and Brian Schall in Support of Preliminary Approval of Settlement ("Fuks/Schall Declaration"). Unless otherwise noted all citations herein to "¶__" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Fuks/Schall Declaration.

[2] The relevant period for the Securities Act Claims is July 23, 2021 through April 11, 2023 (the IPO date through the date of suit) while the relevant period for the Exchange Act Claims is July 23, 2021 through October 11, 2023 (the start of the Class Period through the end of the 90-day PSLRA look-back period).

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; ; Case No. 3:23-cv-01742-RFL

1

trading model for estimating the number of shares purchased and sold for a given period.[3] Specifically, Plaintiffs' damages consultant applied the two-trader modelling parameters estimated in accepted literature on estimating damages in securities cases, assuming that 15.3% of outstanding shares were held by "traders" (that is, investors with high trading frequency) and that the remaining 84.7% were held by "holders" (that is, investors with low trading frequency). These modelling parameters also assume that a "trader" share is 29 times more likely to be traded than a holder's share. Using these assumptions and inputting Caribou common stock's reported daily trading volumes (after relevant adjustments for market making activity), share prices, and tradeable float, Plaintiffs' damages consultant arrived at the number of shares of Caribou common stock bought and sold on each day of the relevant periods. To prevent any overlap in damages for the Securities Act claims and the Exchange Act claims, the two-trader model for the Securities Act claims considered only the Caribou common stock that was traceable to the initial public offering.

To arrive at Securities Act damages, Plaintiffs' damages consultant applied the per share statutory damages formula to the shares purchased and sold each day estimated by the two-trader model for the Securities Act's period. This statutory damage formula is based on Section 11 of the Securities Act of 1933, which states that damages recoverable are:

> [T]he difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which

[3] *See* "Estimating Damages in Securities Fraud Cases," by William H. Beaver and James K. Malernee, Cornerstone Research, 1997; "A Two Trader Population Share Retention Model for Estimating Damages in Shareholder Class Action Litigations," by William M. Basin, *Stanford Journal of Law, Business & Finance* 6, 2000-2001,49-83; "An Improved Two-Trader Model for Measuring Damages in Securities Fraud Class Actions," by John Finnerty and George Pushner *Stanford Journal of Law, Business & Finance* 8,2002-2003, 213-263.

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 3:23-cv-01742-RFL

2

the security was offered to the public) and the value thereof as of the time such suit was brought."[4]

In other words, for any individual Class member who purchased Caribou common stock traceable to the Registration Statement with damages claims under Section 11, that investor's recoverable loss under the statutory formula would be, for each security purchased, the difference between the lesser of (A) the investor's (i) actual purchase price of the security or (ii) that security's respective offering price, and (B) the investor's (i) actual sale price if the security were sold prior to the date suit was brought, or (ii) the price of the security on the day suit was brought if the investor continued to hold the security on the day suit was brought, or if the investor sold after the day the suit was brought at a lower price than the price of the security on the date of suit, or (iii) the actual sale price if the security was sold after the date of suit but before judgment, if the sale price was higher than the price of the security on the date of suit.

To arrive at Exchange Act damages, Plaintiffs' damages consultant applied the out-of-pocket per share damages formula, which is the widely accepted method for calculating Section 10(b) damages, to the shares purchased and sold each day estimated by the two-trader model for the Exchange Act's relevant period. The out-of-pocket per share measure of damages assumes that a potential Class member's damages are lesser of the reduction in the dollar inflation over the investor's holding period (the economic/inflation loss), or the decline in the security price (the investment loss). Pursuant to the PSLRA, for any Caribou common stock sold during the 90-day period after the Class Period July 14, 2023 through October 11, 2023), or continued to hold Caribou common stock at the end of this period, the price at which the share is sold is deemed to be the average price from the final corrective disclosure date to the sale date.

The investment loss portion of the out-of-pocket damages measure was calculated based on the end-of-day closing prices Caribou common stock. The economic/inflation loss component was estimated using regression analysis that isolates the change in Caribou common stock price as a

---

[4] Section 11 of the Securities Act of 1933.

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 3:23-cv-01742-RFL

3

result of the alleged disclosures on June 10, 2022, June 13, 2022, and July 14, 2023. The total residual change in Caribou common stock price as a result of these alleged disclosures was assumed to be the amount of artificial inflation in Caribou common stock at the start of the Class Period. As each alleged disclosure occurred, artificial inflation was incrementally removed from Caribou common stock until the final disclosure on July 14, 2023 when artificial inflation had fully dissipated.

The maximum estimated damages amount is simply the sum of the estimated damages for the Securities Act claims and the estimated damages for the Exchange Act claims.

**2. What is the basis for the estimate that there are likely between 50,000 and 80,000 Settlement Class Members? (*See* Decl. of Paul Mulholland ¶14)**

Attached to the Amended Fuks Schall Declaration as Exhibit 4 is the Supplemental Declaration of Paul Mulholland Regarding the Estimated Class Size ("Supplemental Mulholland Decl.") which sets forth in detail the basis for calculating the estimated Settlement Class size.

As explained in the Supplemental Mulholland Declaration, because it is not possible to quantify the exact class size given that the vast majority of Settlement Class Members held their shares through Nominees, through SCS's experience and review of comparative settlements in securities class actions SCS derived an estimate. *Supplemental Mulholland Decl.,* ¶2.

SCS derived this estimate by looking at "Comparative Settlements" SCS recently administered. *Supplemental Mulholland Decl.*, ¶3. SCS selected three securities class action settlements it recently administered involving companies that had similar net trading volumes, institutional ownership, and weighted average prices per share compared to Caribou. *Id.* at ¶3, Exh. A. Using this data, SCS determined that the actual average total shares purchased per class member for the Comparative Settlements was 3,856 shares. *Id.* SCS computed this by dividing the net trading volume by the class size based on the number of class notices sent for each of the Comparative Settlements. *Id.* at fn.4. Given this, SCS assumed that each Settlement Class Member in this Action purchased an average of 3,856 shares of Caribou stock. *Id.* at ¶3. SCS then divided the net volume of Caribou shares traded during the Settlement Class Period (235 million) by 3,856

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 3:23-cv-01742-RFL

4

shares per class member to arrive at an estimated Settlement class size of 60,940 Settlement Class Members. *Id.* Given that it is not possible to provide an exact number, SCS determined it appropriate to provide a range of an estimated 50,000 to 80,000 class members.  *Id.* SCS derived this as the range because 60,940 is the approximate mid-point of these two numbers.  *Id.* at fn.5.

### 3. By what process will the Caribou stock transfer agent identify members of the Settlement Class to receive notice?

Caribou's stock transfer agent, Computershare, maintains a database of all Caribou stock transactions.  This database includes records of purchases and acquisitions of Caribou stock by registered shareholders. To identify potential members of the Settlement Class to receive class notice, Computershare executed a data program across the database designed to return a list of shareholders who purchased and/or acquired any of Caribou's common shares from July 23, 2021 through and including July 13, 2023. Pursuant to Paragraph 7.4 of the Stipulation, Caribou will obtain this list of shareholders from the transfer agent and provide it to the Claims Administrator no later than five business days after entry of the Preliminary Approval Order.

### 4. Why are GlobeNewswire and Investor's Business Daily the publications most likely to reach the settlement class?

Courts consider notice via *GlobeNewswire* and *Investor's Business Daily* to be the best notice practicable under Rule 23. *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 411 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020). *GlobeNewswire* is "one of the world's largest newswire distribution networks, specializing in the delivery of corporate press releases[,] financial disclosures[,] and multimedia content to the media, investment community, individual investors[,] and the general public. *Ziolkowski v. Netflix, Inc.*, No. 17-CV-01070-HSG, 2017 WL 2572583, at *2 (N.D. Cal. June 14, 2017). *Investor's Business Daily* "is a nationally-circulated business-oriented publication catering to investors." *Marsden v. Select Med. Corp.*, No. CIV.A.04-4020, 2005 WL 113128, at *5 (E.D. Pa. Jan. 18, 2005); *see also Arace v. Thompson,* No. 08 CIV. 7905 DC, 2011 WL 3627716, at *4 (S.D.N.Y. Aug. 17, 2011) (approving notice via Investor's Business Daily).  For these reasons, notice via *Investor's Business*

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 3:23-cv-01742-RFL

5

*Daily* and *GlobeNewswire* is widely regarded as the "best notice practicable." See *In re Stable Rd. Acquisition Corp.*, No. 2:21-CV-5744-JFW(SHKX), 2024 WL 3643393, at *11" (C.D. Cal. Apr. 23, 2024).

**5. The released claims may include not only those claims alleged in the complaint, but also claims "based on the *identical factual predicate* as that underlying the claims in the settled class action." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (citation omitted) (emphasis added). However, does the release of "claims concerning in any way, directly or indirectly, the purchase, acquisition, solicitation, holding, sale, or disposition of Caribou common stock during the Settlement Class Period" sweep beyond the facts alleged? What is the authority for allowing a release of that breadth?**

The Parties have amended the Stipulation and revised the definition therein of "Released Claims" to address the Court's question regarding the breadth of the release. In particular, the amended release is limited to claims asserted in the above-captioned action or Superior Court of the State of California, Alameda County action *Lowry v. Caribou Biosciences, Inc., et al.*, Case No. 23CV029855 ("*Lowry*") or claims that could have been asserted arising out of the allegations in those actions and that relate to the purchase or acquisition of Caribou stock during the class period:

> "Released Claims" means and includes any and all Claims and Unknown Claims (as defined in ¶1.40) whether arising under federal, state, common, or foreign law: (i) that were asserted in any complaint filed in the Action or in *Lowry,* or (ii) that could have been asserted by or on behalf of any of the Releasing Parties, in any capacity, which arise out of, are based upon, or relate in any way to the allegations, transactions, facts, matters or occurrences, representations, or omissions set forth in the Action or *Lowry* and that relate to the purchase, acquisition, holding, sale, or disposition of Caribou common stock during the Settlement Class Period.

Amended Stipulation of Settlement ¶1.29.

The release language above is "commonplace in court-approved securities class action settlements, and appropriately restricts the scope of the release to the facts underlying this Action." *In re Stable Rd. Acquisition Corp.*, No. 2:21-CV-5744-JFW(SHKX), 2024 WL 3643393, at *2 (C.D. Cal. Apr. 23, 2024) (approving similar language); *see also Zhou v. Faraday Future Intelligent Elec. Inc.*, 2024 WL 1245341 at *8 (C.D. Cal. Mar. 18, 2024). ("[T]he Ninth Circuit allows federal courts to release not only those claims alleged in the complaint, but also claims based on the

identical factual predicate as that underlying the claims in the settled class action."). As in *Stable Road*, the released claims here are limited to claims that (i) were asserted in the above-captioned or *Lowry* actions or (ii) "arise out of, are based upon or relate to" matters alleged in the above-captioned or *Lowry* actions *and* relate to transactions in or ownership of Caribou common stock during the Settlement Class Period. 2024 WL 3643393, at *2. Plaintiffs have revised the proposed Notice to reflect the amended release. *See* Exh. A-1 p. 10-11.

**6. Does the Notice satisfy the requirements under 15 U.S.C. § 78u-4(a)(7)(B) regarding disclosure on the cover page of the average amount of damages per share that would be recoverable if Plaintiffs prevailed on each claim alleged? If not, please revise to include.**

Pursuant to 15 U.S.C. § 78u-4(a)(7)(B), Plaintiffs are required to include a statement of potential outcome of case. Here, the Parties disagree as to the amount of recoverable damages. The Notice has been revised to reflect that disagreement, with the following language added to the cover page:

> The Parties disagree on both liability and damages and do not agree on the amount of damages that would be recoverable if the Class prevailed on each claim alleged. Defendants deny that they are liable to the Class and deny that the Class has suffered any damages. The issues on which the Parties disagree are many, but include: (1) whether Defendants engaged in conduct that would give rise to any liability to the Class under the federal securities laws, or any other laws; (2) whether Defendants have valid defenses to any such claims of liability; (3) the appropriate economic model for determining the amount by which the prices of Caribou securities were allegedly distorted (if at all) during the Class Period; (4) the amount, if any, by which the prices of Caribou securities were allegedly distorted (if at all) during the Class Period; (5) the effect of various market forces on the prices of Caribou securities at various times during the Class Period; (6) the extent to which external factors influenced the prices of Caribou securities at various times during the Class Period; (7) the extent to which the various matters that Lead Plaintiff alleged were materially false or misleading influenced (if at all) the prices of Caribou securities at various times during the Class Period; and (8) the extent to which the various allegedly adverse material facts that Lead Plaintiff alleged were omitted influenced (if at all) the prices of Caribou securities at various times during the Class Period.

Courts in this district have approved notices containing similar language. *See, e.g., In re Apple Inc. Sec. Litig.*, No. 4:19-CV-02033-YGR, 2024 WL 3297079, at *25 (N.D. Cal. June 3, 2024).

**7. Why do the parties propose that those seeking to be excluded from the settlement class provide documentary proof of their ownership of Caribou stock? If that requirement is not necessary, please revise the Notice, Request for Exclusion Form, and Proposed Order Granting Preliminary Approval to eliminate it and to allow estimates regarding the dates, amounts, and prices if the party explains why they do not have exact information readily available.**

The Notice, Request for Exclusion Form, and Proposed Order have been revised to allow a potential class member seeking exclusion from the class provide estimates regarding the dates, amounts, and prices of their stock transactions if the potential class member explains why they do not have documentary proof of their ownership of Caribou stock available.

**8. Please address the following item from the Northern District of California's Procedural Guidance for Class Action Settlements, as required by the Court's Civil Standing Order:**

> **a. Item 11(a): In the table included in paragraph 61 of the Joint Declaration of Sara Fuks and Brian Schall, please provide information about (1) the claims that were released and (2) the total exposure if the plaintiffs had prevailed on every claim.**

The Amended Joint Declaration of Sara Fuks and Brian Schall filed herewith includes information regarding both items. *See* Decl. ¶61.

**9. Please submit a new version of the Long Form Notice and related forms with the following changes (set forth in Items 9(a)-9(i) of Court's order)**

The changes to 9(b)-9(l) have been made.

With respect to Item 9(a) ("Please fill in all required dates, as calculated based on an entry of the preliminary approval order on October 15, 2024"), Plaintiffs respectfully submit that required dates cannot be determined until a date for the final approval hearing is set. The dates in the proposed Notice for the deadline to file claims, the exclusion deadline, and the objection deadline are keyed off the date of the Court's hearing on final approval of the Proposed Settlement, which the Court has not yet set. The Proposed Preliminary Approval Order contains a blank for the Court to set the date of the final approval hearing. The notice documents that are disseminated to Class Members will of course contain all of the required deadlines/dates, which Plaintiffs will be able to

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 3:23-cv-01742-RFL

8

determine once the Court sets a date for the final settlement hearing in connection with issuing a preliminary approval order.

**10. Please revise the Proposed Orders Granting Preliminary Approval and Final Approval include provisions for the filing of post-distribution accounting forms as described in the Northern District of California's Procedural Guidance for Class Action Settlements. The accounting shall be required to be completed in the form attached to this Order as Exhibit A. Please also include provisions for withholding 10% of the attorneys' fees to be released upon the completion of those forms.**

The revised Proposed Orders Granting Preliminary Approval and Final Approval contain provisions for the filing of post-distribution accounting forms as described in the Northern District of California's Procedural Guidance for Class Action Settlements,  and for withholding 10% of the attorneys' fees to be released upon the completion of those forms. *See* Fuks/Schall Decl. Exh.1, Exh. B (Proposed Order Granting Final Approval) ¶22; Proposed Order Granting Preliminary Approval ¶38.

***

We are happy to answer any other questions the Court may have.

Dated: October 1, 2024                                        Respectfully submitted,

                                        **THE ROSEN LAW FIRM, P.A**.

                                        By: */s/ Sara Fuks*

                                        Laurence M. Rosen (SBN 219683)
                                        355 S. Grand Avenue, Suite 2450
                                        Los Angeles, CA 90071
                                        Telephone: (213) 785-2610
                                        Facsimile: (213) 226-4684
                                        Email: lrosen@rosenlegal.com

                                        and

                                        Phillip Kim (*pro hac vice*)
                                        Sara Fuks (*pro hac vice*)
                                        275 Madison Avenue, 40th Floor
                                        New York, NY 10016
                                        Tel: (212) 686-1060
                                        Fax: (212) 2020-3827

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 3:23-cv-01742-RFL

9

Email: pkim@rosenlegal.com
Email: sfuks@rosenlegal.com

**THE SCHALL LAW FIRM**
Brian Schall (SBN 290685)
Ivy T. Ngo (SBN 249860)
Rina Restaino (SBN 285415)
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
brian@schallfirm.com
ivy@schallfirm.com
rina@schallfirm.com

*Co-Lead Counsel for Plaintiffs and for the Class*

**CERTIFICATE OF SERVICE**

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of The Rosen Law Firm, P.A., with offices at 355 S. Grand Avenue, Suite 2450 Los Angeles, CA 90071. I am over the age of eighteen.

On October 1, 2024, I electronically filed the foregoing PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on October 1, 2024.

/s/ Laurence M. Rosen

PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; Case No. 3:23-cv-01742-RFL

11