# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| RON BERGMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CARIBOU BIOSCIENCES, INC., RACHEL E. HAURWITZ, JASON V. O'BYRNE, RYAN FISCHESSER, SCOTT BRAUNSTEIN, ANDREW GUGGENHIME, JEFFREY LONG-MCGIE, NATALIE R. SACKS, BOFA SECURITIES INC., CITIGROUP GLOBAL MARKETS, INC., and SVB SECURITIES LLC,<br><br>Defendants. | Case No.:  3:23-cv-01742-RFL<br><br>CLASS ACTION |

## NOTICE OF MOTION AND MOTION

### TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE THAT** on February 18, 2025, or on such other date as they may be heard, Lead Plaintiff Ron Bergman and named plaintiff Carl Cooper ("Plaintiffs") will appear at Courtroom 15, United States District Court for the Northern District of California -- Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate Avenue, 18th Floor, San Francisco, California 94102, or by telephonic or videoconference means as directed by the Court, and will hereby move for an order pursuant to Federal Rule of Civil Procedure 23(e)(2): (1) granting final approval of the Settlement; (2) finding that Notice to the Settlement Class was provided as required and to the satisfaction of Rule 23, due process and the Private Securities Litigation Reform Act of 1995 ("PSLRA");  (3) approving the Plan of Allocation as fair and reasonable and (4) granting final certification of the proposed Settlement Class, and appointing Plaintiffs as class representatives of the Settlement Class and Co-Lead Counsel as class counsel for the Settlement Class.

1  This motion is based upon this Notice of Motion and Motion (together, the "Motion"); the

2  supporting Memorandum that follows, the accompanying declarations, including the Joint

3  Declaration of Sara Fuks and Brian Schall and exhibits attached thereto, the prior declarations of

4  Sara Fuks and Brian Schall, Dkt. Nos. 77, 86, other previous filings and orders in this case, and any

5  further representations as may be made by counsel at hearing on this matter.

6  Plaintiffs are not aware of any opposition to the Motion, and no objections have been

7  received to date.

8  ### STATEMENT OF ISSUES TO BE DECIDED

9  1.  Whether the Court should grant final approval of the proposed Settlement as fair,

10  reasonable and adequate pursuant to Rule 23(e)(2).

11  2.  Whether the plan of notice directed by the Court in the Preliminary Approval Order

12  (Dkt. No. 88), satisfied Rule 23, due process and the PSLRA.

13  3.  Whether the Court should grant final approval of the Plan of Allocation.

14  4.  Whether the Court should grant final certification of the proposed Settlement Class.

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No.3:23-cv-01742-RFL               ii

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................... 1

ARGUMENT .................................................................................................... 3

    I.      THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL ................... 3

        A.    Plaintiffs and Lead Counsel Have Adequately Represented the
             Settlement Class ............................................................................ 5

        B.    The Settlement was the Result of Arm's-Length Negotiations
             Between Informed Counsel Involving a Skilled Mediator ......................... 7

        C.    The Settlement Provides Adequate Relief for the Settlement Class
             Relative to the Costs and Risks of Further Litigation and all other
             Relevant Factors ........................................................................... 10

             1.    The Settlement Provides Meaningful Relief to Injured
                    Class Members ................................................................. 10

             2.    The Strengths and Risks of Plaintiffs' Case and the Serious
                    Risks of Continued Litigation ............................................. 12

             3.    The Expense and Likely Duration of Further Litigation .............. 14

             4.    All Other Factors in Rule 23(e)(2)(C) Support Final
                    Approval ......................................................................... 15

        D.    Additional Factors Considered by the Ninth Circuit Support
              Approval of the Settlement ............................................................. 16

    II.    THE NOTICE PROGRAM SATISFIED DUE PROCESS AND
        COMPLIED WITH FED. R. CIV. P. 23(e) ............................................... 18

    III.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ....................... 21

    IV.    THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE
        SETTLEMENT CLASS .................................................................... 22

CONCLUSION ................................................................................................ 23

1

2

## <u>TABLE OF AUTHORITIES</u>

3

**Page(s)**

4

<u>Cases</u>

5

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) .................................................................................................. 10

6

7

*Barani v. Wells Fargo Bank, N.A.*,
   No. 12CV2999-GPC KSC, 2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) ..................................... 19

8

9

*Bernstein v. Ginkgo Bioworks Holdings, Inc.*,
   No. 4:21-CV-08943-KAW, 2024 WL 5112227 (N.D. Cal. Dec. 13, 2024)................................... 4

10

*Betorina v. Randstad US, L.P.*,
   No. 15-CV-03646-EMC, 2017 WL 1278758 (N.D. Cal. Apr. 6, 2017) ........................................ 10

11

12

*Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.*,
   No. 12-CV-05259-JST, 2014 WL 2967474 (N.D. Cal. June 30, 2014) ........................................ 7

13

*Campbell v. Facebook, Inc.*,
   951 F.3d 1106 (9th Cir. 2020) .................................................................................................. 3

14

15

*Cheng Jiangchen v. Rentech, Inc.*,
   No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .............................. 7

16

17

*Churchill Vill., L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2004) ............................................................................................. 4, 20

18

19

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974)..................................................................................................... 11

20

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ............................................................................................. 5, 21

21

22

*Destefano v. Zynga, Inc.*,
   No. 12-CV-04007-JSC, 2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................... 10, 14, 22

23

24

*Dura Pharmaceuticals, Inc. v. Broudo*,
   544 U.S. 336 (2005)................................................................................................................. 21

25

26

*Eisen v. Porsche Cars N. Am., Inc.*,
   No. 2:11-CV-09405-CAS, 2014 WL 439006 (C.D. Cal. Jan. 30, 2014)....................................... 9

27

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ................................................................................................... 5

28

*Fleming v. Impax Lab'ys Inc.*,
    No. 16-CV-06557-HSG, 2022 WL 2789496 (N.D. Cal. July 15, 2022) ...................................... 13

*Garner v. State Farm Mut. Auto. Ins. Co.*,
    No. CV 08 1365 CW EMC, 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010)............................... 3, 10

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) .......................................................................................................... 14

*Gutierrez-Rodriguez v. R.M. Galicia, In*c.,
    No. 16-CV-00182-H-BLM, 2018 U.S. Dist. LEXIS 49801 (S.D. Cal. Mar. 26, 2018) .................. 9

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1998) ................................................................................................ 4, 16, 18

*Hefler v. Wells Fargo & Co.*,
    No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)........................................... 16

*Hefler v. Wells Fargo & Co.*,
    No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...................................... 7, 10

*IBEW Local 697 v. Int'l Game Tech.*,
    No. 3:09–cv–00419–MMD–WGC, 2012 WL 5199742 (D. Nev. Oct. 19, 2012) ......................... 16

*Ikuseghan v. Multicare Health Sys.*,
    No. 3:14-CV-05539-BHS, 2016 WL 3976569 (W.D. Wash. July 25, 2016)................................. 14

*In re 3D Sys. Sec. Litig.*,
    2024 WL 50909 (E.D.N.Y. Jan 4, 2024) ....................................................................................... 11

*In re Banc of California Sec. Litig.*,
    No. SACV1700118AGDFMX, 2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) ................................. 8

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ............................................................................................................ 9

*In re Celera Corp. Sec. Litig.*,
    2015 WL 1482303 (N.D. Cal. Mar. 31, 2015)....................................................................... 8, 13, 19

*In re Extreme Networks, Inc. Sec. Litig.*,
    15-cv-04883-BLF, 2019 WL 3290770 (N.D. Cal. July 22, 2019)............................................. 7, 22

*In re Google LLC St. View Elec. Commc'ns Litig.*,
    611 F. Supp. 3d 872 (N.D. Cal. 2020) ........................................................................................... 18

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 454 (9th Cir. 2000) ........................................................................................................... 10

*In re Mut. Funds Inv. Litig.*,
    2010 WL 2342413 (D. Md. May 19, 2010) ................................................................. 19

*In re NVIDIA Corp. Derivative Litig.*,
    No. C-06-06110-SBA(JCS), 2008 WL 5382544 (N.D. Cal. Dec. 22, 2008) ............................... 17

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..................................................................... 17

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006) ................................................................................. 5

*In re Tyco Int'l, Ltd.*,
    535 F. Supp. 2d 249 (D.N.H. 2007) ........................................................................ 13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. MDL 2672 CRB (JSC),
    2019 WL 2077847 (N.D. Cal. May 10, 2019) ............................................................... 7

*In re Wireless Facilities, Inc. Sec. Litig. II*,
    253 F.R.D. 607 (S.D. Cal. 2008) ........................................................................... 13

*Kuraica v. Dropbox, Inc.*, No. 19-CV-0,
    6348-BLF, 2021 WL 5826228 (N.D. Cal. Dec. 8, 2021) ................................................ 18

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F.2d 507 (9th Cir. 1978) .................................................................................. 5

*Linney v. Cellular Alaska P'ship*,
    151 F.3d 1234 (9th Cir. 1998) ............................................................................... 11

*Luna v. Marvell Tech. Grp.*,
    No. C 15-05447 WHA, 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ................................ 13

*Mendoza v. Hyundai Motor Co., Ltd*,
    No. 15-CV-01685-BLF, 2017 WL 342059 (N.D. Cal. Jan. 23, 2017) ................................... 4

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
    221 F.R.D. 523 (C.D. Cal. 2004) ...................................................................... 14, 17

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ............................................................................. 5, 10

*Quiruz v. Specialty Commodities, Inc.*,
    No. 17-CV-03300-BLF, 2020 WL 6562334 (N.D. Cal. Nov. 9, 2020) ................................. 16

*Redwen v. Sino Clean Energy, Inc.*,
    No. CV 11-3936 PA (SSX), 2013 WL 12303367 (C.D. Cal. July 9, 2013) .......................... 9, 21

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ................................................................ 14, 17

*Salazar v. Midwest Servicing Grp., Inc.*,
  No. 17–CV–0137–PSG–KS, 2018 WL 3031503 (C.D. Cal. June 4, 2018) ................................. 12

*Satchell v. Fed. Express Corp.*,
  No. C 03 2878 SI, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007)...................................... 8

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ................................................................ 14

*Vataj v. Johnson*,
  No. 19-CV-06996-HSG, 2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ................................. 21

*Vizcaino v. U.S. Dist. Ct. for W. Dist. of Washington*,
  173 F.3d 713 (9th Cir. 1999) ................................................................ 13

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338, (2011)........................................................................ 4

*Wong v. Arlo Techs., Inc.*,
  No. 5:19-CV-00372-BLF, 2021 WL 1146042 (N.D. Cal. Mar. 25, 2021)...................................... 4

**Rules**

Fed. R. Civ. P. 23 ........................................................................ passim

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Ron Bergman and named plaintiff Carl Cooper (collectively, "Plaintiffs"), respectfully submit this memorandum of points and authorities in support of their Motion for: (i) final approval of the proposed Settlement; (ii) finding that the Court-ordered plan of Notice complied with the requirements of Rule 23, due process and the PSLRA; (iii) final approval of the proposed Plan of Allocation; and (iv) final certification of the Settlement Class.[1]

## **PRELIMINARY STATEMENT**

Plaintiffs have secured a $3,900,000 cash settlement in exchange for dismissal of this Action and release of all claims. The Settlement represents an excellent result in light of the benefits and risks of continued litigation, especially in light of the risks that Plaintiffs faced in proving the securities fraud claims at issue, including: the substantial risks in withstanding the pending motions to dismiss, proving at summary judgment and trial the elements of falsity materiality, scienter, loss causation, and damages for its Section 10(b) claims, as well as defeating affirmative defenses of negative causation and due diligence for their Section 11 claims.

The Settlement is the product of extended arm's-length negotiations between experienced and well-informed counsel, including a full-day mediation session and several subsequent negotiations before an experienced mediator, the Honorable S. James Otero (Ret.). Dkt. No. 86-1 at 4. The Settlement was based on a final mediator's recommendation by Judge Otero. *Id.* As detailed in the accompanying Joint Declaration of Sara Fuks and Brian Schall ("Fuks-Schall Decl."), and summarized herein, the proposed Settlement provides a substantial, certain, and prompt recovery for the Settlement Class while avoiding the significant risks of continued litigation, including the risk that the Settlement

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings set forth and defined in the Amended Stipulation and Agreement of Settlement dated October 1, 2024 ("Stipulation"). *See* Dkt. No. 86-1.

Class could recover less than the Settlement amount (or nothing at all) after years of additional litigation, appeals, and delay. *Id.*; Dkt. No. 86 ¶22.

The proposed Settlement is the result of Plaintiffs' and Co-Lead Counsel's substantial litigation efforts. As set forth in detail in the Fuks-Schall Declaration, the Parties reached the Settlement after Co-Lead Counsel's extensive investigation, and legal research of the claims asserted in this Action, which helped to evaluate and understand the strengths and weaknesses of these claims, including: (i) reviewing Caribou's SEC filings, press releases, conference calls, news reports, and other public statements made by Defendants prior to, during, and after the Settlement Class Period; (ii) reviewing public documents, reports, announcements, and news articles concerning Caribou, including medical and scientific literature concerning Caribou and its competitors; (iii) reviewing research reports by securities analysts; (iv) retaining a private investigator to conduct interviews with former Caribou employees; (v) consulting an expert in the field of Oncology and Immunology; and (vi) retaining an economic expert to conduct a damages analysis. Dkt. No. 86 ¶22. These activities permitted an informed assessment of the strengths and weaknesses of the claims and defenses asserted and the risks and delays of continued litigation and trial. Based on their evaluation, Plaintiffs and Co-Lead Counsel strongly believe the Settlement is fair, reasonable, and adequate. *See* Declarations of Ron Bergman and Carl Cooper, submitted herewith as Exhibits 5, 6.

The reaction of the Settlement Class thus far has also been overwhelmingly positive. In addition to publication and website notice, 42,240 Postcard Notices were mailed or emailed to potential Class Members, advising them of the Settlement and providing a link to the full Plan of Allocation. *See* Section II, *infra*. Although the objection and exclusion dates have not yet passed, to date, not a single Class Member has objected or sought exclusion. *See* Fuks-Schall Decl. ¶¶24-25, 63-64.

As more fully discussed below, the Settlement satisfies all of the factors considered under Rule

23 and in the Ninth Circuit for approval of a class action settlement. Accordingly, Plaintiffs respectfully request that the Court grant final approval of the Settlement and approve the Plan of Allocation.

Finally, the Court should grant final certification of the Settlement Class for settlement purposes. The Court preliminarily certified the Settlement Class after Plaintiffs fully briefed the requirements of Rules 23(a) and (b)(3). Nothing has changed to alter the certification analysis, and thus final certification is merited.

## ARGUMENT

## I.    THE PROPOSED SETTLEMENT MERITS FINAL APPROVAL

The Ninth Circuit recognizes a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020).[2] Securities class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation. The settlement of complex cases also promotes the efficient utilization of scarce judicial resources and the speedy resolution of claims. *See Garner v. State Farm Mut. Auto. Ins. Co.*, No. CV 08 1365 CW EMC, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continu[ed] … litigation" and "produce[s] a prompt, certain, and substantial recovery for the … class.").

Under Rule 23(e)(2), "a district court may approve a class action settlement only after finding that the settlement is fair, reasonable, and adequate." *Campbell*, 951 F.3d at 1120-21. In making that determination, the Court must consider the factors laid out in Rule 23(e)(2)(A)-(D):

(A) the class representatives and class counsel have adequately represented the class;

---

[2] All internal citations and quotations are omitted and emphasis is added unless otherwise stated.

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account, [among other things,] the costs, risks, and delay of trial and appeal […]; and

(D) the proposal treats class members equitably relative to each other.

Consistent with Rule 23(e)(2), courts in the Ninth Circuit look at the following factors when assessing final approval of a class action settlement:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.[3]

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *see also Wong v. Arlo Techs., Inc.*, No. 5:19-CV-00372-BLF, 2021 WL 1146042, at *6 (N.D. Cal. Mar. 25, 2021) (recognizing that Rule 23(e)'s considerations "overlap with certain *Hanlon* factors"); *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575-76 (9th Cir. 2004) (applying the same factors).[4]

The Ninth Circuit has explained that review of settlements should be "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair,

---

[3] "Because there is no governmental entity involved in this litigation, this [seventh] factor is inapplicable." *Mendoza v. Hyundai Motor Co., Ltd*, No. 15-CV-01685-BLF, 2017 WL 342059, at *7 (N.D. Cal. Jan. 23, 2017).

[4] *Hanlon* was overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 375, (2011), but the factors have remained the applicable standard. Sometimes courts refer to these factors as "*Churchill* Factors." See, e.g., *Bernstein v. Ginkgo Bioworks Holdings, Inc.*, No. 4:21-CV-08943-KAW, 2024 WL 5112227, at *4 (N.D. Cal. Dec. 13, 2024).

reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027. Thus, a settlement hearing should "not to be turned into a trial or rehearsal for trial on the merits," *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982), and a court "need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992).

Under Rule 23 and the *Hanlon* factors, the Settlement is fair, reasonable and adequate, and should be approved by the Court.

### A.     Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class

At the settlement approval stage, the first Rule 23 consideration is whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). To determine adequacy, courts consider two questions: (1) do the plaintiffs or their counsel have any conflicts of interest with other class members, and (2) will the plaintiffs and their counsel prosecute the action vigorously on behalf of the class. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011).

Here, Plaintiffs' claims are typical of and coextensive with those of the Settlement Class, and they do not have any interests that are antagonistic to the interest of other members of the Settlement Class. *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). Plaintiffs and Settlement Class Members all purchased Caribou common stock during the Settlement Class Period and traceable to the IPO offering documents or in the aftermarket and were allegedly injured by the same public misrepresentations. Plaintiffs and other Settlement Class Members share the common interest of obtaining the largest possible recovery from Defendants. *See In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of

maximizing recovery, there is no conflict of interest between the class representatives and other class members.").

Further, Plaintiffs and Co-Lead Counsel have proved their adequacy by advancing this litigation and achieving the proposed Settlement. Plaintiffs are engaged individual investors who actively supervised and participated in the litigation. *See* Exs. 5 and 6 (Bergman and Cooper Declarations). Plaintiffs retained counsel who are highly experienced in securities litigation and have successfully prosecuted many complex class actions throughout the United States. *See* Ex. 3 Declaration of Sara Fuks in Support of Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, Ex. A (Rosen Law Firm Resume) and Ex. 4 Declaration of Brian Schall in Support of Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, Ex. A (Schall Law Firm Resume). Plaintiffs and Co-Lead Counsel vigorously prosecuted the Settlement Class's claims, including: (i) reviewing Caribou's SEC filings, press releases, conference calls, news reports, and other public statements made by Defendants prior to, during, and after the Settlement Class Period; (ii) reviewing public documents, reports, announcements, and news articles concerning Caribou, including extensive and complex medical and scientific literature concerning Caribou and its competitors; (iii) reviewing research reports by securities analysts; (iv) retaining a private investigator to conduct interviews with former Caribou employees; (v) consulting an expert in the field of Oncology and Immunology; and (vi) retaining an economic expert to conduct a damages analysis; (vi) responding in opposition to Defendants' motions to dismiss; (vii) participating in extended arm's-length settlement negotiations, including a full-day mediation session with a professional mediator; (viii) selecting a claims administrator and formulating the Notice Plan and Plan of Allocation; and (ix) filing the instant motion for final approval of the Settlement *See* Amended Joint Declaration of Sara Fuks and Brian Schall Declaration, Dkt. No. 86 ¶¶6-7, 22(a) ("Fuks and Schall Declaration"); Fuks-Schall Decl. ¶51. Given Plaintiffs' and Co-Lead Counsel's demonstrated

prosecution of the case, it is without question that they have adequately represented the Settlement Class. *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. MDL 2672 CRB (JSC), 2019 WL 2077847, at *1 (N.D. Cal. May 10, 2019) (finding securities class settlement to be procedurally fair where "Lead Counsel vigorously litigated this action during motion practice and discovery, and the record supports the continuation of that effort during settlement negotiations"); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) at *13 (unpublished) (granting final approval and noting that "Class Counsel had vigorously prosecuted this action through dispositive motion practice, extensive initial discovery, and formal mediation" and that "given this prosecution of the action, counsel possessed sufficient information to make an informed decision about settlement").

Moreover, in addition to adequacy, all of the other factors under Federal Rules of Civil Procedure 23(a) and (b) that the Court preliminarily determined were met remain satisfied. *See* Dkt. No. 88. Thus, the Settlement Class should remain certified. *See, e.g., Boring v. Bed Bath & Beyond of California Ltd. Liab. Co.*, No. 12-CV-05259-JST, 2014 WL 2967474, at *2 (N.D. Cal. June 30, 2014).

### B. The Settlement was the Result of Arm's-Length Negotiations Between Informed Counsel Involving a Skilled Mediator

Rule 23(e)(2)(B) asks whether "the [settlement] proposal was negotiated at arm's length." This consideration overlaps with certain *Hanlon* factors, "such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *In re Extreme Networks, Inc. Sec. Litig.*, 15-cv-04883-BLF, 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019).

A fair class settlement is the product of arm's-length negotiations by competent and zealous advocates. *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, 2019 WL 2077847, at *1; *cf Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019) (finding that the settlement was the

product of "serious, informed, non-collusive negotiations performed at arms-length" where it involved a mediator and vigorousness litigation). Courts have also reasoned that "one important factor [to consider] is that the parties reached the settlement ... with a third-party mediator." *In re Banc of California Sec. Litig.*, No. SACV1700118AGDFMX, 2019 WL 6605884, at *2 (C.D. Cal. Dec. 4, 2019); *see also Satchell v. Fed. Express Corp.*, No. C 03 2878 SI, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007) (finding "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

The Settlement results from arm's-length negotiations facilitated by an experienced mediator and retired federal judge, Judge Otero, after a year of vigorous litigation. Fuks-Schall Declaration ¶¶13, 37; Declaration of Hon. S. James Otero (Ret.), attached thereto as Exhibit 1 ¶8. Here, the Parties settled only after a mediator's proposal was evaluated and ultimately accepted by the Parties. Co-Lead Counsel engaged in rigorous settlement negotiations with counsel for Defendants, guided both during and after the mediation session by a well-respected retired judge and mediator in Judge Otero, who has several years of experience mediating complex actions and over thirty years of experience as a federal and state court judge presiding over securities class actions such as this one. Prior to the mediation session, Plaintiffs and the Caribou Defendants exchanged mediation statements. Although the mediation did not end in an agreement, the Parties continued negotiations through Judge Otero and accepted his mediator's proposal. *See In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015) (preliminarily approving settlement mediated by retired federal judge, finding "the mediation process must have assisted the parties to gain a better understanding of their respective strengths and weaknesses to litigate this case").

At the time of the negotiations, Plaintiffs and Co-Lead Counsel were well-informed about the strengths and weaknesses of their case, from: (i) reviewing Caribou's SEC filings, press releases, conference calls, news reports, and other public statements made by Defendants prior to, during, and

after the Settlement Class Period; (ii) reviewing public documents, reports, announcements, and news articles concerning Caribou, including medical and scientific literature concerning Caribou and its competitors; (iii) reviewing research reports by securities analysts; (iv) retaining a private investigator to conduct interviews with former Caribou employees; (v) consulting an expert in the field of Oncology and Immunology; and (vi) retaining an economic expert to conduct a damages analysis. Thus, they had more than adequate information to "reasonably evaluate their … positions" in mediation. *See Eisen v. Porsche Cars N. Am., Inc.,* No. 2:11-CV-09405-CAS, 2014 WL 439006, at *4 (C.D. Cal. Jan. 30, 2014) (approving settlement where record established that "all counsel had ample information and opportunity to assess the strengths and weaknesses of their claims and defenses"); *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSX), 2013 WL 12303367, at *7 (C.D. Cal. July 9, 2013) (approving settlement where, as here, "the parties have spent a significant amount of time considering the issues and facts in this case and are in a position to determine whether settlement is a viable alternative").

None of the indicia of collusion are present here. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011). Only 28% in attorneys' fees is sought, just slightly over the standard benchmark; the Settlement Class Members will receive the majority of the Settlement Amount as a monetary distribution; there is no "clear sailing" arrangement; any remaining funds (for example from uncashed checks) will not revert to defendants;[5] and the Plan of Allocation calls for the Net Settlement Fund to be allocated to Plaintiff and other Class Members pursuant to the same *pro rata* formula.

---

[5] *See* Stipulation at ¶9.4 ("This is not a claims made settlement and if all conditions of the Stipulation are satisfied and the Final Judgment becomes Final, no portion of the Settlement Fund will be returned to Caribou.."); *see also, Gutierrez-Rodriguez v. R.M. Galicia, Inc*., No. 16-CV-00182-H-BLM, 2018 U.S. Dist. LEXIS 49801, at *18 (S.D. Cal. Mar. 26, 2018) (noting 28.8% recovery is close to 25% benchmark and does not indicate collusion).

**C.    The Settlement Provides Adequate Relief for the Settlement Class Relative to the Costs and Risks of Further Litigation and all other Relevant Factors**

Rule 23(e)(2)(C)(i) and the first four *Hanlon* factors concern the amount of relief provided relative to the "strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation"; and the specific risks related to class certification. These factors are often considered together. *Betorina v. Randstad US, L.P.*, No. 15-CV-03646-EMC, 2017 WL 1278758, at *5 (N.D. Cal. Apr. 6, 2017).  Here, they unquestionably support final approval. Securities cases, like the present one, "are highly complex and … securities class litigation is notably difficult and notoriously uncertain." *Hefler,* 2018 WL 6619983, at *6; *see, e.g.*, *Garner*, 2010 WL 1687832, at *10 ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.") (citation and internal quotation marks omitted); *see also Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.") (O'Connor, J, sitting by designation). This case is no different.

**1.    The Settlement Provides Meaningful Relief to Injured Class Members**

The amount of a settlement "is generally considered the most important [factor], because the critical  component of any settlement is the amount of relief obtained by the class." *Destefano v. Zynga, Inc.*, No. 12-CV-04007-JSC, 2016 WL 537946, at *11 (N.D. Cal. Feb. 11, 2016). However, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000). Courts recognize that "the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation." *Officers for Justice*, 688 F.2d at 624.

Here, the proposed Settlement provides an all-cash recovery of $3,900,000. If Plaintiffs had

successfully defeated all Defendants' pending motions to dismiss as to both their Securities Act claims and Exchange Act claims, obtained certification of a class co-extensive with the Settlement Class, fully prevailed in each of their claims at summary judgment and after a jury trial, if the Court and jury awarded Plaintiffs' damages—*i.e.*, Plaintiffs' best-case scenario—estimated total maximum damages would have been approximately $256,500,000. Thus, the $3,900,000 Settlement Amount represents approximately 1.52% of the maximum recoverable damages potentially available in this Action. If Plaintiffs prevailed only on their Securities Act claims, estimated total maximum damages would have been approximately $191,200,000, with the $3,900,000 Settlement Amount therefore representing approximately 2% of maximum damages. And, if Plaintiffs prevailed on their Exchange Act claims only, maximum damages would have been approximately $65,400,000, with the $3,900,000 Settlement Amount therefore representing approximately 6% of maximum damages. These percentages are in line with other securities class action settlements. According to NERA Economic Consulting, in 2023 the median ratio of settlements to investor losses was 1.8%. Edward Flores and Svetlana Staryk, Recent Trends in Securities Class Action Litigation: 2023 Full Year in Review, at 26 (Fig. 22)., available at: www.nera.com/content/dam/nera/publications/2024/PUB_2023_Full-Year_Sec_Trends_0123.pdf.

"The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.'" *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 455 & n.2 (2d Cir. 1974)); *In re 3D Sys. Sec. Litig.*, No. 21-CV-1920 (NGG) (TAM), 2024 WL 50909, at *12 and n.11 (E.D.N.Y. Jan. 4, 2024) (approving settlement amount of $4 million in securities class action, representing approximately 1% of maximum recoverable damages of $414.1 million).

By any measure, the Settlement provides a significant benefit to Class Members and weighs in

favor of final approval.

>    **2.    The Strengths and Risks of Plaintiffs' Case and the Serious Risks of Continued Litigation**

The strong recovery ensured by the Settlement is even more favorable when weighed against the risks of continued litigation. While Plaintiffs remain confident in their ability to ultimately prove the alleged claims, summary judgment and trial are always risky. *See, e.g.*, *Salazar v. Midwest Servicing Grp., Inc.*, No. 17–CV–0137–PSG–KS, 2018 WL 3031503, at *6 (C.D. Cal. June 4, 2018) (A "settlement agreement's elimination of risk, delay, and further expenses weighs in favor of approval").

The risks of continued litigation in this case were significant. In considering the Settlement, Plaintiffs and Co-Lead Counsel weighed the risks inherent in establishing all the elements of the claims, as well as the likely further expense and duration of the Action. Here, the risks were immediately present as Defendants' motions to dismiss were pending before the Court. Although Plaintiffs believed the Amended Complaint was sufficient to withstand Defendants' motions, there remained a significant risk that the Court would grant dismissal. According to a 2023 survey, in cases alleging Exchange Act claims against companies in the life sciences sector, defendant companies succeeded 68% of the time in obtaining dismissal at the pleadings stage (or in two cases, summary judgment). *See* Sidley Securities Class Actions in the Life Sciences Sector: 2023 Annual Survey, Sidley Austin LLP, p. 3, available at https://www.sidley.com/-/media/publications/securities-class-actions-in-the-life-sciences-sector--2023-annual-survey--prepared-by-sidley-austin.pdf?la=en. Moreover, even if Plaintiffs prevailed at the pleading stage, there were also substantial risks to Plaintiffs' success at class certification, summary judgment and trial.

Defendants deny any wrongdoing and would have presented a multi-pronged defense to Plaintiffs' claims, as previewed in their motions to dismiss. Plaintiffs and Co-Lead Counsel believe that the case has substantial merit but recognize the significant risk and expense necessary to

successfully prosecute Plaintiffs' claims through the pending motions to dismiss, a contested motion for class certification, completion of fact and expert discovery, summary judgment, trial, and subsequent appeals, as well as the inherent difficulties and delays that complex litigation like this entails. *See, e.g., In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008) (preliminarily approving settlement where "[l]iability remains uncertain" as "it appears to the Court that plaintiffs have a viable claim regarding the alleged securities fraud and Defendants have a viable defense against such claims"). Likewise, the determination of damages, like the determination of liability, is a complicated and uncertain process, involving conflicting expert testimony. *In re Tyco Int'l, Ltd*., 535 F. Supp. 2d 249, 260-61 (D.N.H. 2007) ("Proving loss causation would be complex and difficult. Moreover, even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages."); *In re Celera Corp. Sec. Litig.*, Case No. 5:10-CV-02604-EJD, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015) ("As with any securities litigation case, it would be difficult for Lead Plaintiff to prove loss causation and damages at trial…. Lead Plaintiff would risk recovering nothing without a settlement."); *Luna v. Marvell Tech. Grp.*, No. C 15-05447 WHA, 2018 WL 1900150, at *3 (N.D. Cal. Apr. 20, 2018) (noting the risks of proving scienter, loss causation, and damages at trial). If Defendants prevailed on any of these arguments, damages would be substantially reduced or eliminated.

Class certification also posed risks. Absent the Settlement, Defendants likely would have contested certification. And, even if a class was certified, it could be altered or amended at any time before final judgment. *See, e.g.*, *Fleming v. Impax Lab'ys Inc.*, No. 16-CV-06557-HSG, 2022 WL 2789496, at *6 (N.D. Cal. July 15, 2022) ("[T]here is always a risk of decertification – especially when, as here, Plaintiffs must overcome causation and damages defenses."); *Vizcaino v. U.S. Dist. Ct. for W. Dist. of Washington*, 173 F.3d 713, 721 (9th Cir. 1999). Accordingly, this factor supports final approval.

### 3.    The Expense and Likely Duration of Further Litigation

The expense and likely duration of the case also support final approval of the Settlement. *See Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1373, 1376 (9th Cir. 1993) ("the cost, complexity and time of fully litigating the case all suggest that this settlement was fair"). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Here, the expense and duration of protracted litigation, including class certification, summary judgment, preparing and trying the case to a jury and any appeals, would be significant. *See* Dkt. No. 86 ¶22(c). If litigation were to continue, Plaintiffs would also have to retain costly subject matter, accounting and econometric experts. *Id*. Barring a settlement, this case would be litigated for years with no assurance of a better outcome for the Settlement Class. *See Zynga*, 2016 WL 537946, at *10 ("continuing litigation would not only be costly–representing expenses that would take away from any ultimate classwide recovery–but would also delay resolution and recovery for Settlement Class Members"). Even if Plaintiffs won at trial, "[i]nevitable appeals would likely prolong the litigation, and any recovery by class members, for years." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009); *see also Ikuseghan v. Multicare Health Sys.*, No. 3:14-CV-05539-BHS, 2016 WL 3976569, at *4 (W.D. Wash. July 25, 2016) ("[T]he outcome of trial and any appeals are inherently uncertain and involve significant delay…. Absent the proposed Settlement, Class Members would likely not obtain relief, if any, for a period of years."). Worse, an appeal could overturn a verdict and return Plaintiffs to the starting block. *See, e.g., Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction).

Considering those risks, the Settlement provides substantial and immediate relief, without subjecting Class Members to the risks, duration, and expense of continuing litigation.

### 4.    All Other Factors in Rule 23(e)(2)(C) Support Final Approval

Rule 23(e)(2)(C) also instructs courts to consider whether the relief provided for a class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorney's fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors also supports approval of the proposed Settlement.

First, the procedures for processing Class Members' claims and distributing the proceeds of the Settlement to Authorized Claimants are well-established, effective methods that have been widely used in securities class action litigation. The proceeds of the Settlement will be distributed to Class Members who submit eligible Claim Forms with required documentation to the Court-approved claims administrator, Strategic Claims Services ("SCS"). SCS, an independent company with extensive experience administering securities class actions, will review and process the claims under Lead Counsel's supervision, provide claimants with an opportunity to cure any deficiencies in their claims or request review of the denial of their claims by the Court, and then mail or wire claimants their *pro rata* share of the Net Settlement Fund (as calculated under the Plan of Allocation) upon approval of the Court. This type of claims processing is standard in securities class actions, and is necessary because neither Plaintiffs nor Defendants possess data regarding investors' transactions in Caribou stock that would allow the parties to create a claims-free process to distribute Settlement funds.

Second, the relief provided in the Settlement is also adequate when the terms and timing of the proposed award of attorney's fees are taken into account. The full Settlement amount has already been escrowed for the benefit of the Settlement Class, and therefore no fee has been sought while funding was uncertain. The Notice explains that Lead Counsel will apply for attorneys' fees not to exceed 28% of the Settlement as compensation for the services Lead Counsel rendered on the Settlement Class's

behalf. An award of attorneys' fees of up to 28% of the Settlement Fund is just slightly above the 25% benchmark award in the Ninth Circuit, and is reasonable in light of the effort and skill required to reach the Settlement and awards granted to counsel in similar cases. Approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. Stipulation ¶10.3.

Third, Rule 23(e)(2)(C) asks the Court to consider the proposed Settlement's fairness in light of any agreements required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C)(iv). As previously disclosed, the only agreement the Parties entered into in addition to the Stipulation itself was a confidential Supplemental Agreement regarding requests for exclusion. The Supplemental Agreement sets forth the conditions under which Caribou has the option to terminate the Settlement in the event that requests for exclusion from the Settlement Class reach a certain agreed-upon threshold. As is standard in securities class actions, the Supplemental Agreement is kept confidential to avoid incentivizing the formation of a group of opt-outs for the sole purpose of leveraging a larger individual settlement. This type of agreement is standard in securities class actions and has no negative impact on the fairness of the Settlement. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018). The Parties have no other agreements outside of the Stipulation and this Supplemental Agreement.

### D.    Additional Factors Considered by the Ninth Circuit Support Approval of the Settlement

Two additional factors considered by the Ninth Circuit in assessing the reasonableness of a proposed settlement are "the experience and views of counsel" and "the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. Both support the Settlement.

It is well-settled that courts grant "considerable weight" to the opinion of experienced counsel supporting settlement after legitimate, arm's-length negotiation. *See Quiruz v. Specialty Commodities, Inc.*, No. 17-CV-03300-BLF, 2020 WL 6562334, at *7 (N.D. Cal. Nov. 9, 2020); *see also IBEW Local*

*697 v. Int'l Game Tech.,* No. 3:09–cv–00419–MMD–WGC, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (giving "considerable weight to Lead Counsel's representation that the Settlement Amount is a favorable recovery based on their understanding of the issues and challenges in this case in particular and their experience in securities litigation in general"). Through their efforts on behalf of the Settlement Class, Lead Counsel and Plaintiffs have concluded that the proposed Settlement is fair, reasonable, and adequate. As the Ninth Circuit observed in *Rodriguez*, Co-Lead Counsel's informed opinion supports approval as "[t]his circuit has long deferred to the private consensual decision of the parties" and their counsel in settling an action. 563 F.3d at 965; *see also In re NVIDIA Corp. Derivative Litig.*, No. C-06-06110-SBA(JCS), 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the settlement."); *DIRECTV, Inc.*, 221 F.R.D. at 528 ("[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

Here, Plaintiffs are represented by experienced counsel who focus their practices on securities litigation and have negotiated numerous other substantial class action settlements nationwide. *See* Firm Resumes, Dkt. Nos. 18-5, 18-6. At the time of the mediation, Lead Counsel had a firm understanding of the legal and factual strengths and weaknesses of the claims. In this case, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).[6] Defendants are zealously represented by experienced counsel at Goodwin Procter LLP (who represented the Caribou Defendants from the inception of the case through the filing of Plaintiffs' motion for preliminary

---

[6] This analysis is consistent with the first two factors listed in Rule 23(e)(2), which examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." Advisory Committee Notes to 2018 Rule 23(e) amendments.

1   approval) Gibson, Dunn & Crutcher LLP (who took over representation of the Caribou Defendants in

2   July 2024, after the filing of Plaintiffs' motion for preliminary approval but before submission of the

3   Amended Stipulation of Settlement and supplemental memo filed on October 1, 2024), and Morgan,

4   Lewis & Bockius LLP (who represent the Underwriter Defendants). Defense counsel are at least as

5   well-informed regarding the case, and their representation of Defendants was no less vigorous than

6   Co-Lead Counsel's representation of the Settlement Class. Such representation dispels any suggestion

7   that a settlement process was infected with collusion or was otherwise procedurally defective.

8

9           Courts in this Circuit also typically consider "the reaction of the class members to the proposed

10  settlement." *In re Google LLC St. View Elec. Commc'ns Litig.*, 611 F. Supp. 3d 872, 896 (N.D. Cal.

11  2020); *see also Hanlon*, 150 F.3d at 1026. Specifically, "[a] court may appropriately infer that a class

12  action settlement is fair, adequate, and reasonable when few class members object to it." *Kuraica v.

13  Dropbox, Inc.*, No. 19-CV-06348-BLF, 2021 WL 5826228, at *5 (N.D. Cal. Dec. 8, 2021). While the

14  deadline to object to or opt out of the Settlement is January 28, 2025, as of January 14, 2025, no Class

15  Member has objected or sought exclusion. Fuks-Schall Decl. ¶¶25, 64; Declaration of Sarah Evans

16  Concerning: (A) Mailing and Emailing of Notice; (B) Publication of the Summary Notice; and (C)

17  Report on Requests for Exclusion and Objections ("Evans Decl.") ¶13.

18

19          Should any objections or exclusion requests be received, Co-Lead Counsel will address them

20  in the reply papers, which are due to be filed with the Court on February 4, 2025. Additionally, on that

21  date and consistent with the schedule ordered by the Court (*see* Dkt. No. 88), Plaintiffs will file a

22  declaration identifying the number of claims, objections and exclusion requests received, and updated

23  reporting on undeliverable mailings.

24

25  **II.    THE NOTICE PROGRAM SATISFIED DUE PROCESS AND COMPLIED WITH
        FED. R. CIV. P. 23(e)**

26

27          Notice of a class action settlement must be directed "in a reasonable manner to all class

28  members who would be bound" by the Settlement. Fed. R. Civ. P. 23(e)(1)(B). In granting preliminary

approval of the Settlement, the Court approved Plaintiffs' proposed notice program. *See* Dkt. No. 88 ¶5. The Notice program provided the best notice practicable, combining emailing links to the Settlement-dedicated website on which the Long Notice, Proof of Claim, and Stipulation will be posted, or if no email address can be obtained, mailing the Postcard Notice to Settlement Class Members who could be identified with reasonable effort. Settlement Class Members are able to submit their claims electronically on the website. Upon request, SCS also mails additional copies of the Notice and/or Proof of Claim. Additionally, the Claims Administrator published the Summary Notice on *GlobeNewswire* and in *Investor's Business Daily*. *See, e.g., Celera*, 2015 WL 1482303, at *7 (finding that a substantially similar notice plan "satisfactory and meets due process"); *Barani v. Wells Fargo Bank, N.A.*, No. 12CV2999-GPC KSC, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving combination of mailing and online notice in consumer class action); *In re Mut. Funds Inv. Litig.*, 2010 WL 2342413, at *6–*7 (D. Md. May 19, 2010) (combination of mailing, posting summary notice, and online hosting "is the best notice practical under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlements"). Thus, the proposed notice program is "the best notice that is practicable under the circumstances."

Pursuant to and in compliance with the Preliminary Approval Order, the Court-appointed Settlement Administrator, SCS, notified 42,240 potential Class Members, either by mailed Postcard Notice or emailed the direct link to the location of the Notice on the Settlement webpage. *See* Evans Decl., ¶8. On October 23, 2024, pursuant to the Preliminary Approval Order, SCS posted on a URL dedicated to this Settlement (https://www.strategicclaims.net/caribou) the Long Notice and Claim Form, the Preliminary Approval Order, and Stipulation and exhibits. *Id*. at ¶12. On November 18, 2024, SCS caused *Globe Newswire* to disseminate electronically the Summary Notice and printed the Summary Notice in *Investor's Business Daily*. *Id*. at ¶10 As such, this Court should approve the Notice program as satisfying due process and the PSLRA's mandate.

Notice of a class action settlement "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill*, 361 F.3d at 575. The contents of the notices here provided all necessary information for Class Members to make an informed decision regarding the Settlement and contained all of the information required by Rule 23(c)(2)(B), the PSLRA, and Northern District's Guidance. The Notice identified, among other things: (1) the nature of the case and the claims asserted; (2) the definition of the Settlement Class; (3) the amount of the Settlement; (4) the Plan of Allocation; (5) the reasons why the Parties are proposing the Settlement; (6) the estimated average recovery per affected share; (7) the attorneys' fees, litigation expenses and lead plaintiff awards that would be sought; (8) the identity and contact information for Lead Counsel; (9) Class Members' right to object to the Settlement, the Plan of Allocation, or the requested attorneys' fees or expenses as well as the right to request exclusion; (10) the binding effect of a judgment on Class Members; (11) the amount of Plaintiffs' award; and (12) the dates and deadlines for Settlement-related events.

Specifically, the Court-approved notice program provided Class Members with a description of the litigation, the $3,900,000 Settlement Fund and Plan of Allocation; Lead Counsel's intent to apply for a fee award in an amount not to exceed 28% of the Settlement Fund, and an amount not to exceed $60,000 for expense reimbursements to be paid from the Settlement Fund plus interest on both amounts; the request for a compensation award to Plaintiffs in the amount of $7,500 in total to be paid from the Settlement Fund, and the contact information for Co-Lead Counsel and the Settlement Administrator, including how to make inquiries to both. The Notice program also identified the date, time, and place of the Settlement Hearing, described how to file a claim, and described how to object to or request exclusion from the Settlement, and specified the deadlines for filing claims, objecting, or requesting exclusion. Furthermore, the Court-approved notice program adequately informed Class Members of the Settlement's impact, including release of claims against Defendants for any Class

Members who do not opt-out. Evans Decl., Exs. A, C-D. For these reasons, the Notice program approved by the Court and faithfully executed by SCS satisfied all applicable requirements.

## III.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE

In addition to seeking final approval of the Settlement, Plaintiffs also seek final approval of the proposed Plan of Allocation. The Plan of Allocation, drafted with the assistance of a damages expert, is a fair and reasonable method for allocating the proceeds of the Settlement among eligible claimants and treats all Class Members equitably, as required by Rule 23(e)(2)(D). The standard for approval of a plan of allocation in a class action under Rule 23 of the Federal Rules of Civil Procedure is the same as the standard applicable to the settlement as a whole—the plan must be fair, reasonable, and adequate. *See Class Plaintiffs*, 955 F.2d at 1284; *see also Vataj v. Johnson*, No. 19-CV-06996-HSG, 2021 WL 5161927, at *2 (N.D. Cal. Nov. 5, 2021). "[A] plan of allocation … fairly treats class members by awarding a *pro rata* share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue." *Redwen*, 2013 WL 12303367, at *8.

Here, Co-Lead Counsel prepared the Plan of Allocation with the assistance of a consulting expert on damages. The Plan of Allocation was fully disclosed in the Notice available to all potential Class Members and, as of the filing of this Motion, no Class Member has filed an objection to it. Evans Decl., ¶14. The Plan of Allocation provides for recovery for shares purchased between July 23, 2021 and July 13, 2023, under Section 10(b), on a *pro rata* basis based on the Settlement Class Member's recognized loss, which incorporates a 90-day lookback period, the advice of Plaintiffs' experts, and the principles of economic loss articulated by the Supreme Court in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). It also calculates Section 11 damages based on the statutory formula while accounting for the significant negative causation defense that would be available to Defendants

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
Case No.3:23-cv-01742-RFL                    21

at trial. Overall, the Plan of Allocation provides for customary *pro rata* distribution of the Net Settlement Fund among all eligible Class Members who have submitted a valid Proof of Claim. These features are standard in securities class action plans of allocation, and plans with these elements are routinely held to be fair and reasonable. *See, e.g., Extreme Networks*, 2019 WL 3290770, at *8; *Zynga*, 2016 WL 537946, at *15.

## IV.    THE COURT SHOULD GRANT FINAL CERTIFICATION OF THE SETTLEMENT CLASS

In its Preliminary Approval Order, the Court preliminarily certified the Settlement Class for settlement purposes under Fed. R. Civ. P. 23(a) and (b)(3). Dkt. No. 88, ¶¶3-4. The Parties stipulated to certification of the Settlement Class for settlement purposes. Stipulation ¶6.1. The Settlement Class conditionally certified in the Preliminary Approval Order includes "all persons and entities who purchased Caribou common stock between July 23, 2021 and July 13, 2023, both dates inclusive, and were damaged thereby. Included in the Settlement Class are all persons who purchased Caribou common stock pursuant to and/or traceable to Caribou's registration statement and prospectus issued in connection with its IPO and all persons and entities who purchased Caribou common stock at artificially inflated prices and were damaged thereby." Dkt. No. 88, ¶2. Excluded from the Settlement Class are: "(a) persons who suffered no compensable losses; and (b) Defendants; the Company's present and former officers and directors during the Settlement Class Period; members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any Defendant, or an person excluded under this subsection (b), has or had a majority ownership interest during the Settlement Class Period." *Id.*

No relevant circumstances have changed since the Court's preliminary certification of the Settlement Class. Thus, for the same reasons stated in Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 76 at 14-18), Plaintiffs request that the Court affirm its determinations in the Preliminary Approval Order and grant final certification of the Settlement Class

under Rules 23(a) and (b)(3).

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court: (i) grant final approval of the Settlement; (ii) find that notice to the Settlement Class satisfied due process, Rule 23 and the PSLRA; (iii) approve the Plan of Allocation; and (iv) grant final certification of the Settlement Class.

Dated: January 14, 2025

 Respectfully submitted,

THE ROSEN LAW FIRM, P.A.

By: */s/ Laurence M. Rosen*
Laurence M. Rosen (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

and

Phillip Kim (*pro hac vice*)
Sara Fuks (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 2020-3827
Email: pkim@rosenlegal.com
sfuks@rosenlegal.com


**THE SCHALL LAW FIRM**
Brian Schall (SBN 290685)
Ivy T. Ngo (SBN 249860)
Rina Restaino (SBN 285415)
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
brian@schallfirm.com
ivy@schallfirm.com
rina@schallfirm.com

*Co-Lead Counsel for Plaintiffs and for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on January 14, 2025, a copy of the foregoing was filed electronically via the Court's CM/ECF system. Notice of this filing will be sent by email to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF System.


Dated: January 14, 2025


By: */s/ Laurence M. Rosen*_____

*Co-Lead Counsel for Plaintiffs*