**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Co-Lead Counsel for Plaintiffs and the Class*

*[Additional Counsel on Signature Page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| RON BERGMAN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CARIBOU BIOSCIENCES, INC., RACHEL E. HAURWITZ, JASON V. O'BYRNE, RYAN FISCHESSER, SCOTT BRAUNSTEIN, ANDREW GUGGENHIME, JEFFREY LONG-MCGIE, NATALIE R. SACKS, BOFA SECURITIES INC., CITIGROUP GLOBAL MARKETS, INC., and SVB SECURITIES LLC,<br><br>Defendants. | Case No.: 3:23-cv-01742-RFL<br><br>CLASS ACTION<br><br>**NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND AWARDS TO PLAINTIFFS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: February 18, 2025<br>Time: 1:30 p.m.<br>Location: Courtroom 15, 18th Floor<br>Judge: Rita F. Lin |

**NOTICE OF MOTION FOR AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND AWARDS TO PLAINTIFFS**

TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, pursuant to Rule 23(h) of the Federal Rules of Civil Procedure and the Court's Order Preliminarily Approving Settlement and Providing for Notice (Dkt. No. 88) ("Preliminary Approval Order"), on February 18, 2025, at 1:30 p.m., or as soon thereafter as the matter may be heard, Co-Lead Counsel The Rosen Law Firm, P.A. ("Rosen Law") and The Schall Law Firm ("Schall Law") will hereby move the Honorable Rita F. Lin, District Judge, in Courtroom 15 – 18th Floor, 450 Golden Gate Ave., San Francisco, CA 94102, for entry of the [Proposed] Order Awarding Attorneys' Fees and Expenses submitted herewith, which: (i) awards Co-Lead Counsel attorneys' fees in the amount of 28% of the Settlement Fund, or $1,092,000, plus interest earned thereon; (ii) awards Co-Lead Counsel $47,975.35 as reimbursement for litigation expenses incurred in this Action; and (iii) awards Plaintiffs a total of $7,500 ($5,000 to Lead Plaintiff Ron Bergman and $2,500 to named plaintiff Carl Cooper) in connection with their representation of the Class[1]

In support of this Motion, Lead Counsel submit the following memorandum, the Declaration of Sara Fuks ("Fuks Decl.") and the Declaration of Brian Schall ("Schall Decl.") filed concurrently herewith and the exhibits thereto, all prior pleadings and papers in this Action; and such additional information or argument as may be required by the Court.

Defendants take no position with respect to this motion.

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Amended Stipulation of Settlement and exhibits thereto, dated October 1, 2024 (Dkt. No. 86-1) ("Stipulation").

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:23-cv-01742-RFL

i

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.     PRELIMINARY STATEMENT ................................................................. 1

II.    SUMMARY OF THE LITIGATION AND SETTLEMENT ............................ 3

III.    ARGUMENT .................................................................................. 3

    A.    The Court Should Approve Co-Lead Counsel's Fee Request ............... 3

        1.    Co-Lead Counsel are Entitled to a Fee Award from the Common Fund They Secured for the Settlement Class ............. 3

        2.    The Court Should Award Co-Lead Counsel a Reasonable Percentage of the Common Fund .................................................. 4

        3.    Co-Lead Counsel's Fee Request is Supported by the Factors Considered by Courts in the Ninth Circuit ................... 5

            (a)    The Quality of the Results Achieved Supports the Fee Request .......................................................... 6

            (b)    The Substantial Risks and Complexity of the Litigation Support the Fee Request ............................... 7

            (c)    Co-Lead Counsel Skillfully Managed This Case Against Formidable Adversaries ................................... 10

            (d)    Co-Lead Counsel Undertook a Significant Financial Risk .................................................................. 12

            (e)    A 28% Fee Award is Comparable to Fees Awards in Similar Cases ............................................... 15

            (f)    The Reaction of the Settlement Class Supports the Requested Fee Award ....................................... 17

        4.    A Lodestar Cross-Check Supports the Requested Fee Award .................................................................................. 18

    B.    The Court Should Approve Co-Lead Counsel's Request for Reimbursement of Reasonable Litigation Expenses ............................ 22

IV.    THE COURT SHOULD APPROVE THE AWARD TO PLAINTIFFS ....... 24

V.    CONCLUSION ............................................................................. 25

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:23-cv-01742-RFL

ii

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Beaver v. Tarsadia Hotels*,
No. 11-CV-01842-GPC-KSC, 2017 WL 4310707 (S.D. Cal. Sept. 28, 2017) ........................... 15

*Blum v. Stenson*,
465 U.S. 886 (1984) ................................................................................................................. 16

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) ................................................................................................................... 3

*Boyd v. Bank of Am. Corp.*,
No. SACV 13-0561-DOC, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ............................... 16

*Brown v. China Integrated Energy Inc.*,
2016 WL 11757878 (C.D. Cal. July 22, 2016) ......................................................................... 25

*Buccellato v. AT & T Operations, Inc.*,
No. C10-00463-LHK, 2011 WL 3348055 (N.D. Cal. June 30, 2011) ....................................... 19

*Cheng Jiangchen v. Rentech, Inc.*,
No. CV 17-1490-GW(FFMX), 2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .......................... 10

*Christine Asia Co. v. Yun Ma*,
No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............................... 10

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010) ..................................................................................... 18

*Destefano v. Zynga, Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ............................................................................ 12

*Dickey v. Advanced Micro Devices, Inc.*,
No. 15-CV-04922-HSG, 2020 WL 870928 (N.D. Cal. Feb. 21, 2020) .................................... 19

*Dyer v. Wells Fargo Bank, N.A.*,
303 F.R.D. 326 (N.D. Cal. 2014) ............................................................................................. 25

*Ellison v. Steven Madden, Ltd.*,
No. CV115935PSGAGRX, 2013 WL 12124432 (C.D. Cal. May 7, 2013) ................................ 4

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) .............................................................................................. 2, 7

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:23-cv-01742-RFL

iii

*Fernandez v. Victoria Secret Stores, LLC*,
No. CV 06-04149 MMM SHX, 2008 WL 8150856 (C.D. Cal. July 21, 2008)..........................18

*Fowler v. Wells Fargo Bank, N.A.*,
No. 17-CV-02092-HSG, 2019 WL 330910 (N.D. Cal. Jan. 25, 2019).......................................19

*Fox v. Vice*,
563 U.S. 826 (2011) .................................................................................................................20

*Franco v. Ruiz Food Prods., Inc.*,
No. 1:10-CV-02354-SKO, 2012 WL 5941801 (E.D. Cal. Nov. 27, 2012)................................23

*Glass v. UBS Fin. Servs., Inc.*,
331 F. App'x 452 (9th Cir. 2009) ..............................................................................................5

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015)....................................................................................................14

*Gonzalez v. City of Maywood*,
729 F.3d 1196 (9th Cir. 2013)..................................................................................................19

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994).................................................................................................. 22, 23

*Hefler v. Wells Fargo & Co.*,
No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)................................. 8, 21

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) ...................................................................................................................6

*Hopkins v. Stryker Sales Corp.*,
No. 11-CV-02786-LHK, 2013 WL 496358 (N.D. Cal. Feb. 6, 2013) .......................................19

*In re 3D Systems Securities Litigation*,
No. 1:21-cv-01920-NGG-TAM, 2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) ...............................7

*In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*,
No. 03 MDL 1529 LMM, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ........................... 11, 12

*In re Alstom SA Sec. Litig.*,
741 F. Supp. 2d 469 (S.D.N.Y. 2010) ......................................................................................13

*In re Am. Apparel, Inc. S'holder Litig.*,
No. CV 10–06352 MMM (JCGX), 2014 WL 10212865 (C.D. Cal. July 28, 2014) ........... 14, 15

*In re Amgen Inc. Sec. Litig.*,
No. CV 7-2536 PSG (PLAX), 2016 WL 10571773 (C.D. Cal. Oct. 25, 2016).........................18

*In re Apollo Grp. Inc. Sec. Litig.*,
No. CV 04-2147-PHX-JAT, 2012 WL 1378677 (D. Ariz. Apr. 20, 2012) ................................ 21

*In re Apple Computer Sec. Litig.*,
No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ...................................... 14

*In re Aqua Metals, Inc. Sec. Litig.*,
No. 17-CV-07142-HSG, 2022 WL 612804 (N.D. Cal. Mar. 2, 2022)........................................ 21

*In re Audioeye, Inc., Sec. Litig.*,
2017 WL 5514690 (D. Ariz. May 8, 2017)............................................................................... 16

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011)....................................................................................... 4, 6, 21

*In re BP p.l.c. Sec. Litig.*,
852 F. Supp. 2d 767 (S.D. Tex. 2012) ...................................................................................... 8

*In re Brooktree Sec. Litig.*,
915 F. Supp. 193 (S.D. Cal. 1996) ............................................................................................ 5

*In re Centurylink Sales Pracs. & Sec. Litig.*,
No. CV 18-296 (MJD/KMM), 2021 WL 3080960 (D. Minn. July 21, 2021) ........................... 10

*In re Dairy Farmers of Am., Inc.*,
80 F. Supp. 3d 838 (N.D. Ill. 2015) .......................................................................................... 9

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015) ............................................ 13

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005)............................................................. 7, 10, 11, 15

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) .............................................................................. 22, 23

*In re IsoRay, Inc. Sec. Litig.*,
2017 WL 11461073 (E.D. Wash. Mar. 7, 2017) ...................................................................... 15

*In re Lidoderm Antitrust Litig.*,
No. 14-MD-02521-WHO, 2018 WL 4620695 (N.D. Cal. Sept. 20, 2018)................................ 21

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000)................................................................................................... 15

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998).............................................................................................. 14

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:23-cv-01742-RFL

v

*In re Nuvelo, Inc. Sec. Litig.*,
   2011 WL 2650592 (N.D. Cal. July 6, 2011) ............................................................................. 15

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ......................................................................... passim

*In re Oracle Corp. Sec. Litig.*,
   No. C 01–00988 SI, 2009 WL 1709050 (N.D. Cal. June 16, 2009) ........................................ 14

*In re Regulus Therapeutics Inc. Sec. Litig.*,
   2020 WL 6381898 (S.D. Cal. Oct. 30, 2020).............................................................................. 7

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
   No. CIV.A. 08-2177 DMC, 2013 WL 5505744 (D.N.J. Oct. 1, 2013)....................................... 9

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
   535 F. Supp. 2d 249 (D.N.H. 2007) ....................................................................................... 20

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 2672 CRB (JSC),
   2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ........................................................................ 21

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994)....................................................................................... 3, 12, 16

*In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ..................................................................................... 14

*Jenson, v. First Tr. Corp.*,
   2008 WL 11338161 (C.D. Cal. June 9, 2008)...................................................................... 24, 25

*Katz v. China Century Dragon Media, Inc.*,
   No. LACV1102769JAKSSX, 2013 WL 11237202 (C.D. Cal. Oct. 10, 2013).......................... 16

*Knight v. Red Door Salons, Inc.*,
   No. 08-01520 SC, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009).................................................. 17

*Luna v. Marvell Tech. Grp.*,
   No. C 15-05447 WHA, 2018 WL 1900150 (N.D. Cal. Apr. 20, 2018) ..................................... 23

*Mauss v. NuVasive, Inc.*,
   2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ............................................................................ 16

*Meredith Corp. v. SESAC, LLC*,
   87 F. Supp. 3d 650 (S.D.N.Y. 2015) ......................................................................................... 9

*Morris v. Lifescan, Inc.*,
   54 F. App'x 663 (9th Cir. 2003) .............................................................................................. 16

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010) ............................................................................................................ 13

*Ontiveros v. Zamora*,
   303 F.R.D. 356 (E.D. Cal. 2014).......................................................................................... 22

*Pace v. Quintanilla*,
   No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) ............................... 10

*Patel v. Axesstel, Inc.*,
   2015 WL 6458073 (S.D. Cal. Oct. 23, 2015)........................................................................ 16

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989)......................................................................................... 4, 15, 18

*Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*,
   No. C 19-04744 WHA, 2022 WL 816473 (N.D. Cal. Mar. 17, 2022)....................................... 21

*Razilov v. Nationwide Mut. Ins. Co.*,
   2006 WL 3312024 (D. Or. Nov. 13, 2006) ........................................................................... 25

*Redwen v. Sino Clean Energy, Inc.*,
   No. CV 11-3936 PA (SSX), 2013 WL 12303367 (C.D. Cal. July 9, 2013) ............................... 8

*Robbins v. Koger Properties, Inc.*,
   116 F.3d 1441 (11th Cir. 1997)........................................................................................... 14

*Rodman v. Safeway Inc.*,
   No. 11-CV-03003-JST, 2018 WL 4030558 (N.D. Cal. Aug. 23, 2018) ..................................... 6

*Rodriguez v. Disner*,
   688 F.3d 645 (9th Cir. 2012)................................................................................................. 5

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009)............................................................................................. 5, 24

*Romero v. Producers Dairy Foods, Inc.*,
   No. 1:05CV0484 DLB, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007).................................... 15

*Sawant v. Ramsey*,
   No. 3:07-CV-980 VLB, 2012 WL 3265020 (D. Conn. Aug. 9, 2012) ..................................... 13

*Silverman v. Motorola, Inc.*,
   No. 07 C 4507, 2012 WL 1597388 (N.D. Ill. May 7, 2012)....................................................... 9

*Singer v. Becton Dickinson & Co.*,
   No. 08-CV-821-IEG (BLM), 2010 WL 2196104 (S.D. Cal. June 1, 2010).............................. 16

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:23-cv-01742-RFL

vii

*Steiner v. Am. Broad. Co.*,
     248 F. App'x 780 (9th Cir. 2007) .................................................................................. 19

*Stetson v. Grissom*,
     821 F.3d 1157 (9th Cir. 2016) ........................................................................................ 3

*Szymborski v. Ormat Techs., Inc.*,
     2012 WL 4960098 (D. Nev. Oct. 16, 2012) ................................................................. 15

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
     551 U.S. 308 (2007) ........................................................................................................ 4

*Van Vranken v. Atl. Richfield Co.*,
     901 F. Supp. 294 (N.D. Cal. 1995) .............................................................................. 19

*Vincent v. Hughes Air W., Inc.*,
     557 F.2d 759 (9th Cir. 1977) .......................................................................................... 3

*Vinh Nguyen v. Radient Pharms. Corp.*,
     No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ............................ 5, 10

*Vizcaino v. Microsoft Corp.*,
     290 F.3d 1043 (9th Cir. 2002) .................................................................................. 5, 6, 7, 19

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
     396 F.3d 96 (2d Cir. 2005) ............................................................................................. 5

*Yedlowski v. Roka Bioscience, Inc.*,
     No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ................................. 8

**Statutes**

15 U.S.C. § 77z-1 ................................................................................................................. 2

15 U.S.C. § 78u-1(a)(6) ....................................................................................................... 5

15 U.S.C. § 78u-4 ................................................................................................................ 2

15 U.S.C. § 78u-4(a)(4) ..................................................................................................... 24

**Other Authorities**

H.R. Conf. Rep. No. 369 ................................................................................................... 24

## STATEMENT OF ISSUES TO BE DECIDED

1. Whether the Court should approve as fair and reasonable Co-Lead Counsel's application for an award of attorneys' fees in the amount of 28% of the Settlement Amount, or $1,092,000, plus interest earned thereon.

2. Whether the Court should approve Co-Lead Counsel's request for reimbursement of $47,975.35 in litigation expenses incurred by Co-Lead Counsel in this Action.

3. Whether the Court should approve Co-Lead Counsel's request for an award of $7,500 (total) to Plaintiffs.

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:23-cv-01742-RFL

ix

## MEMORANDUM OF POINTS AND AUTHORITIES

Court-appointed Co-Lead Counsel, The Rosen Law Firm, P.A. ("Rosen Law") and The Schall Law Firm ("Schall Law") submit this memorandum in support of their motion for an award of attorneys' fees and reimbursement of litigation expenses and awards to Plaintiffs.

## I.     PRELIMINARY STATEMENT

The Parties reached a Settlement to resolve this Action for $3,900,000. The Settlement is a favorable result for the Settlement Class, as it recovers approximately 1.52% of the maximum estimated damages under Plaintiffs' best-case scenario, as estimated by Plaintiffs' damages expert. Having achieved this substantial cash recovery for the Settlement Class despite facing significant obstacles and risks in this litigation, Co-Lead Counsel now seek an award of attorneys' fees of 28% of the Settlement Amount, or $1,092,000, and reimbursement of expenses incurred of $47,975.35, to be paid from the Settlement Fund.

Litigants who create a common fund for the benefit of a class are entitled to an award of attorneys' fees and reimbursement of expenses from the common fund. In the Ninth Circuit, courts typically determine attorneys' fees as a percentage of the common fund. The primary factors courts consider in setting the percentage award are the quality of the result, the risk undertaken, and the reaction of the settlement class. Here, each of these factors weighs in favor of awarding Co-Lead Counsel attorneys' fees of 28% of the Settlement Amount.

The proposed Settlement represents an excellent result for the Settlement Class, particularly in light of the significant hurdles that Plaintiffs faced to prevail in this complex securities fraud litigation. In obtaining this result, Co-Lead Counsel took on substantial risk, collectively worked over 1,158 hours on behalf of the Settlement Class, and advanced $47,975.35 in costs and expenses, all on a fully contingent basis. Co-Lead Counsel faced numerous challenges to establishing liability and damages. Those challenges were amplified by the fact that they were litigating against corporate

defendants represented by highly skilled defense counsel, under the heightened pleading standard and automatic stay of discovery imposed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *See* 15 U.S.C. § 77z-1; 15 U.S.C. § 78u-4. The PSLRA imposes several procedural obstacles to alleging securities fraud, and its pleading standards in particular are "not [] easy [] to comply with," *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Despite the risks entailed in this litigation, Lead Counsel was able to secure a favorable and prompt recovery for the Settlement Class. The Parties reached the Settlement only after informed, arm's-length negotiations with the aid of a well-respected and experienced mediator, Hon. S. James Otero (Ret.).

The Settlement Class approves Co-Lead Counsel's work. Objections and exclusions are not due until January 28, 2025, but to date, not one Settlement Class Member has objected to the Settlement or to the fee request or opted out.

Co-Lead Counsel also seeks reimbursement of out-of-pocket litigation expenses incurred in connection with the prosecution of this action in the amount of $47,975.35. This amount is below the $60,000 maximum for reimbursement of expenses disclosed in the Notice and equates to approximately 1.2% of the Settlement Fund. These expenses, including court filings fees, expert fees, investigator fees, mediation fees, travel expenses and administrative expenses, were reasonable and necessary for the successful prosecution of the Action. Accordingly, they should be approved.

Finally, Plaintiffs seek awards of $7,500 ($5,000 for Bergman and $2,500 for Cooper), for their time spent in carrying out their obligations in the Action. This request is reasonable in light of the time Plaintiffs spent in connection with this action on behalf of the Settlement Class and is in line with awards granted in similar actions.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

In accordance with this District's Procedural Guidance for Class Action Settlements, the Court is referred to the concurrently filed motion for final approval of the Settlement for summaries of the procedural history of this Action and the terms of Settlement.

## III.    ARGUMENT

### A.    The Court Should Approve Co-Lead Counsel's Fee Request

#### 1.    Co-Lead Counsel are Entitled to a Fee Award from the Common Fund They Secured for the Settlement Class

It is well-settled that attorneys who represent a class and are successful in recovering a common fund for the benefit of class members are entitled to a reasonable fee from the common fund as compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.").[2] Indeed, the Ninth Circuit has held that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977); *see also In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it.") ("*WPPSS*"); *accord Stetson v. Grissom*, 821 F.3d 1157, 1165 (9th Cir. 2016).  This rule, known as the "common fund" doctrine, is "designed to prevent unjust enrichment by distributing the costs of litigation among those who benefit from the efforts of the litigants and their counsel." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008). "The

---

[2] Internal citations and quotations are omitted and emphasis is added unless otherwise noted.

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:23-cv-01742-RFL

3

amount of such a reward is that which is deemed 'reasonable' under the circumstances." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989).

Reasonable fee awards are necessary in securities class actions. The Supreme Court has "long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought [] by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007).

**2.       The Court Should Award Co-Lead Counsel a Reasonable Percentage of the Common Fund**

District courts in the Ninth Circuit have discretion to award attorneys' fees in common fund cases based upon either the percentage-of-the-fund method or the lodestar/multiplier method. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 944–45 (9th Cir. 2011). Notwithstanding that discretion, where there is an easily quantifiable benefit to the class—such as a cash common fund—the percentage-of-the-fund approach is the prevailing method used. *See, e.g., Ellison v. Steven Madden, Ltd.*, No. CV115935PSGAGRX, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominant approach in common fund cases"); *Omnivision*, 559 F. Supp. 2d at 1046 (same).

Most courts have found the percentage approach superior in cases with a common fund recovery because it parallels the use of percentage-based contingency fee contracts, which are the norm in private litigation; aligns the lawyers' interests with that of the class in achieving the maximum possible recovery; reduces the burden on the court by eliminating the detailed and time-consuming lodestar analysis; and helps the Settlement Class avoid further delays necessitated by the Court's lodestar review. *See Omnivision*, 559 F. Supp. 2d at 1046. Indeed, many courts recognize the "significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award

for the class members, and reducing the burden on the courts that a complex lodestar calculation requires." *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014). Among other advantages, the percentage-of-the-fund method "aligns the interests of class counsel and the class, rather than rewarding attorneys for hours spent on cases, as the lodestar method does." *In re Brooktree Sec. Litig.*, 915 F. Supp. 193, 196 (S.D. Cal. 1996); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050, n.5 (9th Cir. 2002) (affirming 28% fee, disfavoring lodestar for incentivizing lawyers to generate more hours and not to settle early). The percentage method "provides a powerful incentive for the efficient prosecution and early resolution of litigation." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 122 (2d Cir. 2005). Moreover, application of the percentage-of-the-fund method is consistent with the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. § 78u-1(a)(6).

For these reasons, Co-Lead Counsel requests that the Court award attorneys' fees in this case on a percentage-of-the-fund basis, and use an informal lodestar cross-check only to assess the reasonableness of the percentage award. *See Vizcaino*, 290 F.3d at 1050, n.5 ("The lodestar method is merely a cross-check on the reasonableness of a percentage figure"); *Glass v. UBS Fin. Servs., Inc.*, 331 F. App'x 452, 456 (9th Cir. 2009) ("the district court properly performed an informal lodestar cross-check").

**3.     Co-Lead Counsel's Fee Request is Supported by the Factors Considered by Courts in the Ninth Circuit**

Courts in the Ninth Circuit consider certain factors when determining whether a fee award is "reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009). Those factors include: (1) the results achieved; (2) the risk and complexity of the litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried; (5) the reaction of the

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:23-cv-01742-RFL

Settlement Class; and (6) awards made in similar cases. *See Omnivision*, 559 F. Supp. 2d at 1046-48 (citing *Vizcaino*, 290 F.3d at 1048–51). The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances. *Vizcaino*, 290 F.3d at 1048–50. Here, each of these factors weigh in favor of approving Co-Lead Counsel's requested fee award.

### (a)      The Quality of the Results Achieved Supports the Fee Request

Courts consistently acknowledge that the quality of the result achieved is the most important factor in determining an appropriate fee award. *See, e.g.*, *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Bluetooth*, 654 F.3d at 942 ("Foremost among these considerations, however, is the benefit obtained for the class."); *Rodman v. Safeway Inc.*, No. 11-CV-03003-JST, 2018 WL 4030558, at *3 (N.D. Cal. Aug. 23, 2018); *Omnivision*, 559 F. Supp. 2d at 1046. Co-Lead Counsel submits that the $3,900,000 proposed Settlement is an excellent result for the Settlement Class given the many risks of continued litigation and the procedural posture of the case at the time of settlement.

Here, if Plaintiffs had successfully defeated all Defendants' pending motions to dismiss as to both their Securities Act claims and Exchange Act claims, obtained certification of a class co-extensive with the Settlement Class, fully prevailed in each of their claims at summary judgment and after a jury trial, if the Court and jury awarded Plaintiffs' damages—*i.e*., Plaintiffs' best-case scenario—estimated total maximum damages would have been approximately $256,500,000. Thus, the $3,900,000 Settlement Amount represents approximately 1.52% of the maximum recoverable damages potentially available in this Action. If Plaintiffs prevailed only on their Securities Act claims, estimated total maximum damages would have been approximately $191,200,000, with the $3,900,000 Settlement Amount therefore representing approximately 2% of maximum damages. And, if Plaintiffs prevailed on their Exchange Act claims only, maximum damages would have been

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:23-cv-01742-RFL

6

approximately $65,400,000, with the $3,900,000 Settlement Amount therefore representing approximately 6% of maximum damages.

The Settlement's recovery percentage compares favorably to other securities class action settlements with similar total damages. *See, e.g., In re Heritage Bond Litig.,* 2005 WL 1594403, at *8–9 (C.D. Cal. June 10, 2005) (average recovery between 2% to 3% of maximum damages)); *In re Regulus Therapeutics Inc. Sec. Litig.,* 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving 1.99% recovery); in *In re 3D Systems Securities Litigation*, No. 1:21-cv-01920-NGG-TAM, 2024 WL 50909 (E.D.N.Y. Jan. 4, 2024) (approving $4 million settlement representing 1% of maximum estimated damages). According to NERA Economic Consulting, in 2023 the median ratio of settlements to investor losses was 1.8%. Edward Flores and Svetlana Staryk, *Recent Trends in Securities Class Action Litigation: 2023 Full Year in Review,* at 26 (Fig. 22)., available at: www.nera.com/content/dam/nera/publications/2024/PUB_2023_Full-Year_Sec_Trends_0123.pdf Given the range of possible results in this litigation, including a strong possibility of no recovery whatsoever, the Settlement Amount represents a considerable achievement and weighs heavily in favor of the requested fee.

### (b)    The Substantial Risks and Complexity of the Litigation Support the Fee Request

The second factor courts in this Circuit consider in awarding attorneys' fees is "[t]he risk that further litigation might result in Plaintiffs not recovering at all, particularly in a case involving complicated legal issues." *Omnivision*, 559 F. Supp. 2d at 1046-47; *see also Vizcaino*, 290 F.3d at 1048 ("[r]isk is a relevant circumstance" in awarding attorneys' fees). Courts have long recognized that securities class actions are complex and carry significant risks, and post-PSLRA rulings have made clear that the risk of no recovery has increased significantly. *See Eminence*, 316 F.3d at 1052 ("The PSLRA requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail giving rise to a strong inference of deliberate recklessness. This is

not an easy standard to comply with—it was not intended to be—and plaintiffs must be held to it."); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the demanding pleading standards of the PLSRA."); *Redwen v. Sino Clean Energy, Inc.*, No. CV 11-3936 PA (SSX), 2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud litigation, routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear."). This Action was no exception.

Here, the obstacles to recovery included both the general risks of complex securities litigation, as well as the specific risks inherent in this case. Plaintiffs thus faced a significant and immediate risk at the pleading stage. *See Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("The risk of non-payment is especially high in securities class actions, as they are notably difficult and notoriously uncertain. … Legal precedents are continually making it more difficult to plead securities class actions.") (quoting *In re BP p.l.c. Sec. Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal legislation and authoritative precedents have created for plaintiffs in all securities actions formidable challenges to successful pleading.")).

While Co-Lead Counsel believe that Plaintiffs' claims are meritorious, they also recognized from the outset that there were substantial risks in the litigation and that Plaintiffs' ability to succeed at trial and obtain a large judgment was far from certain. In fact, when the Parties agreed to settle the Action, two motions to dismiss were pending which attacked every alleged misstatement and/or omission on one or more grounds. Defendants also challenged the element of scienter with respect to all alleged misstatements in connection with the Exchange Act claims, as well as loss causation. Beyond the pleading stage, Plaintiffs also faced significant risks of continued litigation such as

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:23-cv-01742-RFL

8

obtaining class certification, conducting lengthy and expensive fact and expert discovery, surviving Defendants' anticipated motion for summary judgment, winning at trial, and defeating any post-trial motions or appeals. *See* Plaintiffs' brief in support of their motion for final approval of the Settlement, filed concurrently herewith ("Final Approval Brief"), § I(C)(2). Nevertheless, Co-Lead Counsel accepted the challenge.

"One proxy for assessing risk is whether the litigation followed on the heels of some prior criminal or civil proceeding involving the same parties or subject matter." *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838 (N.D. Ill. 2015) "This inquiry provides insight into whether class counsel benefitted from the work of others, which acts a red flag for judges assessing fee petitions." *Id.* In the instant case, there were no proceedings initiated by the SEC or DOJ. Rather, "Plaintiffs' counsel (and their teams and experts) were truly the authors of the favorable outcome for the class." *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 670 (S.D.N.Y. 2015); *see also Silverman v. Motorola, Inc.*, No. 07 C 4507, 2012 WL 1597388, at *3 (N.D. Ill. May 7, 2012) (fee request supported by fact that "there were no governmental investigations or prosecutions related to the alleged fraud upon which Class Counsel could rest their theory of the case. Rather, they investigated the facts and developed their theory of liability from scratch, involving significant time and expense."). Here Co-Lead Counsel's investigation and work were entirely its own.

Nor was this a restatement case. When companies restate their financials, they are admitting a material misstatement of their financial reporting. A case predicated on a restatement is, therefore, less risky because the misstatement and materiality elements of a securities fraud claim are already met. *See In re Schering-Plough Corp. Enhance Sec. Litig.*, No. CIV.A. 08-2177 DMC, 2013 WL 5505744, at *30 (D.N.J. Oct. 1, 2013) (granting fee request where the case was the antithesis of cases where liability is virtually certain due to a financial restatement). In contrast, "[t]his case lacked several strong facts that often support liability (and large settlement valuations) and provide

a roadmap for proving fraud, such as suspected insider trading, a corporate restatement, or a companion SEC or DOJ investigation." *In re Centurylink Sales Pracs. & Sec. Litig.*, No. CV 18-296 (MJD/KMM), 2021 WL 3080960, at *9 (D. Minn. July 21, 2021).

### (c)    Co-Lead Counsel Skillfully Managed This Case Against Formidable Adversaries

The third factor to consider in determining what fee to award is the skill required and the quality of the work performed. To this end, courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities," *Omnivision*, 559 F. Supp. 2d at 1047, and that "[t]he experience of counsel is also a factor in determining the appropriate fee award." *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *12 (C.D. Cal. June 10, 2005). "This is particularly true in securities cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Omnivision*, 559 F. Supp. 2d at 1047; *Cheng Jiangchen v. Rentech, Inc.*, No. CV 17-1490-GW(FFMX), 2019 WL 5173771, at *10 (C.D. Cal. Oct. 10, 2019) (similar).

Co-Lead Counsel are experienced and skilled practitioners in the securities litigation field, with a long record of successfully prosecuting securities cases throughout the country, including within this Circuit and District. *See* Declaration of Sara Fuks ("Fuks Fee Decl."), Ex. A (Rosen Law Resume) and Declaration of Brian ("Schall Decl."), Ex. A (Schall Law Resume).

Co-Lead Counsel have shown they are willing and able to litigate a case to resolution. *See, e.g., Nguyen*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (noting that Rosen Law "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation that required significant expert involvement" to secure eve-of-trial settlement); *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action"); *Christine Asia Co. v. Yun Ma*,

No. 115MD02631CMSDA, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, No. 19-3823, 2020 WL 763277 (2d Cir. Jan. 2, 2020) (approving the then largest ever settlement in a case brought by investors in a Chinese company, finding that "the quality of representation by both [Rosen] and Defendants' counsel was high in this case."); *Baer, et al v. Shift4 Payments, Inc. et al.,* 5:23-cv-03246-JFL, Dkt. No. 16 (E.D. Pa. Nov. 11, 2023) ("Per the firm's representations to the Court, the Schall Firm has been at the forefront of securities litigation and recovered significant sums for its clients as well.").

In this case, Co-Lead Counsel's persistence and skill in connection with its extensive pre-filing investigation enabled them to draft an amended complaint that was sufficiently strong and detailed to permit Plaintiffs to negotiate a favorable settlement even before the Court ruled on Defendants' pending motions to dismiss. As set forth in the Fuks and Schall Declaration, by the time Plaintiffs filed the Amended Complaint, Co-Lead Counsel had reviewed thousands of pages of documents concerning Caribou and its business, including SEC filings, conference call transcripts, analyst reports, FDA documents and medical literature and clinical studies pertaining to both Caribou and its competitors. Fuks and Schall Decl. ¶¶37, 49. Indeed, Co-Lead Counsel left no stone unturned in connection with the investigation that led to the filing of the Amended Complaint.

Co-Lead Counsel believe that the quality of their efforts in the litigation, together with their substantial experience in securities class actions and commitment to this litigation, provided Plaintiffs with the leverage necessary to negotiate a favorable settlement for the Settlement Class.

In evaluating the quality of Co-Lead Counsel's work, it is also important to consider the quality and vigor of opposing counsel. *See, e.g., Heritage Bond*, 2005 WL 1594403, at *20; *In re Adelphia Commc'ns Corp. Sec. & Deriv. Litig.*, No. 03 MDL 1529 LMM, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences

the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Defendants in this Action were represented by Gibson, Dunn & Crutcher LLP, Morgan, Lewis & Bockius LLP, and previously Goodwin Procter LLP, highly respected law firms with impressive securities lawyers. Fuks and Schall Decl. ¶ 56. Their briefs filed in support of Defendants' motions to dismiss reflected a vigorous defense. *See* Dkt. Nos. 50-53, 64-65. Co-Lead Counsel's ability to obtain a favorable Settlement in the face of this formidable legal opposition confirms the superior quality of their work and supports the award of the requested fee.

### (d)    Co-Lead Counsel Undertook a Significant Financial Risk

The fourth factor in determining a fair and reasonable fee requires courts to consider the contingent nature of the fee and the obstacles surmounted. As the Ninth Circuit has explained:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases. *See* Richard Posner, Economic Analysis of Law § 21.9, at 534-35 (3d ed. 1986). Contingent fees that may far exceed the market value of the services if rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless whether they win or lose.

*WPPSS*, 19 F.3d at 1299; *see also Omnivision*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent fee basis a larger fee than if they were billing by the hour or on a flat fee."); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *18 (N.D. Cal. Feb. 11, 2016) ("[W]hen counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award.").

Here, Co-Lead Counsel have received no compensation to date, but they have invested over 1,158 hours of work equating to a total lodestar of $1,117,126.00, and incurred expenses of $47,975.35 in prosecuting and resolving this Action. Fuks Fee Decl. ¶¶5-7, Schall Fee Decl. ¶¶5-6. Additional work in implementing the Settlement and claims administration will also be required.

*See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist [c]lass [m]embers in submitting their [p]roof[s] of [c]laim[], the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable."). Since the inception of this case, Co-Lead Counsel has borne the risk that any compensation and expense reimbursement would be contingent on the result achieved, as well as on this Court's discretion in awarding fees and expenses.

The risk of no recovery in complex cases like this one is not illusory. In many cases, plaintiffs' attorneys invest thousands of hours and receive no remuneration whatsoever. There are numerous class actions in which plaintiffs' counsel expended thousands of hours, and yet received no remuneration whatsoever despite their diligence and expertise. Co-Lead Counsel knows from personal experience that despite the most vigorous and competent of efforts, success in complex contingent litigation is never guaranteed. For example, in *Sawant v. Ramsey*, No. 3:07-CV-980 VLB, 2012 WL 3265020 (D. Conn. Aug. 9, 2012), Rosen Law spent thousands of hours securing a trial verdict only to find it impossible to collect on the judgment. Fuks and Schall Decl. ¶ 60.

Co-Lead Counsel is not alone in this regard. There are many other hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by members of the plaintiffs' bar produced no attorneys' fees for counsel. *See, e.g., In re Alstom SA Sec. Litig.*, 741 F. Supp. 2d 469, 471–73 (S.D.N.Y. 2010) (after completing significant and expensive foreign discovery, 95% of plaintiffs' damages were eliminated by Supreme Court's reversal, in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010), of unbroken circuit court precedent over 40 years). Indeed, "[p]recedent is replete with situations in

which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.*, 364 F. Supp. 2d 980, 994 (D. Minn. 2005); *see also In re Oracle Corp. Sec. Litig.*, No. C 01–00988 SI, 2009 WL 1709050 (N.D. Cal. June 16, 2009), *aff'd* 627 F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing lodestar of approximately $48 million). Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See, e.g., Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation); *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million); *In re Apple Computer Sec. Litig.*, No. C-84-20148(A)-JW, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs after extended trial).

The risks in this case were no different. Co-Lead Counsel's fee was entirely contingent, so the only certainty was that there would be no fee without a successful result and that such a result would only be realized after significant amounts of time, effort and expense had been expended. Fuks and Schall Decl. ¶61. Nevertheless, Co-Lead Counsel committed significant amounts of both time and money to vigorously and successfully prosecute this Action for the benefit of the Settlement Class. "This type of substantial outlay, when there is a risk that no money will be recovered, further supports the award of the requested fees." *In re Am. Apparel, Inc. S'holder Litig.*, No. CV 10–06352 MMM (JCGX), 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014). Under these circumstances, "[t]he contingent nature of counsel's representation strongly favors approval of the requested fee." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998).

**(e)     A 28% Fee Award is Comparable to Fees Awards in Similar Cases**

In *Graulty*, the Ninth Circuit established 25% of the fund as the "benchmark" award for attorneys' fees which then could be "adjust[ed] upward or downward to fit the individual circumstances of this case." 886 F.2d at 272. Courts in the Ninth Circuit have recognized that "in most common fund cases, the award exceeds the benchmark" and that "this is particularly true in securities class actions." *Am. Apparel*, 2014 WL 10212865, at *23; *Omnivision*, 559 F. Supp. 2d at 1047 ("[I]n most common fund cases, the award exceeds [the] benchmark."); *Romero v. Producers Dairy Foods, Inc.*, No. 1:05CV0484 DLB, 2007 WL 3492841, at *4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and noting that "[e]mpirical studies show that, regardless of whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery"). Courts in the Ninth Circuit commonly award fees of up to one-third of the settlement funds where counsels' efforts are substantial and the results superior. *Heritage Bond*, 2005 WL 1594403, at *19 (awarding one-third of the fund and collecting cases awarding one third of the fund); *see also Beaver v. Tarsadia Hotels*, No. 11-CV-01842-GPC-KSC, 2017 WL 4310707, at *10 (S.D. Cal. Sept. 28, 2017) (listing cases within the Ninth Circuit that approved a fee award of one-third the common fund). Despite the considerable effort and risks incurred to reach this excellent Settlement, Plaintiffs' Counsel is seeking 28% for attorneys' fees.

Courts in the Ninth Circuit frequently award fees at or above the 25% benchmark in connection with securities class action settlements under $10 million, like the Settlement here. *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming fee award of one-third of $1.725 million settlement); *In re IsoRay, Inc. Sec. Litig.*, 2017 WL 11461073, at *1 (E.D. Wash. Mar. 7, 2017) (awarding attorneys' fees of 30% of $3,537,500 settlement); *Szymborski v. Ormat Techs., Inc.*, 2012 WL 4960098, at *4 (D. Nev. Oct. 16, 2012) (awarding attorneys' fees of 30% of $3,100,000 settlement); *In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *2 (N.D. Cal.

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:23-cv-01742-RFL

15

July 6, 2011) (awarding 30% of $8.9 million); *In re Audioeye, Inc., Sec. Litig.*, 2017 WL 5514690, at *4 (D. Ariz. May 8, 2017) (awarding fees of one-third of $1,525,000 settlement); *Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *7 (S.D. Cal. Dec. 6, 2018) (awarding attorneys' fees of 30% of $7.9 million settlement); *Patel v. Axesstel, Inc.*, 2015 WL 6458073, at *8 (S.D. Cal. Oct. 23, 2015) (awarding attorneys' fees of 30% of $1.25 million settlement).

Courts in the Ninth Circuit also routinely award attorneys' fees at or above the benchmark in non-securities, common fund actions. *See e.g., Singer v. Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (awarding attorneys' fees of one-third of common fund and collecting cases noting that "the request for attorneys' fees in the amount of 33.33% of the common fund falls within the typical range of 20% to 50% awarded in similar cases."); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming 33% fee); *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *12 (C.D. Cal. Nov. 18, 2014) (awarding one-third fee). The requested 28% fee is also in line with, or lower than, contingent fees in individual cases, which typically range from 30% to 40% of the recovery. *See, e.g., Blum v. Stenson*, 465 U.S. 886, 903 n.20 (1984) ("In tort suits, an attorney might receive one-third of whatever amount the plaintiff recovers."); *Katz v. China Century Dragon Media, Inc.*, No. LACV1102769JAKSSX, 2013 WL 11237202, at *8 (C.D. Cal. Oct. 10, 2013) ("contingency fee arrangements generally range from 30% to 40% of final recovery.").

The guiding principle in this Circuit is that a fee award be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296. Here, in view of the result obtained, the unique risks avoided in achieving a prompt and substantial recovery, the contingent fee risk, and the fees awarded in similar securities class actions in this Circuit, an award of 28% of the Settlement Amount obtained for the Settlement Class is reasonable.

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:23-cv-01742-RFL

16

**(f)     The Reaction of the Settlement Class Supports the Requested Fee Award**

The class's reaction to a proposed settlement and fee request is a relevant factor in approving fees. *See Knight v. Red Door Salons, Inc.*, No. 08-01520 SC, 2009 WL 248367, at *7 (N.D. Cal. Feb. 2, 2009); *Omnivision*, 559 F. Supp. 2d at 1048. The Settlement Class was notified of the Settlement and the maximum contemplated request for attorney's fees and reimbursement of litigation expenses by a combination of first-class mail, email, publication, and the settlement website. Declaration of Sarah Evans ("Evans Decl.") ¶¶ 3-14. The Claims Administrator mailed the Court-approved Postcard Notices to approximately 12,333 potential Settlement Class Members and their nominees, emailed 12,010 potential Settlement Class Members links to the electronic Long Notice and Claim Form on the Settlement webpage, and published the Court-approved Summary Notice on *GlobeNewswire* and in *Investor's Business daily*. *Id.* ¶¶6-7, 10. A nominee also informed the Claims Administrator that they had emailed 17,897 of its clients to notify them of the Settlement, including links to the Long Notice and Claim Form on the settlement website. *Id.* ¶7. The Claims Administrator also created and maintained a dedicated settlement website which included all relevant dates and copies of important documents—including the Long Notice and Claim Form, the Preliminary Approval Order, and Stipulation and exhibits. *Id.* ¶12. The Notice informed Settlement Class Members that Co-Lead Counsel would seek attorneys' fees of up to 28% of the Settlement Amount, plus interest, and litigation expenses in an amount not to exceed $60,000. Evans Decl., Ex. A (Long Notice and Claim Form) at 1. The Notice also advised Settlement Class Members of their right to object to these requests for relief or to request exclusion from the Settlement, and explained how to do so. *Id.* at 12-13. To date, a total of 42,240 notices have been mailed and/or emailed to potential Settlement Class Members or nominees to inform them of the Settlement. Evans Decl. ¶8.

The deadline for Settlement Class Members to object to or opt out of the Settlement is January 28, 2025. To date, no Settlement Class Members have objected to the maximum amounts

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:23-cv-01742-RFL

17

of attorneys' fees and expenses. *Id.* ¶¶13-14. To date, no Settlement Class Members have opted out of the Settlement. *Id.* The lack of objections and opt-outs evidence a positive reaction from the Settlement Class and is strong support for the reasonableness of the requested fees and expenses. *See, e.g., Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) ("overwhelming positive reaction of the class members" included 16 exclusion request representing 4.86% of class); *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06-04149 MMM SHX, 2008 WL 8150856, at *13 (C.D. Cal. July 21, 2008) (3 members objected and 29 opted out, nonetheless indicating a favorable result and supporting an award of a "generous fee").

### 4.        A Lodestar Cross-Check Supports the Requested Fee Award

Although Co-Lead Counsel seek an award of attorneys' fees based on a percentage of the fund, they recognize that as "[a] final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048. This step is "not required for an award of attorneys' fees in the Ninth Circuit," but "a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness." *In re Amgen Inc. Sec. Litig.*, No. CV 7-2536 PSG (PLAX), 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016).[3]

The lodestar method first "calculates the fee award by multiplying the number of hours reasonably spent by a reasonable hourly rate and then enhancing that figure, if necessary, to account for the risks associated with the representation." *Graulty*, 886 F.2d at 272. In the second step of the analysis, a court adjusts the lodestar to take into account, among other things, the time and labor required, the result achieved, the quality of representation, whether the fee is fixed or contingent,

---

[3] This District's Procedural Guidance for Class Action Settlements requires applicants for attorneys' fees to include detailed lodestar information even if, as here, the requested amount is based on a percentage of the settlement fund. Co-Lead Counsel complied with this rule but note that the Guidance does not require Courts to apply the lodestar method.

the novelty and difficulty of the questions involved, and awards in similar cases. *See, e.g., Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209 (9th Cir. 2013). In so doing, "courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases." *Vizcaino*, 290 F.3d at 1051–52 (approving a 3.65 lodestar multiplier).

The Ninth Circuit found in *Vizcaino*, 290 F.3d at 1051 n.6, that when the informal lodestar method is used as a cross-check and a multiplier is applied, "most" multipliers fell into the range of 1 to 4, but also noted that there have been numerous examples of even higher multipliers. *See also Hopkins v. Stryker Sales Corp.*, No. 11-CV-02786-LHK, 2013 WL 496358, at *4 (N.D. Cal. Feb. 6, 2013) ("Multipliers of 1 to 4 are commonly found to be appropriate in complex class action cases."). Multipliers in the upper end of this range are commonplace in this District, particularly for complex class actions such as this one. *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995) ("Multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation"); *see also Dickey v. Advanced Micro Devices, Inc.*, No. 15-CV-04922-HSG, 2020 WL 870928, at *8–9 (N.D. Cal. Feb. 21, 2020) (multiplier of 3.08); *Fowler v. Wells Fargo Bank, N.A.*, No. 17-CV-02092-HSG, 2019 WL 330910, at *7 (N.D. Cal. Jan. 25, 2019) (multiplier of 3.46).

Courts in the Ninth Circuit and within this District have also granted fee awards resulting in multipliers higher than 4 where the multiplier "is reasonable in light of the time and labor required, the difficulty of the issues involved, the requisite legal skill and experience necessary, the excellent and quick results obtained for the Class, the contingent nature of the fee and risk of no payment, and the range of fees that are customary." *Buccellato v. AT & T Operations, Inc.*, No. C10-00463-LHK, 2011 WL 3348055, at *2 (N.D. Cal. June 30, 2011) (granting fee award resulting 4.3 multiplier, and collecting cases with multipliers ranging from 4.3 to 9.3); *see also Steiner v. Am. Broad. Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) ("this multiplier [of 6.85] falls well within the range of multipliers that courts have allowed"); *In re The PMI Grp., Inc. Sec. Litig.*, No. 08-cv-01405-SI (N.D. Cal. Dec.

20, 2010) (multiplier of 4.76) (*see PMI* Dkt. Nos. 96, 105); *Teeter v. NCR Corp.*, No. 08-cv-297 (C.D. Cal. Aug. 6, 2009) (multiplier of 4.61) (*see NCR* Dkt. Nos. 158, 158-1, 158-2, 164); *Doty v. Costco Wholesale Corp.*, No. 05-cv-3241 (C.D. Cal. May 14, 2007) (multiplier of 9.07) (*see Costco* Dkt. Nos. 42, 45); *The Music Force, LLC v. Viacom, Inc.*, No. 04-cv-8239 (C.D. Cal. Aug. 8, 2007) (multiplier of 6.43) (*see Viacom* Dkt. Nos. 47-48, 59).

Here, Co-Lead Counsel dedicated 1,158.8 hours of professional time prosecuting this litigation from its inception. Fuks Fee Decl. ¶¶5-6, Schall Fee Decl. ¶¶5-6. In addition to the time expended to date, Co-Lead Counsel will spend additional time preparing Plaintiffs' reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution, but will not seek further compensation. Fuks and Schall Decl. ¶ 55. Co-Lead Counsel's total lodestar, based on its attorneys' current rates, is $1,117,126.00. Fuks Fee Decl. ¶¶5-6, Schall Fee Decl. ¶¶5-6. An award of 28% of the Settlement Fund, or $1,092,000, results in a negative lodestar multiplier of 0.9775. Fuks Fee Decl. ¶6, Schall Fee Decl. ¶6. Granting Co-Lead Counsel's requested fee therefore results in Co-Lead Counsel recovering slightly less than their total fee on an hourly basis. Consistent with the Northern District of California Procedural Guidance for Class Action Settlements, Plaintiffs' Counsel's lodestar is supported by the Fuks Fee Declaration and the Schall Fee Declaration, which include detailed charts showing the hours incurred by each attorney that worked on this litigation, broken down by substantive categories of work. Fuks Fee Decl. ¶5, Schall Fee Decl. ¶5.

When using the lodestar to calculate attorney fee awards, "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). When the lodestar is merely used as a cross-check, "the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict*

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:23-cv-01742-RFL

20

*Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007). Thus, "an itemized statement of legal services is not necessary for an appropriate lodestar cross-check." *In re Apollo Grp. Inc. Sec. Litig.*, No. CV 04-2147-PHX-JAT, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012). Here, an informal lodestar cross-check on the requested fee award further supports the reasonableness of the requested fee.

The current hourly rates for Co-Lead Counsel range from $1,150 for partners, $850 for counsel, and $450-600 for associates. *See* Fuks Fee Decl. ¶5, Schall Fee Decl. ¶5. Co-Lead Counsel submits that these rates are within the range of reasonable fees for attorneys working on complex class-action litigation in this District. *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award following lodestar cross-check "with billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals"); *Hefler*, 2018 WL 6619983, at *14 (finding reasonable counsel's rates that ranged from $650 to $1,250 for partners or senior counsel, from $400 to $650 for associates, and from $245 to $350 for paralegals); *Police Ret. Sys. of St. Louis v. Granite Constr. Inc.*, No. C 19-04744 WHA, 2022 WL 816473, at *9 (N.D. Cal. Mar. 17, 2022) (finding that plaintiff's counsel's billing rates ranging from $950-$1,325 for partners, $780 for counsel, $175-$690 for associates, and $275-350 for paralegals "qualify as reasonable" and accepting the rates "as generally tracking the going rate for those with the same levels of skill and experience in our geographic region."); *In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2018 WL 4620695, at *2 (N.D. Cal. Sept. 20, 2018) (finding that "Class counsel's historic rates—which range from $350 to $1,050 for partners and senior counsel, $300 to $675 for associates, and $100 to $400 for paralegals" were "reasonable hourly rate[s] for the region and the experience of the lawyer.") (citing *Bluetooth*, 654 F.3d at 941); *In re Aqua Metals, Inc. Sec. Litig.*, No. 17-CV-07142-HSG, 2022 WL 612804, at *8 (N.D. Cal. Mar. 2, 2022) (finding that "Class Counsel's hourly rates are $765-$1,050 for partners and $425-$650 for associates," which "are in

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:23-cv-01742-RFL

21

line with prevailing rates in this district for personnel of comparable experience, skill, and reputation.").

In sum, Co-Lead Counsel's requested fee award is reasonable, justified, and in line with what courts in this Circuit and others award in similar class actions, whether calculated as a percentage of the fund or as a multiple of counsel's lodestar.

**B.      The Court Should Approve Co-Lead Counsel's Request for Reimbursement of Reasonable Litigation Expenses**

In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit of a class are also entitled to payment of reasonable litigation expenses and costs from the fund. *Omnivision*, 559 F. Supp. 2d at 1048 ("Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters"); *Ontiveros v. Zamora*, 303 F.R.D. 356, 375 (E.D. Cal. 2014). The Long Notice informed potential Settlement Class Members that Co-Lead Counsel would seek reimbursement of expenses in an amount not to exceed $60,000. Evans Decl., Ex. A at 1. Co-Lead Counsel requests reimbursement of $47,975.35 for expenses it incurred prosecuting this Action, within the maximum amount described in the Notice. Fuks Fee Decl. ¶7, Schall Fee Decl. ¶7. These expenses are the types that are routinely charged to fee-paying clients. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994); *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007).

From the beginning of the case, Co-Lead Counsel were aware that they might not recover any of their expenses and would not recover anything unless and until the Action was successfully resolved. Co-Lead Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate for the lost use of the funds advanced to prosecute this Action. Thus, Co-Lead Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action.

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:23-cv-01742-RFL

22

Co-Lead Counsel incurred expenses in the amount of $47,975.35 while prosecuting the Action. These expenses are summarized in the Fuks Fee Declaration and the Schall Fee Declaration. Fuks Fee Decl. ¶7, Schall Fee Decl. ¶7. The largest expense was for Plaintiffs' share of the mediation fees charged by mediator S. James Otero (Ret.), followed by the retention of experts in the fields of financial analysis and damages, in the amount, costing approximately $11,000. Fuks and Schall Decl. ¶ 70. Other substantial costs related to Plaintiffs' investigator fees. Each of these expenses were critical to Co-Lead Counsel's success in achieving the Settlement and, like the other categories of expenses for which counsel seek reimbursement, are the types of expenses routinely charged to clients who pay hourly. *Id*. They should therefore be reimbursed out of the common fund. *See Luna v. Marvell Tech. Grp.*, No. C 15-05447 WHA, 2018 WL 1900150, at *4 (N.D. Cal. Apr. 20, 2018) (reimbursement for experts, investigators, travel, filing costs, photocopies, and online legal and factual research granted as they were all reasonable and necessary); *Immune Response*, 497 F. Supp. 2d at 1177-78 (approving counsel's request for reimbursement "for 1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees."); *Harris*, 24 F.3d at 19 (approving reimbursement of "service of summons and complaint, . . . postage, investigator, copying costs, hotel bills, meals, messenger service"); *Franco v. Ruiz Food Prods., Inc.*, No. 1:10-CV-02354-SKO, 2012 WL 5941801, at *22 (E.D. Cal. Nov. 27, 2012) (noting mediation fees are among the "types of fees . . . routinely reimbursed").

These expenses represent approximately 1.2% of the Settlement Amount. To date, not a single Settlement Class Member has objected to the reimbursement request. Evans Decl. ¶14. Thus, the Court should grant Co-Lead Counsel's request for reimbursement of its reasonable expenses incurred in litigating this Action.

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:23-cv-01742-RFL

23

## IV.    THE COURT SHOULD APPROVE THE AWARD TO PLAINTIFFS

The Court should also award Plaintiffs $7,500 total ($5,000 for Lead Plaintiff Bergman and $2,500 for named Plaintiff Cooper), as compensation for the time they spent representing the Settlement Class. The PSLRA empowers courts to grant awards to reimburse plaintiffs for reasonable costs and expenses related to the representation of the class. *See* 15 U.S.C. § 78u-4(a)(4); H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 35 (1995) ("The Conference Committee recognizes that lead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and grants the courts discretion to award fees accordingly."). Such awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-9 (9th Cir. 2009); *Jenson, v. First Tr. Corp.*, 2008 WL 11338161, at *16 (C.D. Cal. June 9, 2008) ("Courts across the country embrace incentive awards in light of the enormous benefits created by the class representatives.").

Throughout this litigation, Plaintiffs were available to Co-Lead Counsel as needed and performed their duties with attentiveness and diligence, including by: (a) regularly communicating with Co-Lead Counsel regarding the posture and progress of the case, as well as strategy; (b) compiling and producing trading records to Co-Lead Counsel; (c) reviewing pleadings and briefs filed in the Action; (d) reviewing Court Orders; (e) preparing for the mediation by, among other things, discussing with counsel the mediation statements and mediation strategy; (f) making themselves available during the mediation and consulting with Co-Lead regarding settlement negotiations; (g) evaluating the Settlement Amount, conferring with Co-Lead Counsel, and ultimately approving the Settlement; and (h) communicating with Co-Lead Counsel regarding the process of finalizing the Settlement. As shown in their respective declarations, Mr. Bergman and

Mr. Cooper were both actively involved in the case and put the concerns of the Settlement Class at the forefront. These are the kinds of activities that warrant reimbursement for the time and effort Plaintiffs expended on the Settlement Class's behalf.

The Notice informed Settlement Class Members that Co-Lead Counsel would seek an award for Plaintiffs not to exceed $7,500 total. Evans Decl., Exhibit A at 2. To date, no objections have been raised in response to this request. Evans Decl. Decl. ¶14; Fuks and Schall Decl. ¶¶24-25, 64.

Courts in this Circuit routinely award representative plaintiffs greater amounts. *See, e.g., Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at *14 (C.D. Cal. July 22, 2016) ($10,000 each to lead plaintiffs); *Jenson*, 2008 WL 11338161, at *16 ($20,000 reimbursement to lead plaintiff); *Dyer v. Wells Fargo Bank, N.A.*, 303 F.R.D. 326, 335 (N.D. Cal. 2014) ($10,000 reimbursement to lead plaintiffs); *Razilov v. Nationwide Mut. Ins. Co.*, 2006 WL 3312024, at *3 (D. Or. Nov. 13, 2006) ($10,000 award to plaintiff).

Plaintiffs dedicated their own valuable time, faithfully representing the Settlement Class. Here, the requested Award to Plaintiffs is reasonable and thus, the Court should award the requested amount to Plaintiffs.

## V.    CONCLUSION

For the foregoing reasons, the Court should award attorneys' fees in the amount of 28% of the Settlement Amount, or $1,092,000, reimbursement of expenses of $47,975.35 and an award to Plaintiffs in the amount of $7,500 total.

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:23-cv-01742-RFL

25

Dated: January 14, 2025

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A**.

By: */s/ Laurence M. Rosen*_____
Laurence M. Rosen (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071

Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

and

Phillip Kim (*pro hac vice*)
Sara Fuks (*pro hac vice*)
275 Madison Avenue, 40th Floor
New York, NY 10016
Tel: (212) 686-1060
Fax: (212) 2020-3827
Email: pkim@rosenlegal.com
sfuks@rosenlegal.com

**THE SCHALL LAW FIRM**
Brian Schall (SBN 290685)
Ivy T. Ngo (SBN 249860)
Rina Restaino (SBN 285415)
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: (310) 301-3335
brian@schallfirm.com
ivy@schallfirm.com
rina@schallfirm.com

*Co-Lead Counsel for Plaintiffs and for the Class*

NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF
EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF – 3:23-cv-01742-RFL

26

**CERTIFICATE OF SERVICE**

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of The Rosen Law Firm, P.A., with offices at 355 S. Grand Avenue, Suite 2450 Los Angeles, CA 90071. I am over the age of eighteen.

On January 14, 2025, I electronically filed the foregoing NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on January 14, 2025.

*/s/ Laurence M. Rosen*