**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen (SBN 219683)
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

*Co-Lead Counsel for Plaintiffs and the Class*

*[Additional Counsel on Signature Page]*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| RON BERGMAN, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CARIBOU BIOSCIENCES, INC., RACHEL E. HAURWITZ, JASON V. O'BYRNE, RYAN FISCHESSER, SCOTT BRAUNSTEIN, ANDREW GUGGENHIME, JEFFREY LONG-MCGIE, NATALIE R. SACKS, BOFA SECURITIES INC., CITIGROUP GLOBAL MARKETS, INC., and SVB SECURITIES LLC, <br><br> Defendants. | Case No.:  3:23-cv-01742-RFL <br><br> CLASS ACTION <br><br> **JOINT DECLARATION OF SARA FUKS AND BRIAN SCHALL IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF EXPENSES AND AWARDS TO PLAINTIFFS** <br><br> Hearing Date: February 18, 2025 <br> Time: 1:30 p.m. <br> Location:  Courtroom 15, 18th Floor <br> Judge: Rita F. Lin |

JOINT DECLARATION OF SARA FUKS AND BRIAN SCHALL; Case No. 3:23-cv-01742-RFL

We, Sara Fuks and Brian Schall, hereby declare and state as follows:

1.    I, Sara Fuks, am an attorney duly licensed to practice in the State of New York and admitted *pro hac vice* in the above-captioned action. I am a partner at The Rosen Law Firm, P.A. ("Rosen Law"), Court-appointed Co-Lead Counsel for Lead Plaintiff Ron Bergman and counsel for named Plaintiff Carl Cooper (collectively, "Plaintiffs") and the proposed Settlement Class in the above-captioned action. I have personal knowledge of the facts set forth herein and if called upon to testify, I could and would do so truthfully and accurately.

2.    I, Brian Schall, am an attorney duly licensed to practice in the State of California. I am the founding partner of The Schall Law Firm ("Schall Law"), Court-appointed Co-Lead Counsel for Lead Plaintiff Ron Bergman and counsel for named Plaintiff Carl Cooper and the proposed Settlement Class in the above-captioned action. I have personal knowledge of the facts set forth herein and if called upon to testify, I could and would do so truthfully and accurately.

3.    We submit this declaration in support of Plaintiffs' and Co-Lead Counsel's motions for: (1) final approval of the proposed Settlement of this Action; and (2) an award of attorneys' fees, reimbursement of expenses, and award to Plaintiffs, filed concurrently herewith.[1] This declaration demonstrates why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why Co-Lead Counsel's requests for attorneys' fees, reimbursement of expenses, and award to Plaintiffs are reasonable and should be approved by the Court.

4.    The Settlement creates a gross settlement fund of $3,900,000, plus accrued interest. After Taxes, Notice and Administration Costs, attorneys' fees awarded by the Court, litigation expenses awarded by the Court, and Compensatory Award to Plaintiffs awarded by the Court, the remaining funds (the "Net Settlement Fund") will be distributed to a Settlement Class[2] consisting of all persons and entities who purchased Caribou common stock between July 23, 2021 and July 13, 2023, both dates inclusive ("Settlement Class Period") and were damaged thereby. Included in

---

[1] All capitalized terms not otherwise defined herein shall have the same meanings set forth in the Amened Stipulation of Settlement and exhibits thereto, dated October 1, 2025 (Dkt. No. 86-1) ("Stipulation").

[2] There are no substantive differences between the class definition proposed in the AC (Dkt. No. 35 ¶241) and the Settlement Class definition.

the Settlement Class are all persons who purchased Caribou common stock pursuant to and/or traceable to Caribou's Registration Statement and prospectus issued in connection with Caribou's July 23, 2021 IPO and all persons and entities who purchased Caribou common stock during the Settlement Class Period at artificially inflated prices and were damaged thereby.[3]

5. The memorandum in support of Plaintiffs' motion for final approval of the Settlement ("Final Approval Brief"), filed herewith, sets out a full narrative of this case. The purpose of this declaration is to attest to certain facts set out in those briefs that cannot be supported by citation to the docket or other public documents.

6. Attached hereto are true and correct copies of the following documents:

Exhibit 1: Declaration of Hon. S. James Otero (Ret.);

Exhibit 2: Declaration of Sarah Evans Concerning: (A) Mailing and Emailing of Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Evans Decl.");

Exhibit 3: Declaration of Sara Fuks in Support of Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Fuks Fee Decl.");

Exhibit 4: Declaration of Brian Schall in Support of Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses ("Schall Fee Decl.");

Exhibit 5: Declaration of Lead Plaintiff Ron Bergman in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses; and

---

[3] Excluded from the Settlement Class are: (a) persons who suffered no compensable losses; and (b) Defendants; the Company's present and former officers and directors during the Settlement Class Period; members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which any Defendant, or any person excluded under this subsection (b), has or had a majority ownership interest during the Settlement Class Period. Stipulation ¶1.34.

Exhibit 6:    Declaration of Named Plaintiff Carl Cooper in Support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (2) Co-Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses.

## I.    RELEVANT BACKGROUND AND PROCEDURAL HISTORY

7.    On April 11, 2023, Ron Bergman filed the initial complaint in this Action, alleging violations of Sections 11 and 15 of the Securities Act of 1933 ("Securities Act") and Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). Dkt. No. 1.

8.    On June 1, 2023, Mr. Bergman filed a motion seeking to be appointed Lead Plaintiff and for his counsel, Rosen Law and Schall Law, to be appointed Co-Lead Counsel. Dkt. No. 18. On July 6, 2023, the Court appointed Mr. Bergman as Lead Plaintiff and Rosen Law and Schall as Co-Lead Counsel. Dkt. No. 26.

9.    Pursuant to the Court's order entering a scheduling stipulation regarding the filing of an amended complaint and responses thereto, Dkt. No. 28, on September 19, 2023, Mr. Bergman, together with named Plaintiff Carl Cooper, filed the Amended Complaint ("AC"). The AC alleged violations of the same sections of the Securities Act and the Exchange Act. Dkt. No. 35. Among other things, the AC alleged that the Caribou Defendants made false and misleading statements in the offering documents issued in connection with Caribou's July 23, 2021 initial public offering ("IPO"), and in additional public statements made after the IPO. *Id.*

10.    On November 14, 2023, the Caribou Defendants filed a motion to dismiss the AC. Dkt. Nos. 50-52. On November 21, 2023, the Underwriter Defendants filed a motion to dismiss the AC. Dkt. No. 53. Both sets of Defendants' motions were fully briefed by February 21, 2024. Dkt. Nos. 62-65.

## II.    OVERVIEW OF THE SETTLEMENT NEGOTIATIONS

11.    On April 16, 2024, Plaintiffs and the Caribou Defendants participated in an all-day private mediation with the Honorable S. James Otero (Ret.). Prior to the mediation, the Parties exchanged detailed mediation statements.

12.     Although Plaintiffs and the Caribou Defendants were unable to resolve the matter at the mediation, following the mediation, Judge Otero proposed, and Plaintiffs and the Caribou Defendants accepted, a mediator's proposal to resolve the Action as to all Defendants.

13.     Judge Otero observed that "The parties were represented during the mediation process by well-prepared and competent counsel, who negotiated zealously and at arm's length for their clients."  Declaration of Hon. S. James Otero (Ret.), attached hereto as **Exhibit 1,** ¶8. In Judge Otero's opinion, "the proposed settlement of these cases represents a fair and pragmatic resolution of the Action." *Id*.

14.     On May 8, 2024, the Parties filed a Notice of Settlement. Dkt. No. 73.

15.     On June 28, 2024, the Parties executed the initial stipulation of settlement. That same day, Plaintiffs filed a motion for preliminary approval of the settlement, attaching the initial stipulation and its exhibits. Dkt. Nos. 76-77.

16.     On September 6, 2024, the Court ordered supplemental briefing on preliminary approval of the settlement, requesting that Plaintiffs' counsel address several questions the court had as well as make certain modifications to the draft notice documents. Dkt. No. 84.

17.     On October 1, 2024, the Parties executed an Amended Stipulation (the "Stipulation"). That same day, Plaintiffs filed a supplemental submission in support of preliminary approval of the Settlement (per the Court's order), attaching the Amended Stipulation and its exhibits. Dkt. Nos. 85-86.

18.     After holding a hearing on Plaintiffs' motion seeking preliminary approval of the proposed Settlement, on October 15, 2024, the Court granted the motion and entered the Preliminary Approval Order. Dkt. Nos. 87-88.

**III.     TERMS OF THE SETTLEMENT**

19.     In the opinion of the team of lawyers at our firms who worked on this case, including ourselves, the Settlement is fair and  reasonable and represents an excellent result for the Settlement Class. The Settlement confers a significant benefit on the Settlement Class, eliminating the risks of continued litigation under circumstances where a more favorable outcome is less likely. Additionally, the Plan of Allocation is a fair and reasonable method for distributing the proceeds of

the Settlement to Settlement Class Members. The Court should approve both the Settlement and the Plan of Allocation.

20.    As set forth herein and in the Final Approval Brief, the Settlement represents approximately 1.52% of the maximum estimated damages of $256.5 million potentially available under Plaintiffs' best-case scenario, which assumes: (i) the Court certifies the same class period as the Settlement Class Period; (ii) Plaintiffs defeat Defendants' motions to dismiss the AC and the Court sustains *both* the Securities Act and Exchange Act claims, succeeds at summary judgment on both sets of claims, then proves liability to a jury on both sets of claims; and (iii) the Court and jury accepted Plaintiffs' damages theory, including proof of loss causation. *See also* Dkt. Nos. 76 at 22; 86 at 7-9. If Plaintiffs prevailed only on their Securities Act claims, estimated total maximum damages would have been approximately $191,200,000, with the $3,900,000 Settlement Amount therefore representing approximately 2% of maximum damages. *See id*. And, if Plaintiffs prevailed on their Exchange Act claims only, maximum damages would have been approximately $65,400,000, with the $3,900,000 Settlement Amount therefore representing approximately 6% of maximum damages. *See id*. Anything less than a complete victory would decrease or potentially eliminate recoverable damages, and Defendants contested each element. *See id*. The $3.9 million Settlement Amount is reasonable and warrants final approval. *See id*. As noted in Plaintiffs' brief in support of preliminary approval, the estimated recovery, before deducting Court-approved fees and expenses and notice and claims administration costs, is approximately $0.08 per allegedly damaged share. *See id.* The estimated Net Settlement Fund after deducting each of these costs (should the Court approve the requested amounts) is approximately $2.6 million, or $0.05 per allegedly damaged share. *See id*. Given SCS's estimated claims rate of 30%, the estimated amount that Authorized Claimants will receive will be approximately $0.06 per share. *See id*. If the Court approves all of the requested amounts of fees and expenses, approximately 66% of the Settlement Amount will be distributed to Settlement Class Members. *See id*.

21.    A lump sum cash settlement in the face of the challenges presented in this Action is a favorable outcome. In light of these circumstances, and especially when the Settlement is the product of comprehensive legal and factual investigation and arm's-length negotiations between

experienced counsel and overseen by a well-respected mediator, there is ample support for a finding that the Settlement is fair, reasonable, and adequate.

## IV.    CO-LEAD COUNSEL'S FEE REQUEST

22.    For litigating this case on a contingency basis and negotiating this settlement, Co-Lead Counsel requests a fee of 28% of the Settlement Fund, or $1,092,000, plus interest earned thereon, and reimbursement of $47,975.35 in litigation expenses incurred in prosecuting this Action. This fee request is within the reasonable range of percentages typically awarded to class counsel in securities class actions in the Ninth Circuit.

23.    The revised Proposed Orders Granting Preliminary Approval and Final Approval contain provisions for the filing of post-distribution accounting forms as described in the Northern District of California's Procedural Guidance for Class Action Settlements, and for withholding 10% of the attorneys' fees to be released upon the completion of those forms. *See also* Dkt. No. 88 ¶38 (Preliminary Approval Order).

## V.    REACTION OF THE SETTLEMENT CLASS

24.    The favorable reaction of the members of the Settlement Class also supports the reasonableness of the Settlement and the fee request. Pursuant to the Notice[4], objections to the Settlement must be received by January 28, 2025. To date, there have been no objections to the Settlement. *See* Declaration of Sarah Evans Concerning: (A) Mailing and Emailing of Notice; (B) Publication of The Summary Notice; and (C) Report on Requests For Exclusion and Objections ("Evans Decl.") ¶14. A true and correct copy of the Evans Declaration is attached hereto as **Exhibit 2**. If Co-Lead Counsel or the Claims Administrator receive any objections, Plaintiffs will address them in their reply papers in support of final approval, due February 4, 2025. *See* Dkt. No. 88 at 14.

25.    Pursuant to the Notice, requests for exclusion from the Settlement must be received by January 28, 2025. To date the Claims Administrator, Strategic Claims Services ("SCS"), has received no requests for exclusion nor any objections. Evans Decl. ¶13.

---

[4] "Notice" collectively refers to the Notice of Pendency and Proposed Settlement of Class Action ("Long Notice"), and the Summary Notice of Pendency and Proposed Class Action Settlement ("Summary Notice").

## VI.    NOTICE PROCEDURES

26.    At Co-Lead Counsel's direction, and pursuant to the Preliminary Approval Order, on November 18, 2024, SCS published the Summary Notice electronically on *GlobeNewswire* and in print in *Investor's Business Daily*. Evans Decl. ¶9, Ex. D. SCS also published the Long Notice, Proof of Claim and Release Form ("Claim Form"), Stipulation, and Preliminary Approval Order on SCS's Settlement-specific website (https://www.strategicclaims.net/caribou/) on October 23, 2024. *Id.* ¶11. SCS also maintained a toll-free phone line for Settlement Class Members to obtain information about the Settlement. *Id.* ¶10.

27.    To date, SCS has mailed 12,333 copies of the Long Notice and Claim Form to potential Settlement Class Members. *Id.* ¶6. SCS also received 12,010 valid email addresses from nominees and other individuals, and SCS promptly emailed these potential Settlement Class Members links to the electronic Long Notice and Claim Form on the Settlement webpage. *Id.* ¶7. In addition, SCS was notified by a nominee that it emailed 17,897 of its clients to alert them of this Settlement and provided a direct link to the Long Notice and Claim Form. *Id*. Thus, a total of 42,240 notices have been mailed and/or emailed to potential Settlement Class Members or nominees to inform them of the Settlement. *Id.* ¶8.

28.    In accordance with this District's Procedural Guidance for Class Action Settlements, the Evans Declaration includes information about the number of undeliverable class notices and claim packets. *Id.* ¶9.

## IV.    PLAN OF ALLOCATION

29.    Pursuant to the Preliminary Approval Order, the Long Notice fully described the proposed Plan of Allocation preliminarily approved by the Court. Evans Decl., Ex. A (Long Notice) at 6-8. Co-Lead Counsel created the proposed Plan of Allocation after consulting with Plaintiffs' expert and the Claims Administrator, designing it to reimburse Settlement Class Members in a fair and reasonable manner. The Plan of Allocation is based in part on the same damages estimate Plaintiffs used to estimate their maximum recoverable damages, and it closely tracks Plaintiffs' theory of the case.

30.     If approved, the Plan of Allocation will govern how the proceeds of the Net Settlement Fund will be distributed among Settlement Class Members who timely submit appropriate Claim Forms. Pursuant to the Plan of Allocation, the Claims Administrator, under the direction of Lead Counsel, will determine each authorized claimant's *pro rata* share of the Net Settlement Fund based upon each claimant's Recognized Loss. The formula for determining each Authorized Claimant's Recognized Loss is based on an out-of-pocket measure of damages consistent with Plaintiffs' allegations, and takes into consideration when each Claimant purchased and/or sold Caribou common stock, whether their purchases can be traced to the IPO, and the relative strength of the claims alleged. Each similarly situated authorized claimant will receive a *pro rata* share of the Recognized Losses attributed to their claim, with that share to be determined by the ratio that the authorized claimant's allowed claim bears to the total allowed claims of all authorized claimants.

31.     If any funds remain after the initial distribution from the Net Settlement Fund to Authorized Claimants, SCS will conduct a second distribution to Authorized Claimants who would receive at least $10.00 from such a re-distribution as long as the second distribution is cost effective. Accordingly, it is likely that only a small amount of funds will remain in the Net Settlement Fund after such distribution(s).

32.     Any residual funds, if any, will be distributed to the Bay Area Financial Education Foundation (http://bafef.org) as an appropriate *cy pres* recipient of such funds.

33.     The Bay Area Financial Education Foundation is a nonprofit, nonsecterian organization devoted to empowering Bay Area youth through financial education.

34.     Given the Bay Area Financial Education Foundation's dedication to financial education, it is an appropriate *cy pres* recipient. In addition, the Parties and their counsel do not have any relationship with the Bay Area Financial Education Foundation other than designating it as a *cy pres* recipient in past settlements.

35.     Due to the potential multiple rounds of distributions, it is likely that only a small amount of funds, if any, from the Net Settlement Fund will be directed to the Bay Area Financial Education Foundation.

36.    The Plan of Allocation is tailored to compensate the losses of the Settlement Class Members equitably and is based upon time periods during the Class Period when various corrective disclosures occurred, consistent with loss causation principles of *Dura Pharma. Inc., v. Broudo*, 544 U.S. 336 (2005).

## VII.    THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT

37.    The proposed Settlement is the culmination of careful and efficient litigation followed by protracted arms' length settlement negotiations. The Parties reached the Settlement after Co-Lead Counsel had thoroughly investigated the claims, consulted with a damages expert, and consulted with an expert in the field of Oncology and Immunology. The investigation consisted of an independent review of public documents, SEC filings, and statements regarding and from the Company, including information concerning Caribou from the U.S. Food and Drug Administration ("FDA"), news and analyst reports, and the retention of an investigator who interviewed former Caribou employees and third parties. The investigation also consisted of a thorough review and analysis of Caribou's and its competitors' clinical studies, and medical and scientific literature on CRISPR genome editing and CAR-T cell therapies. To better understand the case from a scientific and medical perspective and to assess the strength of the claims alleged, Co-Lead counsel consulted with an expert, who is a professor in the field of Oncology and Immunology. The pre-filing investigation was extensive and in-depth, and one of the more complex pre-filing investigations given the highly technical scientific and medical subject matter at issue.

38.    That investigation resulted in the filing of the AC, which, unlike the initial complaint, asserted claims against the Underwriter Defendants for the first time. Co-Lead Counsel and Plaintiffs gained a better understanding of the strengths and weaknesses of the case through their in-depth analysis of the medical and scientific aspects of the case and how they bore on Defendants' alleged misstatements.

39.    Co-Lead Counsel, who are experienced securities class action attorneys, evaluated the prospects of obtaining a better result if the case were to go forward, taking into account the risks of this case (and all its claims) surviving the pleadings stage, at summary judgment, at the class certification stage, and at trial. Plaintiffs faced multiple procedural hurdles and significant merit-

based risks involved with this potentially protracted litigation. Co-Lead Counsel carefully considered each of these risks before agreeing to the Settlement.

40.    Although Co-Lead Counsel believe Plaintiffs' claims are meritorious and sufficiently pleaded, there is no certainty that Plaintiffs would defeat the Defendants' pending motions to dismiss.

41.    Plaintiffs faced the risk that the Court may have found that the challenged statements were not actionably false or misleading. Indeed, Defendants contested the element of falsity on one or more grounds as to each of the alleged misstatements and/or omissions. Plaintiffs also faced the risk that the Court would find it had not adequately pleaded a strong inference of scienter with sufficient particularity with respect to the Exchange Act claims, as required by the Private Securities Litigation Reform Act of 1995 ("PSLRA"). Plaintiffs also faced the risk that the Court would find the alleged theory of loss causation was unavailing, or that the Court would limit Plaintiffs' loss causation arguments, and therefore the available damages Plaintiffs could recover. Indeed, in their motion to dismiss, the Caribou Defendants challenged falsity, scienter and loss causation, making strong arguments contesting each of these elements.

42.    Plaintiffs also faced the challenge of obtaining class certification and (for the Exchange Act claims) establishing market efficiency. Achieving class certification would have involved a "battle of the experts" and was fraught with uncertainty and risk, as Plaintiffs could not be assured that the fact finder would credit the testimony of Plaintiffs' expert over Defendants' expert. Based on Co-Lead Counsel's experience, a market efficiency expert would likely cost between $70,000 and $100,000. If the Court did not certify the class, it is unlikely that any individual investor or group of investors would have filed individual claims to recover their damages from purchasing Caribou common stock, as it would be uneconomical for them to bring individual cases.

43.    Plaintiffs also faced the risk of establishing the proper amount of damages. Estimating aggregate damages can be challenging due to, among other things, assumptions that must be made regarding trading activity.

44.    Discovery would also be costly and time-consuming. Plaintiffs would likely need to review thousands of documents and take several depositions of Defendants, Caribou employees,

and third parties. Further, since the Class Period began in 2021 and depositions would not start until at least 2025, it is possible that evidence could be lost because as time passes memories fade and it would be a challenge to obtain usable deposition or in-person testimony.

45.     Even if Plaintiffs succeeded in getting discovery and obtaining a favorable judgment at trial, Plaintiffs would still have to enforce the judgment and defeat any applicable appeals.

## VIII.    THE FEE APPLICATION IS FAIR AND REASONABLE

46.     The Long Notice informed Settlement Class Members of Lead Counsel's intent to apply for an award of attorneys' fees in an amount not to exceed 28% of the Settlement Fund, or $1,092,000 plus interest, and for reimbursement of Co-Lead Counsel's litigation expenses in an amount not to exceed $60,000. Evans Decl., Ex. A. As set forth in the memorandum in support of Plaintiffs' motion for an award of attorneys' fees, reimbursement of expenses, and awards to Plaintiffs, filed herewith ("Fee Brief"), Plaintiffs' request for 28% of the common fund that counsel's efforts created is slightly above the benchmark award in the Ninth Circuit but falls in line with similar awards that courts in this circuit have granted, and is merited here.

47.     Co-Lead Counsel achieved a highly favorable result for the Settlement Class at risk and expense to themselves. Throughout this litigation, Co-Lead Counsel was committed to the interests of the Settlement Class and invested the time and resources necessary to resolve the Settlement Class's claims. As a result of this Settlement, Settlement Class Members will receive compensation for their losses and avoid the risk of no recovery at all.

*Co-Lead Counsel's Work and Expertise*

48.     Co-Lead Counsel took this case on a contingency basis, with no assurance of success or receiving any compensation without a successful result, which would only be realized after significant amounts of time, effort and expense had been expended.

49.     During the PSLRA-mandated discovery stay, Co-Lead Counsel thoroughly investigated Caribou and all subject matter potentially relevant to the claims and any related claims that might be asserted in Plaintiffs' forthcoming amended complaint by: (1) reviewing all of Caribou's and its executive's publicly available filings and statements, including SEC filings, media interviews, and information concerning Caribou from the FDA, (2) reviewing all news and analyst

reports concerning Caribou and analyzing Caribou's stock price movements during the Class Period, and (3) thoroughly reviewing and analyzing Caribou's and its competitors' clinical studies, and medical and scientific literature on CRISPR genome editing and CAR-T cell therapies. Additionally, to better understand the case from a scientific and medical perspective and to assess the strength of the claims alleged, Co-Lead counsel consulted with an expert, who is a professor in the field of Oncology and Immunology. Co-Lead Counsel also retained an investigator to interview former Caribou employees and third parties. Finally, Co-Lead Counsel retained a damages expert to assess the damages associated with each of their claims. Through its investigation, Co-Lead Counsel determined the scope and strength of the claims Plaintiffs could bring, including the appropriate Class Period, corrective disclosures, and the corresponding misrepresentations and/or omissions. Co-Lead Counsel also reviewed and opposed two sets of motions to dismiss the AC, one filed by the Caribou Defendants, and one filed by the Underwriter Defendants.

50.    In connection with the mediation, Co-Lead Counsel drafted an in-depth mediation statement, reviewed and responded to Defendants' mediation statement, and engaged in discussions with the mediator prior to the mediation, conducting follow-up research concerning issues the mediator raised with Co-Lead Counsel. As a result of these efforts, Plaintiffs and Co-Lead Counsel thoroughly understood the claims, merits, and weaknesses of the Action when they decided to enter the proposed Settlement.

51.    A true and correct copy of the Declaration of Sara Fuks Concerning Attorneys' Fees and Expenses ("Fuks Fee Decl.") is attached hereto as **Exhibit 3** and a true and correct copy of the Declaration of Brian Schall Concerning Attorneys' Fees and Expenses ("Schall Fee Decl.") is attached hereto as **Exhibit 4**. In connection with the prosecution of this Action, Co-Lead Counsel: (a) conducted an extensive factual investigation, which included, *inter alia*, the review of publicly available documents about Caribou and the Defendants; (b) filed the initial complaint; (c) filed a motion for appointment of lead plaintiff and co-lead counsel; (d) consulted with a private investigator relating to the allegations in this Action; (e) consulted with a damages expert and an expert in the field of Oncology and Immunology; (f) researched, drafted and filed the AC; (g) reviewed and opposed the Caribou Defendants' and the Underwriter Defendants' motions to dismiss

the AC; (h) participated in a mediation with the Hon. S. James Otero (Ret.), including drafting a detailed mediation statement, responding to Defendants' mediation statement, and reviewing Defendants' response; (m) continued settlement negotiations after the mediation session failed to produce a settlement; (n) negotiated an agreement on the terms of a settlement; (o) negotiated the written settlement documents; (p) presented those settlement terms to this Court by way of a motion for preliminary approval of the proposed settlement and supplemental filing per the Court's orders; (q) filed the accompanying motion for final approval of the Settlement; and (r) oversaw the dissemination of Notice to the proposed settlement class and monitored the work of the Claims Administrator

52.    The total amount of time expended by attorneys and professional staff employed by Co-Lead Counsel is 1,158.8 hours (Fuks Fee Decl. ¶¶5-6; Schall Fee Decl. ¶¶5-6) and is illustrated in the chart below. This number is derived from the time records Co-Lead Counsel regularly maintained. A listing of the professionals at Co-Lead Counsel who worked on this matter, the number of hours spent by each such professional broken down by category, their positions,  and their hourly rates is set forth in detail in the Fuks Fee Decl. ¶5; Schall Fee Decl. ¶5. The total value of the services performed in this case by Co-Lead Counsel, based upon current rates, is $1,117,126.00. Fuks Fee Decl. ¶¶5-6; Schall Fee Decl. ¶¶5-6.

|  | **Rosen Law Firm** | **Schall Law Firm** | **Total** |
|---|---|---|---|
| **Hours** | 802.9 | 355.9 | **1,158.8** |
| **Lodestar** | $776,765.00 | $340,361.00 | **$1,117,126.00** |

53.    If Lead Counsel's request of 28% of the Settlement as attorneys' fees is granted, Co-Lead Counsel would receive a fee of $1,092,000. This fee award would represent a lodestar multiplier of approximately 0.9775. As explained in the Fee Brief, this multiplier is well within the range of multipliers that courts in this Circuit have awarded in securities class actions.

54.    As reflected in Co-Lead Counsel's respective firms resumes (Fuks Fee Decl., Ex. A; Schall Fee Decl., Ex. A), Co-Lead Counsel are experienced and skilled practitioners in the securities litigation field and have a successful track record in such securities, shareholder and other complex class action cases.

55. Moreover, in addition to the time expended to date, Co-Lead Counsel will expend additional time preparing Plaintiffs' reply in support of final approval, preparing for and attending the final approval hearing, directing the claims administration process, and filing a motion for final distribution, and will not seek additional compensation for this work.[5]

***The Caliber of Opposing Counsel***

56. Defendants' counsel, Goodwin Procter LLP (who represented the Caribou Defendants from the inception of the case through the filing of Plaintiffs' motion for preliminary approval), Gibson, Dunn & Crutcher LLP (who took over representation of the Caribou Defendants in July 2024, after the filing of Plaintiffs' motion for preliminary approval but before submission of the Amended Stipulation of Settlement and supplemental memo filed on October 1, 2024), and Morgan, Lewis & Bockius LLP (who represent the Underwriter Defendants), vigorously represented their clients. Those firms are highly respected defense firms with substantial securities litigation experience and resources. Defense Counsel are at least as well-informed regarding the case, and their representation of Defendants was no less vigorous than Co-Lead Counsel's representation of the Settlement Class. In the face of this formidable opposition, Plaintiffs and Co-Lead Counsel were nevertheless able to develop a case that was sufficiently strong to persuade Defendants to settle on terms that were favorable to the Class.

***The Risks of Litigation and the Need to Ensure the Availability of Competent Counsel in High Risk, Contingent Securities Cases***

57. Co-Lead Counsel undertook this class action on a contingency fee basis. We summarize above, and further describe in the Final Approval Brief the risks counsel assumed in bringing these claims to a successful conclusion.

58. Those risks are also relevant to an award of attorneys' fees. We describe in detail above, and further describe in the Fee Brief the risks Co-Lead Counsel assumed and the time and expenses they incurred without any payment.

---

[5] Co-Lead Counsel intends to seek for the Court to authorize the release of the ten percent of Class Counsel's fees following the filing of the necessary Post-Distribution Accounting.

59. From the outset, Co-Lead Counsel understood that they were embarking on a relatively complex, expensive, and probably lengthy litigation with no guarantee of being compensated for the investment of their time and money that the case would have required. Co-Lead Counsel has received no compensation during the course of this litigation, pending now for almost two years, since April 2023.

60. The commencement of a class action does not guarantee a settlement. To the contrary, it takes hard work and diligence by skilled counsel to develop the facts and theories that are needed to sustain a complaint and to take a case to trial. Or, in this case, develop a legal theory and file a complaint that is strong enough to interest defendants to engage in an early settlement prior to the Court ruling on any motions to dismiss. Only as a result of such efforts will sophisticated defendants engage in serious settlement negotiations at meaningful levels. Co-Lead Counsel knows from personal experience that despite the most vigorous and competent of efforts, success in complex contingent litigation is never guaranteed. For example, in *Sawant v. Ramsey*, No. 3:07-CV-980 VLB, 2012 WL 3265020 (D. Conn. Aug. 9, 2012), Rosen Law spent thousands of hours securing a trial verdict only to find it impossible to collect on the judgment.

61. As a result of persistent efforts in the face of substantial risks and uncertainties, Co-Lead Counsel achieved an excellent recovery for the Settlement Class. In consideration of Co-Lead Counsels' efforts and the favorable result achieved, we believe that a 28% fee is reasonable and that the Court should approve it.

### *The Reaction of the Class to the Requested Fee*

62. As noted above, 42,240 notices have been mailed and/or emailed to potential Settlement Class Members or nominees to inform them of the Settlement. Evans Decl. ¶8.

63. The deadline for objections is January 28, 2025. To date, neither Co-Lead Counsel nor the Claims Administrator has received any objections to any aspect of the Settlement, including the requested attorneys' fees. Evans Decl. ¶14.

64. The deadline to request exclusion from the Settlement is January 28, 2025. To date, neither Co-Lead Counsel nor the Claims Administrator has received any requests for exclusion to any aspect of the Settlement. Evans Decl. ¶13.

*Fee Awards Granted in Similar Cases*

65.     This case closely resembles the settlement in *In re 3D Systems Securities Litigation*, No. 1:21-cv-01920-NGG-TAM, 2024 WL 50909 (E.D.N.Y. Jan. 4, 2024), where the court awarded attorneys' fees of 33% of the $4 million settlement, representing a 1.74 lodestar multiplier. In *3D Systems*, the early settlement recovered approximately 1% of maximum recoverable damages of $414.1 million, and was achieved while defendants' motion to dismiss was pending but prior to the Court issuing a ruling on it,  saving the parties' and the court's resources before significant further litigation had commenced, and avoiding the risk to plaintiffs of zero recovery were the Court to dismiss the complaint.

## IX.     THE REIMBURSEMENT OF EXPENSES IS FAIR AND REASONABLE

66.     Co-Lead Counsel has incurred $47,975.35 in litigation expenses in connection with the prosecution of the Action. These expenses were reasonable and necessary for the prosecution of the Action.

67.     From the outset, Co-Lead Counsel was aware that they might not recover any of their expenses, and, at the very least, would not recover anything until the case was successfully resolved. Co-Lead Counsel also understood that, even assuming that the case was ultimately successful, reimbursement for expenses would not compensate them for the lost use of the funds they advanced to prosecute this action. Thus, Co-Lead Counsel took significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the case.

68.     A listing of the expenses Co-Lead Counsel incurred, compiled from the firms' regularly maintained records, are set forth in the Fuks Fee Decl. ¶7 and Schall Fee Decl. ¶7. The expenses incurred pertaining to this case are reflected in Co-Lead Counsel's books and records which are prepared from expense vouchers and check records and are an accurate record of the expenses incurred. They are also available, upon request, for inspection by the Court. Fuks Fee Decl. ¶8; Schall Fee Decl. ¶8.

69.     Litigation expenses for which Co-Lead Counsel seek reimbursement included expert consultant fees, private investigator fees, mediation fees, travel expenses, legal research fees,

document retrieval fees, and filing fees. Each of these expenses was reasonable and necessary for the successful prosecution of this case.

70.     The largest expense was for Plaintiffs' share of the mediation fees charged by mediator James S. Otero (Ret.), followed by the retention of experts in the fields of financial analysis and damages, and an expert in the field of Oncology and Immunology. Other substantial costs were the fee charged by Plaintiffs' investigator, and travel expenses incurred in connection with attending the mediation. Each of these expenses were critical to Co-Lead Counsel's success in achieving the Settlement and, like the other categories of expenses for which counsel seek reimbursement, are the types of expenses routinely charged to clients who pay hourly.

71.     In light of the relatively complex nature of securities class action litigation and the difficulties in pleading and ultimately proving liability, as well as proving loss causation and damages at trial, the litigation expenses incurred were reasonable and necessary to pursue the interests of the Settlement Class.

## X. A NOMINAL AWARD TO PLAINTIFFS IS WARRANTED

72.     Lead Plaintiff Bergman seeks an award of $5,000 and named Plaintiff Carl Cooper seeks an award of $2,500 for their time and effort overseeing this action pursuant to the PSLRA. The Declarations of Ron Bergman and Carl Cooper, attached hereto as Exhibits 5 and 6, respectively, details the work Plaintiffs completed on behalf of and time they devoted to the settlement class and risks they undertook in participating in this action as lead and named plaintiff. These efforts include reviewing the pleadings, communicating regularly with counsel, and discussing the Settlement with counsel. The substantial time they devoted to this case could have been spent in pursuit of other economic or personal endeavors. Plaintiffs have been actively involved in this litigation and put the concerns of the Settlement Class at the forefront.

73.     As explained in the Fee Brief, awards of similar magnitude are commonly awarded to lead plaintiffs in securities class actions. They are necessary to ensure that these plaintiffs are not worse off for their service to the class.

We declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on January 14, 2024.

/s/ Sara Fuks

/s/ Brian Schall

**CERTIFICATE OF SERVICE**

I, Laurence M. Rosen, hereby declare under penalty of perjury as follows:

I am the managing attorney of The Rosen Law Firm, P.A., with offices at 355 S. Grand Avenue, Suite 2450 Los Angeles, CA 90071. I am over the age of eighteen.

On January 14, 2024, I electronically filed the foregoing JOINT DECLARATION OF SARA FUKS AND BRIAN SCHALL with the Clerk of the Court using the CM/ECF system which sent notification of such filing to counsel of record.

Executed on January 14, 2024.

*/s/ Laurence M. Rosen*