# EXHIBIT 4

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| IN RE ELECTRIC LAST MILE SOLUTIONS, INC. SECURITIES LITIGATION | Case No. 2:22-cv-00545-MEF-LDW <br><br> <u>CLASS ACTION</u> |

**DECLARATION OF LAURENCE ROSEN IN SUPPORT OF:(I) MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, AND (II) MOTION FOR AN AWARD OF ATTORNEYS FEES, REIMBURSEMENT OF EXPENSES, AND AWARD TO PLAINTIFFS**

I, Laurence Rosen, declare under penalty of perjury that the following is true and correct to the best of my knowledge.[1]

1.      I am an attorney duly licensed to practice law in New Jersey and before this Court. I am the Managing Partner of The Rosen Law Firm, P.A. ("RLF" or "Lead Counsel"), Lead Counsel for Lead Plaintiff Jun Zheng ("Zheng") and named plaintiff Scott T. Hacker ("Hacker") (together, "Plaintiffs") in this Action. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto.

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Second Amended Stipulation of Settlement, dated March 20, 2024 (ECF No. 124).

2.    I submit this Declaration in support of Plaintiffs' Motions, filed concurrently herewith, for (1) Final Approval of Class Action Settlement; and (2) Award of Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiffs.

3.    The purpose of this Declaration is to set forth the nature of the litigation and negotiations that led to the settlement with Defendants Jason Luo, James Taylor, Albert Li, Marshall Kiev, and David Boris (the "Individual Defendants," and with Plaintiffs, the "Settling Parties"). This Declaration attempts to demonstrate why the Settlement is fair, reasonable, and adequate and should be approved by the Court, and why Lead Counsel's requests for attorneys' fees, expenses, and award to Plaintiffs are reasonable and should be approved by the Court.

4.    The Settlement provides for a cash payment of $2.7 million, and resolves the Action as to the Individual Defendants.[2]

5.    On April 2, 2024, the Court entered an order preliminarily approving the Settlement, preliminarily certifying the Settlement Class for settlement purposes, and approving the form and manner of providing notice to potential Settlement Class members (the "Preliminary Approval Order") (ECF No. 131).

---

[2] Defendant BDO USA, P.C. (formerly known as BDO USA, LLP) ("BDO") is not part of the Settlement. The Court denied BDO's motion to dismiss on July 19, 2024 (ECF No. 137), and Plaintiffs' case against BDO remains ongoing.

6. Plaintiffs now seek final approval of the Settlement, as well as an award of attorneys' fees to Lead Counsel of 30% of the Settlement Fund (*i.e.*, $810,000), and reimbursement of Lead Counsel's out-of-pocket litigation expenses incurred in prosecuting this Action in the amount of $28,563.87, and a service award to Plaintiffs totaling $5,000.

7. Attached hereto are true and correct copies of the following exhibits:

Exhibit 1    Declaration of Josephine Bravata Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections. ("Bravata Decl.").

Exhibit 2    Excerpts from "Recent Trends in Securities Class Action Litigation: 2023 Full Year Review," published by NERA. ("NERA Report").

Exhibit 3    Firm resume of The Rosen Law Firm, P.A. ("RLF Resume").

Exhibit 4    Declaration of Jun Zheng ("Zheng Decl.").

Exhibit 5    Declaration of Scott T. Hacker ("Hacker Decl.").

Exhibit 6    The Rosen Law Firm, P.A. expenses back-up documentation.

**Nature of the Allegations in the Complaint**

8. Electric Last Mile Solutions, Inc. ("ELMS") was a publicly-traded company created from the merger of Electric Last Mile, Inc. ("ELM"), a privately-held company, with Forum III Merger Corporation ("FIII"), a publicly-traded special purpose acquisition company, commonly known as a SPAC. The crux of Plaintiffs' Complaint is that ELMS issued false and misleading financial statements

during the Class Period.  Specifically, the Complaint alleges that ahead of the merger between ELM and FIII, certain ELM executives, including Defendants Jason Luo and James Taylor, acquired ELM shares at prices that were substantially below market value. The Complaint allege that, under Generally Accepted Auditing Standards ("GAAP"), the difference between fair market value of the shares acquired and the price paid for those shares needed to be - but was not - recorded as compensation expense in the financial statements that ELMS filed with the SEC during the Class Period, and the failure to properly account for the share-based transactions had the effect of substantially understating expenses, net loss, and shareholders' deficit.  ELMS' stock price fell by 51% following ELMS' disclosure that an internal investigation discovered the improper accounting treatment of the shared-based transactions, and that as a result, ELMS' Class Period financial statements could not be relied upon and would need to be restated.

9.      The Complaint alleges violations under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") against each of the Individual Defendants as well as ELMS' auditor BDO.  The Complaint also alleges violations of Section 14(a) of the Exchange Act against Defendants Kiev and Boris.  ELMS initiated Chapter 7 liquidation proceedings in June 2022 and is not a party to this Action.

**Procedural History (Pre-Mediation)**

10.  This Action commenced on February 3, 2022 when Hacker filed a putative class action complaint in this Court asserting claims under Sections 10(b) and 20(a) of the Exchange Act against ELMS, the Individual Defendants, and Robert Song. (ECF No. 1).  The case was assigned to The Honorable Claire C. Cecchi.

11.  On April 4, 2022, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Zheng moved to be appointed Lead Plaintiff. (ECF No. 5). The Court granted his motion on April 22, 2022, appointing Zheng as Lead Plaintiff and approving Zheng's selection of RLF as Lead Counsel. (ECF No. 12).

12.  On May 9, 2022, the Court entered a stipulated order setting a schedule for Plaintiffs to file an amended complaint within 60 days (*i.e.*, by July 8, 2022) (ECF No. 16).

13.  On June 14, 2022, ELMS initiated liquidation proceedings under Chapter 7 of the U.S. Bankruptcy Code, and filed a Suggestion of Bankruptcy in this Court on July 8, 2022.  (ECF No. 21).

14.  On July 11, 2022, the Court ordered the parties to submit letters detailing their views on the effect of ELMS' liquidation proceeding on this Action. (ECF No. 22).  Several submissions and conferences with the Court followed during which the parties discussed their disagreement as to the type and duration of stay

that was appropriate in light of ELMS' liquidation proceeding. (*See,* ECF Nos. 23-26).

15. On October 18, 2022, following a telephone conference, the Court entered an order permitting Plaintiffs to file an amended complaint by October 21, 2022. (ECF No. 27).

16. On October 21, 2022, Plaintiffs filed the operative Complaint, which removed ELMS and Robert Song as defendants, added Section 14(a) claims against Kiev and Boris, and added BDO as a defendant. (ECF No. 28).

**Settlement Negotiations and Mediation**

17. In December 2022, Plaintiffs issued a settlement demand to the Individual Defendants. Plaintiffs believed that it was in the best interest of the Settlement Class to explore the possibility of settlement with the Individual Defendants because, among other things: (1) the range of provable damages in this Action is relatively modest, and (2) in light of ELMS' liquidation, there was no solvent company defendant, so any recovery from the Individual Defendants was likely limited to insurance proceeds from ELMS' directors & officers insurance policies ("D&O Insurance"). Plaintiffs were aware that the Individual Defendants were also litigating a putative class action lawsuit in the Delaware Court of Chancery (the "Delaware Action"). In Plaintiffs' view, based on Plaintiffs' analysis of the claims asserted in that Action and the amount of damages at issue, the

Delaware Action had the potential to substantially and rapidly erode the available D&O Insurance. Plaintiffs also considered the likelihood that new lawsuits from other investor groups may be filed against the Individual Defendants, which could put further strain on the D&O Insurance. Indeed, on June 14, 2023, a third putative class action lawsuit against the Individual Defendants was filed by shareholders on behalf of investors who acquired ELMS shares in its PIPE (private investment in public equity) offering (the "PIPE Action").

18. Therefore, Plaintiffs believed that it was in the best interest of the Settlement Class to secure a monetary recovery before the available insurance policies became further depleted. Plaintiffs also took into consideration the very real risk (discussed in greater detail below) that the Individual Defendants might prevail on their motions to dismiss, which would also leave Plaintiffs and the Settlement Class with no recovery.

19. After several informal telephone discussions regarding the prospects of settlement, the Settling Parties ultimately agreed to attend a mediation session with Michelle Yoshida of Phillips ADR Enterprises. Ms. Yoshida is a respected mediator with substantial experience mediating complex securities class actions.[3]

---

[3] Ms. Yoshida's resume is available at: https://phillipsadr.com/our-team/michelle-yoshida/

20. Prior to the mediation, the Settling Parties exchanged detailed confidential mediation briefs and participated in confidential *ex parte* discussions with Ms. Yoshida.

21. The mediation was held on March 29, 2023. After a hard-fought mediation that lasted over 10 hours, the Settling Parties reached an agreement in principle. Over the following weeks, the Settling Parties negotiated and executed a term sheet, which formed the basis of the Stipulation of Settlement that was finalized and executed on June 26, 2023.

**Procedural History (Post-Mediation)**

22. As the Settling Parties negotiated the terms of their settlement agreement, BDO, who is not a party to the Settlement, filed their motion to dismiss on April 11, 2023. (ECF No. 57).

23. On May 31, 2023, this Action was reassigned from Judge Cecchi to Your Honor. (ECF No. 58).

24. On June 12, 2023, Plaintiffs filed their opposition to BDO's motion to dismiss. (ECF No. 59). BDO filed their reply on July 24, 2023. (ECF No. 65).

25. On June 28, 2023, Plaintiffs filed a motion for preliminary approval of the Settlement with the Individual Defendants (the "First Preliminary Approval Motion") (ECF Nos. 60-62).

26.     On August 1, 2023, the Court denied the First Preliminary Approval Motion. (ECF No. 67).

27.     On August 9, 2023, Plaintiffs filed a renewed motion for preliminary approval of the Settlement with the Individual Defendants. (ECF Nos. 68-70).

28.     On August 15, 2023, the Court denied BDO's motion to dismiss, holding that the Complaint adequately alleged that BDO acted with scienter, but ordered additional briefing on the issue of falsity.  (ECF Nos. 71-72).

29.     On September 26, 2023, after the Settling Parties conferred with counsel for the plaintiffs in the Delaware Action, Plaintiffs filed an amended Stipulation of Settlement, which clarified the scope of the proposed release so that it was acceptable to the plaintiffs in the Delaware Action.  (ECF No.  76).

30.     On September 27, 2023, Plaintiffs and BDO attended a settlement conference with Magistrate Judge Wettre.   The settlement conference was unsuccessful.

31.     On October 3, 2023, BDO filed its supplementary brief on falsity.  (ECF No. 80).  Plaintiffs filed their response brief on October 24, 2023. (ECF No. 89).

32.     From October 2023 to March 2024, Plaintiffs filed a series of supplemental materials in further support of the renewed motion for preliminary approval of the settlement with the Individual Defendants (*see, e.g.,* ECF Nos. 82, 88, 91, 93, 95, 99, 119).

33. On February 1, 2024, Plaintiffs and BDO attended a second settlement conference with Magistrate Judge Wettre. The settlement conference was unsuccessful.

34. On March 21, 2024, Plaintiffs filed the operative Second Amended Stipulation of Settlement with the Individual Defendants. (ECF No. 124).

35. On March 21, 2024, the Court issued its Opinion on the renewed motion for preliminary approval (the "Preliminary Approval Opinion") (ECF No. 126). Among other things, the Preliminary Approval Opinion ordered the Settling Parties to make certain revisions to the notice of settlement and proposed order.

36. On April 2, 2024, following the submission of revised settlement documents, the Court entered the order granting preliminary approval of the Settlement (the "Preliminary Approval Order") (ECF No. 131).

37. On July 19, 2024, the Court denied in full BDO's motion to dismiss. (ECF No. 137).

38. On August 16, 2024, BDO filed its Answer to the Complaint. (ECF No. 141).

**Risk of Continued Litigation**

39. The Settlement, which if approved would provide an immediate and certain benefit to the Settlement Class in the form of a cash payment of $2.7 million,

eliminates the significant risk that Plaintiffs and the Settlement Class might recover nothing at all against the Individual Defendants if litigation were to continue.

40.    To win on their Section 10(b) claim, Plaintiffs must show that the Individual Defendants acted with scienter (*i.e.*, with the intent to deceive, manipulate, or defraud). This is a major hurdle for Plaintiffs. Here, the alleged misconduct is not that the Individual Defendants hid the share-based transactions; rather, the Complaint alleges that the share-based transactions – nearly all of which were publicly disclosed – were not accounted for properly in ELMS' financial statements. Towards that end, the Individual Defendants have submitted sworn declarations stating that: (a) the financial statements were prepared by a third party certified public accountant, and audited by BDO, who issued a clean audit opinion; (b) BDO was aware of the share-based transactions, both at the time that they were entered into and at the time of the audit; (c) none of the Individual Defendants are accountants or lawyers, and they were not involved in preparing the financial statements.[4] Given all this, the Court has recognized that scienter would be a "high and hard bar to clear" here. (Preliminary Approval Opinion, ECF No. 126 at PageID: 1444).

---

[4] *See* Declaration of Jason Luo ("Luo Decl.") (ECF No. 110); Declaration of James Taylor ("Taylor Decl.") (ECF No. 111); Declaration of David Boris ("Boris Decl.") (ECF No. 112); Declaration of Albert Li ("Li Decl.") (ECF No. 114).

41.    Plaintiffs' Section 20(a) claim against the Individual Defendants suffer from the same difficulty, as Plaintiffs must first establish a primary violation of Section 10(b) by a controlled entity (*i.e.,* ELMS).  But because a corporation acts through its officers and directors, and the Third Circuit has not recognized the corporate scienter doctrine, Plaintiffs would still need to establish the scienter of one of the Individual Defendants to impute to ELMS.

42.    Lastly, Plaintiffs' Section 14(a) claim, brought against Defendants Kiev and Boris because they signed a proxy statement that contained the false financial statements, does not change the equation.  First, the Court found that that "[t]here are virtually no allegations as to one of the five Defendants, Marshall Kiev." (Preliminary Approval Opinion, ECF No. 126 at PageID: 1422 n. 10). Second, while Section 14(a) does not require Plaintiffs to show scienter, Plaintiffs must still demonstrate Kiev and Boris' negligence.  This would be a difficult obstacle because Kiev and Boris were only officers of FIII – the blank check company with which ELM merged – and they have sworn that: (a) they had no involvement at all with the preparation of ELM's financial statements, which was where the improper accounting treatment originated, and (b) as a condition of the merger, they required that ELM's financial statements be professionally audited, and then took comfort in BDO's clean audit opinion.  *See* Boris Decl. (ECF No. 112).  Plaintiffs would have a hard time demonstrating that Kiev and Boris were negligent when they

required that ELM's financial statements be audited prior to consummating the merger, and then relied on the clean audit opinion of a prominent international audit firm.

43. Accordingly, without a settlement, there was substantial risk that Plaintiffs would spend years (and hundreds of thousands of dollars) litigating this Action against the Individual Defendants only to lose at summary judgment or trial because discovery supports the Individual Defendants' sworn statements.[5] While it is certainly possible that discovery might refute the Individual Defendants' representations, Plaintiffs do not believe it is in the best interest of the Settlement Class to take that gamble.

44. Additionally, Plaintiffs also took into account the reality that with ELMS in liquidation proceedings, there was no solvent issuer defendant from whom to recover money. Therefore, any recovery against the Individual Defendants would be from the D&O Insurance. The D&O insurance is also funding the defense of the Delaware Action and the PIPE Action, both of which are putative class actions seeking damages substantially higher than the $41 million in maximum damages available to Plaintiffs here.[6]

---

[5] Pursuant to the PSLRA, discovery is stayed until Plaintiffs prevail on Defendants' motions to dismiss. 15 U.S.C. 78u-4(b)(3)(B).

[6] Based on confidential information learned during the mediation process, and the fact that the PIPE offering raised $155 million.

45.     Plaintiffs believed that it was in the best interest of the Settlement Class to secure a portion of the D&O Insurance now, rather than take the risk of continuing to litigate only to discover later that the available D&O Insurance has vastly dwindled - such that the insurance carriers become even more zealous in preserving whatever amount they can – or is entirely depleted.

**Complexity, Expense and Likely Duration of the Litigation**

46.     Securities class actions are inherently complex, and there is no reason to believe this case is any different.  In fact, this case is arguably more complex because it involves accounting issues (GAAP rules, PCAOB standards, etc.) that require consultation with an accounting expert.

47.     Continued litigation would also be expensive. Additional consultation with an accounting expert would be required in discovery and beyond.  Indeed, discovery in securities class actions is typically expensive and protracted because of the volume of documents that are produced, which then need to hosted on a review platform (such as Relativity) for attorneys to review.  The fees for document hosting can be very substantial depending on the volume of documents produced. Continued litigation would also mean many depositions, which are expensive and time-consuming. After fact discovery, there is expert discovery, summary judgment, and trial – none of which comes cheaply in a complex securities class action like this one.

48. Adding to the complexity and expense of continued litigation is the fact that Plaintiffs would then be litigating this case against two groups of Defendants: the Individual Defendants and BDO, and opposing five experienced law firms, several of which are among the largest law firms in the world with ample resources to zealously defend their clients.[7]

49. Continued litigation would also be protracted. At the time the Settlement was reached, the Individual Defendants were poised to file their motions to dismiss. Under the Settling Parties' previously-agreed to schedule, it would take several months to fully brief the Individual Defendants' motions to dismiss. After which Plaintiffs would await a ruling. If Plaintiffs defeat the Individual Defendants' motions to dismiss, then the parties would brief a motion for class certification, which along with discovery would take many more months. That would be followed by summary judgment, then trial. Along the way, appeals and petitions (*e.g.* a Rule 23(f) petition on class certification) may introduce further delays. Plaintiffs believe that it is in the Settlement Class's best interest to obtain a certain recovery now rather than await a speculative recovery years down the line.

50. The Settlement represents a recovery that is within the range of recoveries in securities class actions of similar magnitude. According to NERA, an

---

[7] The Individual Defendants are represented by Paul, Weiss, Rifkind, Garrison and Wharton LLP; Dechert LLP; Barnes & Thornburg LLP, and Brennan Manna Diamond LLP. BDO is represented by McDermott Will & Emery LLP.

economic consulting firm, from 2014 to 2023, the median settlement in securities class actions with damages in the range of $20 million to $49 million was 5.1% of damages. (*See* Ex. 2, NERA Report, at Figure 21).   Here, the $2.7 million Settlement amounts to 6.6% of Plaintiffs' maximum damages, not including any money that Plaintiffs might recover from BDO. Plaintiffs believe that this above-average recovery – which might be augmented by any recovery against BDO – is a favorable outcome under the circumstances.

51.   At the time the Settlement was reached, Plaintiffs were armed with sufficient knowledge as to the strengths and weaknesses of their case to make an informed decision about settlement.   Plaintiffs had, among other things: (a) conducted a thorough review of publicly-available information regarding FII, ELM, and ELMS, including regulatory filings, press releases, online discussions forums, and media reports; (b) researched the impact of ELMS' bankruptcy on this Action, including reviewing and monitoring ELMS' filings in bankruptcy court, and holding several discussions with ELMS' bankruptcy counsel; (c) retained and consulted with an accounting expert regarding the accounting issues present in this case, and studied relevant GAAP rules; (d) retained and consulted with a financial expert to analyze damages; (e) prepared and filed an amended complaint based on, among other things, Plaintiffs' investigation and consultation with experts as well as legal research; (e) analyzed the Individual Defendants' confidential mediation

submissions; and (f) engaged in hard-fought negotiations during the mediation that further clarified the Individual Defendants' position and defenses.

## The Settlement Resulted From Arm's-Length Negotiation Between Experienced Counsel

52.     Lead Counsel has extensive experience and a long track record of success representing investors in securities class actions in courts throughout the country, including in the District of New Jersey. (*See* Ex. 3, Rosen Law Firm Resume).

53.     The Individual Defendants are represented by capable and experienced counsel from Paul, Weiss, Rifkind, Garrison and Wharton LLP, Dechert LLP, Barnes & Thornburg LLP, and Brennan Manna Diamond LLP.

54.     The Settlement was reached after a full-day mediation with Michelle Yoshida of Phillips ADR Enterprises, a respected neutral with substantial experience mediating securities class actions.

## The Plan of Allocation

55.     The Notice of Pendency and Proposed Settlement of Class Action ("Long Notice") describes the Plan of Allocation. *See* Long Notice (ECF No. 130-3 at PageID: 1573-1576).  Lead Counsel formulated the Plan of Allocation with the help of a damages expert to distribute the Settlement Fund fairly and reasonably to

Settlement Class Members consistent with the federal securities laws and the principles of loss causation.

56. Under the Plan of Allocation, a "Recognized Loss" amount will be calculated for all relevant transactions of ELMS common stock during the Class Period. In general, the Recognized Loss will be the difference between the estimated artificial inflation on the purchase date and the estimated artificial inflation on the sale date, or the difference between the actual purchase price and the sales price, whichever is less. Accordingly, any ELMS common stock purchased during the Class Period that were not held over the alleged corrective disclosure date will have no Recognized Loss because the level of alleged artificial inflation is the same on the date of purchase and date of sale. The Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their total Recognized Loss.

57. In my view, based on my experience prosecuting securities class action, the Plan of Allocation provides a fair, reasonable, and rational method of allocating the Net Settlement Fund to Authorized Claimants.

**The Reaction of the Settlement Class**

58. To date, 36,941 notices of the Settlement have been sent to potential Settlement Class Members. Bravata Decl. at ¶9.

59.     The deadline to object to, or request exclusion from, the Settlement is August 30, 2024. To date, neither the Claims Administrator nor Lead Counsel has received any objections to any aspect of the Settlement. *Id.* at ¶15.

60.     The Claims Administrator received one invalid request for exclusion, from Arturo Carlos Gonzalez, dated July 18, 2024. *Id.,* at ¶14.  However, Mr. Gonzalez's exclusion request did not include the necessary information, as set forth in the Notice, to show that he is a member of the Settlement Class.  *Id.* The Claims Administrator responded to Mr. Gonzalez on the same day with instructions on how to properly file a request for exclusion. *Id.*  To date, the Claims Administrator has not received any further correspondence from Mr. Gonzalez.  *Id.*

61.     Should Mr. Gonzalez's request for exclusion be cured, or if any objections or additional requests for exclusions are received after the date of this Declaration, Plaintiffs will address them in Plaintiffs' reply in further support of the instant motions.

**Request for Attorneys' Fees and Reimbursement of Expenses**

62.     The chart below is a summary of time expended by attorneys and professional staff at RLF on this Action as of August 21, 2024. The chart was prepared from contemporaneous, daily time records regularly prepared and maintained by my firm.

| Professional (Position)* | Hourly Rate | Hours Worked | Lodestar |
|---|---|---|---|
| Laurence Rosen (P) | $1,250 | 69.55 | $86,937.50 |
| Phillip Kim (P) | $1,150 | 17.10 | $19,665.00 |
| Jonathan Horne (P) | $1,000 | 5.40 | $5,400.00 |
| Yu Shi (P) | $950 | 612.20 | $581,590.00 |
| Erica Stone (C) | $850 | 13.65 | $11,602.50 |
| Scott Kim (A) | $650 | 9.50 | $6,175.00 |
| Ryan Hedrick (A) | $600 | 1.55 | $930.00 |
| **Total** | | **728.95** | **$712,300.00** |
| **Requested fee** | | **$810,000.00** | |
| **Multiplier** | | **1.13** | |

\* Partner (P), Counsel (C), Associate (A)

63. From the initiation of this Action to August 21, 2024, RLF devoted 728.95 attorney hours to this matter. The lodestar amount for RLF is $712,300.00 The requested attorneys' fee award of $810,000.00 amounts to a multiplier of 1.13.

64. From the initiation of this Action to August 21, 2024, RLF has expended a total of $28,563.87 in unreimbursed expenses in connection with the prosecution of this Action, broken down as follows:

**LIST OF UNREIMBURSED EXPENSES**

| Category | Amount |
|---|---|
| Accounting Expert Fees | $9,990.00 |
| Financial Expert Fees | $2,392.00 |
| Online Computer Legal Research and Document Retrieval Fees | $1,118.70 |
| Court Filing Fees | $402.00 |
| Pro Hac Vice Fees | $150.00 |

| Mediation Fees | $5,503.12 |
|---|---|
| Notice to Class Members Fees/Press Releases | $8,591.93 |
| Courier/FedEx Fees | $201.12 |
| Service of Process Fees | $173.00 |
| Travel/Transportation Fees | $42.00 |
| **TOTAL EXPENSES** | **$28,563.87** |

65. The expenses set forth above are reflected in RLF's books and records. These books and records are prepared from expense vouchers, check records, and financial statements prepared in the normal course of business for RLF and are an accurate record of the expenses incurred in the prosecution of this Action.

66. Backup documentation for the expenses listed above, including invoices and receipts, is attached as Exhibit 6.

67. From the outset, Lead Counsel understood it was embarking on a complex, expensive, and likely lengthy litigation with no guarantee of ever being compensated for the substantial investment of time and money the case would potentially require. In undertaking that responsibility, Lead Counsel ensured that sufficient resources were dedicated to the Action and that funds were available to compensate staff and to cover the expenses the case would require. With an average lag time of several years for a case like this to conclude, the financial burden on Lead Counsel was greater than those for a firm paid on an ongoing basis.

68. Lead Counsel's work in this Action included, among other things:

    a. Preparing the initial complaint;

b.  Preparing the motion for appointment of lead plaintiff;

c.  Conducting investigation into potential claims, including a comprehensive search and review of FIII, ELM, and ELMS' public filings, press releases, earnings call transcripts, analyst reports, news reports, etc.

d.  Consulting with an accounting expert and studying relevant GAAP rules;

e.  Consulting with a damages expert;

f.  Performing legal research on potential claims in preparation for drafting the amended complaint;

g.  Preparing the amended complaint;

h.  Researching implications of ELMS' liquidation;

i.  Attending proceedings in ELMS' liquidation proceeding and communicating with ELMS' bankruptcy counsel;

j.  Researching and responding to ELMS' counsel's letter regarding a general stay of the Action;

k.  Preparing mediation submissions and attending mediation with the Individual Defendants;

l.  Analyzing the Individual Defendants' mediation submissions, including legal research on the Individual Defendants' arguments;

m. Briefing BDO's motion to dismiss, including supplemental briefing on falsity;

n. Preparing position letters for settlement conferences with BDO; attending two settlement conferences with BDO;

o. Preparing and filing a first and then a renewed motion for preliminary approval of this Settlement, including supplemental filings in response to the Court's requests for additional information;

p. Negotiating with counsel for the plaintiffs in the Delaware Action regarding acceptable scope of release; responding to letter from plaintiffs' counsel in the PIPE Action;

q. Reviewing and keeping up to date on filings in ELMS' liquidation proceeding, the Delaware Action, and the PIPE Action;

r. Supervising the claims administrator on the claims administration process.

69. Lead Counsel's work on this Settlement will not end with the filing of the instant motions or with the Court's final approval of the Settlement. Lead Counsel will spend more time and resources drafting and filing the replies in support of its motions, preparing for and appearing at the September 20, 2024 Settlement Fairness Hearing, assisting Settlement Class Members with their claims, overseeing

the claims process and distribution of the Net Settlement Fund to Settlement Class

Members, and responding to Settlement Class members' inquiries.[8]

I swear on penalty of perjury under the laws of the United States of America

that the foregoing is true and correct to the best of my knowledge.

Executed this 23rd of August, 2024 in Newark, New Jersey.

/s *Laurence M. Rosen*
Laurence M. Rosen

---

[8] Lead Counsel will also, of course, continue litigating the Action against BDO.

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of August, 2024, a true and correct copy of the foregoing was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s *Laurence M. Rosen*
Laurence M. Rosen